# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CHRIS WOODFIELD, ON BEHALF
OF HIMSELF AND ALL OTHERS
SIMILARLY SITUATED,

    *Plaintiff*,

    v.

TWITTER, INC., X CORP., X
HOLDINGS I, INC., X HOLDING
CORP., and ELON MUSK,

    *Defendants*.

C.A. No. 1:23-cv-780-CFC

---

## DEFENDANT X CORP. f/k/a TWITTER, INC. AND X HOLDINGS CORP. f/k/a X HOLDINGS I, INC.'S OPENING BRIEF IN SUPPORT OF THEIR <u>MOTION TO COMPEL ARBITRATION</u>

Dated: August 28, 2023

Eric Meckley (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
415-442-1000
eric.meckley@morganlewis.com

T. Cullen Wallace (*pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
713-890-5722
cullen.wallace@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendants X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc.*

# TABLE OF CONTENTS

**Page**

I.      NATURE AND STAGE OF PROCEEDINGS..............................................1

II.     SUMMARY OF THE ARGUMENT ........................................................3

III.    STATEMENT OF FACTS .....................................................................4

    A.      Plaintiff Entered into a Binding DRA with Twitter. ...........................4

    B.      The Arbitration Proceedings .................................................6

        1.      JAMS Issues an Opinion Regarding its Requirements to Commence Arbitration..................................................6

        2.      Plaintiff Files a Demand for Arbitration Following His Layoff, to Which Twitter Objects for Failing to Comply with the JAMS Rules and the January 19 Opinion..................7

        3.      JAMS Determines That Its Minimum Standards Apply – In Conflict with the Terms of the DRA. ...............................8

    C.      The Present Lawsuit. ..........................................................11

IV.     ARGUMENT.......................................................................12

    A.      Plaintiff's Individual Claims Should Be Stayed and the Class Claims Should Be Dismissed Because Plaintiff's Claims are Subject to a Mandatory Arbitration Agreement..............................12

        1.      The FAA Governs the DRA. ..................................................12

        2.      Plaintiff Concedes That He Signed the DRA. .........................14

        3.      The DRA Encompasses the Claims Alleged in Plaintiff's Complaint..................................................................14

        4.      The Class Action Waiver is Enforceable.................................16

    B.      By Filing a Declaratory Judgment Action, Plaintiff Is Trying to Force Twitter to Waive Its Right to Arbitrate Under the FAA..........17

V.      CONCLUSION.......................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013).......................................................................13, 16

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)..............................................................................12

*Bahoor v. Varonis Sys., Inc.*,
152 F. Supp. 3d 1091 (N.D. Ill. 2015)..................................................19

*CardioNet, Inc. v. Cigna Health Corp.*,
751, F.3d 165 (3d Cir. 2014) ................................................................14

*Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co*,
489 F.3d 580 (3d Cir. 2007) .................................................................16

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003)................................................................................12

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)..............................................................................13

*Dizon v. J.P. Morgan Chase*,
No. CV 22-716 (MN), 2023 WL 2456063 (D. Del. Mar. 10, 2023).................13

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*,
269 F.3d 187 (3d Cir. 2001) ...................................................................3

*Epic Systems Corp. v. Lewis*,
138 S. Ct. 1612 (2018)..........................................................................13, 16

*Green Tree Financial Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000)..................................................................................9

*Guidotti v. Legal Helpers Debt Resolution, LLC*,
716 F.3d 764 (3d Cir 2013) ....................................................................3

*Hart v. Charter Communications, Inc.*,
814 Fed.Appx. 211 (9th Cir. 2020)........................................................................3

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002)................................................................................................15

*Khan v. Dell Inc.*,
669 F.3d 350 (3d Cir. 2012)................................................................................19

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
363 F.3d 1010 (9th Cir. 2004)............................................................................18

*Mendez v. Palm Harbor Homes, Inc.*,
111 Wash.App. 446 (2002)....................................................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
460 U.S. 1 (1983)..................................................................................................15

*Pick v. Discover Financial Services, Inc.*,
No. CIV. A. 00-935-SLR, 2001 WL 1180278 (D. Del. Sept. 28,
2001).....................................................................................................................14

*Puleo v. Chase Bank USA, N.A.*,
605 F.3d 172 (3d Cir. 2010)................................................................................17

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010)..........................................................................................12, 13

*Sanum Investment Limited v. San Marco Capital Partners LLC*,
263 F. Supp. 3d 491 (D. Del. 2017)....................................................................13

*Taylor v. Dover Downs, Inc.*,
543 F.Supp.3d 39 (D. Del. 2021)..........................................................................3

*United States v. MacEwan*,
445 F.3d 237 (3d Cir. 2006)................................................................................12

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960)..............................................................................................15

**Statutes**

9 U.S.C. § 2 ................................................................................................................12, 13

FAA................................................................................................*passim*

FAA Section 4.........................................................................11, 13, 18, 19

FAA Section 5............................................................................5, 6, 20

## Other Authorities

Fed. R. Civ. P. 12(b)(6)...............................................................................3

Rule 5(a).........................................................................................6, 7

## I.      NATURE AND STAGE OF PROCEEDINGS

This dispute arises from Plaintiff Chris Woodfield's mischaracterization of legitimate efforts by Defendant X Corp. (as successor in interest to Twitter, Inc.) (hereinafter "Twitter") to enforce its rights under the terms of the parties' Dispute Resolution Agreement ("DRA").  Although Plaintiff concedes that he signed a DRA with Twitter that encompasses the claims at issue in this lawsuit and that he initiated arbitration before filing this lawsuit, he nonetheless contends that Twitter "waived" its right to arbitrate and breached the DRA.  That is not true.  Twitter simply seeks to arbitrate on an individual basis in accordance with the language of the DRA.

First, Twitter reasonably objected when Plaintiff, along with hundreds of other individuals, purported to initiate arbitrations without producing signed copies of the DRA.  In response, JAMS interpreted its procedural requirements and responded that it was not declining to administer the arbitrations but would not proceed with Plaintiff's or others' arbitrations "until a signed employment agreement containing an arbitration clause naming JAMS as the arbitration provider is provided to the file."  By adhering to this approach, Twitter did nothing to "waive" or breach the DRA.

Second, the DRA requires arbitration fees to be apportioned between the parties "[i]f under applicable law the Company is not required to pay all of the

Arbitrator's and/or arbitration fees." Jurisdictions other than California, Oregon, and Nevada allow fee sharing in employment-related arbitrations and, consistent with this term of the DRA, Twitter sought apportionment of fees in those jurisdictions. Despite the language of the DRA on this point, however, JAMS has taken the position that its "Minimum Standards" apply and require Twitter to bear *all* arbitration fees regardless of what the DRA says. Because proceeding under the "Minimum Standards" (which do not apply for reasons explained *infra*) would not only prevent Twitter from exercising its rights under the DRA but also render a material provision of the DRA superfluous, Twitter rightfully declined to proceed under the Minimum Standards. Again, Twitter did nothing to "waive" or breach the DRA, but simply sought compliance with the terms of the parties' agreement.

Now, through no fault of its own, Twitter is stuck between a rock and a hard place. If the Court adopts Plaintiff's view, Twitter must either forgo its contractual rights to allocation of fees under the terms of the DRA or forgo arbitration altogether. Either way, Twitter would have to give up its rights under the parties' arbitration agreement. Because the law does not require that, Twitter seeks relief from this Court, consistent with the Federal Arbitration Act ("FAA"), to order arbitration consistent with the terms of the DRA. Accordingly, Twitter moves for an Order dismissing the action and compelling Plaintiff to arbitrate on an

individual basis.[1]

## II.    SUMMARY OF THE ARGUMENT

Plaintiff signed a DRA with Twitter that requires the parties to arbitrate "any dispute arising out of or related to [Plaintiff's] employment with Twitter, Inc … or termination of employment."  Declaration of Lauren Wegman ("Wegman Decl."), ¶ 5, Ex. A § 1.  The DRA requires Plaintiff to arbitrate "disputes arising out of or relating to interpretation or application of this Agreement."  *Id*.  Twitter moves this Court for an Order compelling Plaintiff to arbitrate his claims on an individual basis.  When the affirmative defense of arbitrability is evident on the face of the complaint, a motion to compel arbitration is resolved under the standard governing motions to dismiss for failure to state a claim without inherent delay of discovery pursuant to Fed. R. Civ. P. 12(b)(6).  *See Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir 2013).

---

[1] X Corp., as the successor in interest post-merger with Twitter, can enforce the terms of Twitter's arbitration agreement. *Taylor v. Dover Downs, Inc.*, 543 F.Supp.3d 39 (D. Del. 2021); *Hart v. Charter Communications, Inc.*, 814 Fed.Appx. 211, 214 (9th Cir. 2020) (applying Delaware law).  X Holdings Corp., Twitter's parent company, can enforce the DRA as an express third-party beneficiary.  *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196 (3d Cir. 2001); *see also* Wegman Decl., ¶ 5, Ex. A § 1 ("This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its … parent companies…").

## III.   STATEMENT OF FACTS

### A.   Plaintiff Entered into a Binding DRA with Twitter.

On April 16, 2020, Plaintiff electronically signed the DRA.  Wegman Decl.,
¶ 5, Ex. A.  Plaintiff did not timely opt out of the DRA.  *Id.*, ¶ 6.  The DRA
contains the following material terms:

- Introductory Paragraph.  The DRA contains bolded prefatory
language stating that it "**is a contract and covers important issues relating to
your rights**" and advising that employees are "**free to seek assistance from
independent advisors of your choice…**"  *Id.* ¶ 5, Exh. A.

- Not a Condition of Employment.  The Introductory Paragraph also
contains bolded language that states: "**You can choose to opt out of this
Agreement – you have 30 days to opt out.**"  *Id.*  As a result, the DRA makes
clear that "**[a]rbitration is not a mandatory condition of Employee's
employment at the Company**."  *Id.* § 8 (emphasis in original).  The DRA
specifies that an employee may opt out of the DRA by "submit[ting] a signed and
dated statement on a 'Dispute Resolution Agreement Opt Out Form' ('Form') …
within 30 days of the Employee's receipt of this Agreement."  *Id.*  If an employee
does not timely opt out of the DRA within 30 days, "continuing the Employee's
employment constitutes mutual acceptance of the terms of this Agreement…"  *Id.*

- Governing Law.  The DRA expressly states that it is "governed by the

[FAA] and evidences a transaction involving commerce." *Id.* § 1.

- <u>Covered Claims</u>.  The DRA states that it applies to "any dispute arising out of or related to Employee's employment with Twitter, Inc. . . . or termination of employment," including "all … state statutory and common law claims." *Id.*  The DRA further authorizes the arbitrator to resolve all "disputes arising out of or relating to [the] interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement." *Id*.

- <u>Commitment to Arbitrate Claims</u>.  The DRA states that it is "intended to apply to the resolution of disputes that otherwise would be resolved in a court of law" and "requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." *Id*.

- <u>JAMS Rules</u>.  The DRA states that the "Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ("JAMS"), pursuant to the then-current JAMS Rules."

- <u>Class Action Waiver</u>.  The DRA contains an express class action waiver:

> **You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis**.

*Id*. § 5.  The DRA also expressly provides that the enforceability of the class

action waiver may be determined only by a "court of competent jurisdiction" and not by an arbitrator.  *Id.*

- Arbitration Fees.  The DRA addresses arbitration fees as follows: "[I]n all cases where required by law, the Company will pay the Arbitrator's and arbitration fees.  If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator."  *Id.* § 6.

## B.    The Arbitration Proceedings

### 1.    *JAMS Issues an Opinion Regarding its Requirements to Commence Arbitration.*

Beginning in December 2022, an influx of claimants began filing individual demands for arbitration with JAMS naming Twitter as a Respondent.  Declaration of Eric Meckley ("Meckley Decl."), ¶ 2.  By early January 2023, Twitter had received more than 200 demands for arbitration, none of which included a signed version of the individual claimant's DRA.[2]  *Id.*

Twitter objected to the wave of demands with unsigned DRAs, citing to Rule 5(a) of the JAMS Employment Arbitration Rules and Procedures (the "JAMS Rules").  *Id.*, ¶ 3, Ex. 1.  Twitter noted that the unsigned DRAs attached to the 200+

---

[2] To date, Twitter has received more than 2,200 individual demands for arbitration.  Meckley Decl., ¶ 2.

demands for arbitration submitted at that time were insufficient to confer JAMS with the authority to administer the arbitration and requested that JAMS only proceed where claimants had submitted a signed DRA with their arbitration demand. *Id.*

On January 19, 2023, JAMS' Senior Vice President and General Counsel issued an opinion in response to Twitter's January 5, 2023 objection letter (the "January 19 Opinion"), interpreting JAMS Rule 5(a) and determining that it would proceed with arbitrations only "[w]here a Claimant's Demand includes a *signed agreement* naming JAMS or a court order identifying JAMS as applicable to the Claimant." Meckley Decl., ¶ 4, Ex. 2 (emphasis added).

> 2. *Plaintiff Files a Demand for Arbitration Following His Layoff, to Which Twitter Objects for Failing to Comply with the JAMS Rules and the January 19 Opinion.*

Twitter laid off Plaintiff on January 4, 2023. D.I. 1, ¶ 39.

On or about May 6, 2023, Plaintiff filed a non-compliant demand for arbitration with JAMS by attaching a DRA that was *unsigned* by him. D.I. 1, ¶¶ 18, 19. Consistent with its practice for the prior 4 months and the January 19 Opinion, on May 22, 2023, Twitter objected to Plaintiff's demand for arbitration based on his failure to submit a signed DRA and requested that JAMS decline to exercise jurisdiction over the demand unless and until he submitted a signed version of the DRA. D.I. 1, ¶¶ 21, 165; Meckley Decl., ¶ 5, Ex. 3.

On May 29, 2023, Plaintiff responded by asserting that Twitter's objection

had "waived" its right to arbitrate. Meckley Decl., ¶ 6, Ex. 4. Twitter immediately

confirmed in writing, on June 1, 2023, that it was *not* waiving its right to arbitrate

under the DRA, and expressly reserved its right to arbitrate Plaintiff's claim upon

submission of a signed DRA. *Id.*, ¶ 7, Ex. 5. Twitter's response also addressed the

issue of Plaintiff's unsigned DRA, stating:

> Respondents' counsel had previously explained to Claimants' Counsel
> the procedure by which their clients could request their respective
> DRAs from Twitter. Respondents' counsel even proposed that
> Claimants' Counsel provide them with the names of their clients who
> have attempted and allegedly been unable to obtain copies of their
> arbitration agreements, so that Respondents' counsel could then follow-
> up with Twitter regarding those claimants specifically. Claimants'
> Counsel has not indicated that either Claimant Woodfield or counsel
> acting on his behalf ever attempted to obtain a copy of Claimant
> Woodfield's arbitration agreement with Twitter. Respondents, again,
> invite them to do so, consistent with the parties' previous discussions.

*Id.*

On June 5, 2023, JAMS clarified the status of Plaintiff's arbitration demand:

> To be clear on JAMS' position, we have not declined to administer this
> matter, we just cannot proceed until a signed employment agreement
> containing an arbitration clause naming JAMS as the arbitration
> provider is provided to the file.

*Id.*, ¶ 8, Ex. 6.

    3.    *JAMS Determines That Its Minimum Standards Apply – In Conflict with the Terms of the DRA.*

On June 2, 2023, Twitter requested, consistent with the terms of the DRA, that

arbitration costs be apportioned equally between the Parties for any arbitrations

pending in jurisdictions where fee-sharing is lawful.[3]  Meckley Decl., ¶ 10, Ex. 8.

Twitter directed JAMS to Section 6 of the DRA:

> [I]n all cases where required by law, the Company will pay the
> Arbitrator's and arbitration fees.  If under applicable law the
> Company is not required to pay all of the Arbitrator's and/or arbitration
> fees, such fee(s) will be apportioned between the parties in accordance
> with said applicable law, and any disputes in that regard will be
> resolved by the Arbitrator.

*Id.*

On June 21, 2023, JAMS' General Counsel stated that JAMS' Policy on

Employment Arbitration Minimum Standards of Procedural Fairness (the

"Minimum Standards") would apply to each arbitration proceeding,

"notwithstanding any contrary provision in the parties' arbitration agreement" (the

"June 21 Opinion").  *Id.*, ¶ 11, Ex. 9.[4]  The June 21 Opinion further stated that while

"[t]he Minimum Standards do not prevent an employee from contributing to JAMS

fees," JAMS would continue to issue invoices in accordance with the Minimum

Standards absent employee agreement.  Finally, the June 21 Opinion stated that,

although the parties could direct any further dispute about the applicability of the

---

[3] Plaintiff is a resident of Washington state and subject to Washington law.  D.I. 1,
¶ 33.  Washington permits fee sharing unless there is claimant-specific evidence
that "prohibitive costs are likely to render the arbitral forum inaccessible."  *Mendez
v. Palm Harbor Homes, Inc.*, 111 Wash.App. 446, 465 (2002); *see also Green Tree
Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000).
[4] JAMS' Minimum Standards provides that "[t]he only fee that an employee may
be required to pay is JAMS' initial Case Management Fee. All other costs must be
borne by the company…"  Meckley Decl., ¶ 9, Ex. 7.

Minimum Standards to the assigned arbitrator in each case, *JAMS would retain the right to "make a final determination" on the issue. Id.* This contradicts the plain language of the DRA, which expressly states that the arbitrator shall resolve any disputes relating to fee-sharing.[5]

On June 28, 2023, Twitter notified JAMS that: the Minimum Standards are separate and distinct from the JAMS Rules; the parties did not agree to abide by the Minimum Standards in the DRA; the Minimum Standards apply only where arbitration is mandated as a condition of employment, which was not true here where the DRA expressly gives employees the right to opt out; and the DRA expressly permitted apportionment of fees under applicable law and, thus, the June 21 Opinion "prevents Twitter from exercising its contractual rights and improperly negates a material provision in the dispute resolution agreements should Twitter proceed in accordance with [the] decision." *Id.*, ¶ 12, Ex. 10. Rather than abandon its rights under the DRA, Twitter declined to proceed under the Minimum Standards—but it did not decline to arbitrate—for arbitration demands in jurisdictions where fee-sharing is lawful. *Id.*

In response, on June 30, 2023, JAMS' General Counsel wrote to the parties observing that employees could elect to contribute to JAMS fees. *Id.*, ¶ 13, Ex. 11.

---

[5] No arbitrator has been appointed in the Woodfield arbitration proceeding and thus no determination from an arbitrator regarding fee-sharing has been made with respect to Woodfield.

The letter stated that if a claimant wished to waive the Minimum Standards and "share JAMS fees according to the underlying arbitration clause, they should advise JAMS and Respondent accordingly." *Id.*

### C.    The Present Lawsuit.

On July 18, 2023, Plaintiff filed the present lawsuit alleging claims that fall within the scope of arbitrable claims under the DRA.  Plaintiff's Complaint alleges nine separate claims on behalf of himself and a putative class of "[a]ll Twitter employees who were laid off on or around November 4, 2022 through October 31, 2023."  D.I. 1, ¶¶ 189, 206-307.  Plaintiff's Complaint also alleges a "DRA Subclass" on behalf of "[a]ll Twitter employees who were laid off on or around November 4, 2022 through October 31, 2023 with whom Twitter has a DRA Defendants have indicated they will breach, inter alia, deliberately delaying the arbitrations and refusing to pay arbitral fees as required by the DRA and the rules of JAMS and the American Arbitration Association." *Id*. ¶ 190.

Although Plaintiff asks for a declaration that Twitter has breached the DRA in this way, Plaintiff does not seek to compel arbitration under Section 4 of the FAA in accordance with the terms of the agreement, even though that procedure would enable the Court to address Plaintiff's arguments about the meaning of the DRA's arbitration fees provision.

## IV.  ARGUMENT

### A.  Plaintiff's Individual Claims Should Be Stayed and the Class Claims Should Be Dismissed Because Plaintiff's Claims are Subject to a Mandatory Arbitration Agreement.

*1.    The FAA Governs the DRA.*

The DRA expressly incorporates the FAA and is subject to and governed by its terms.[6]  *See* Wegman Decl., ¶ 5, Ex. A, § 1.  The FAA "reflects the fundamental principle that arbitration is a matter of contract."  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  Section 2 of the FAA guarantees that:

> A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

By its plain terms, Section 2 requires courts to place arbitration agreements "on an equal footing with other contracts, and requires courts to enforce them according to their terms."  *Rent-A-Center*, 561 U.S. at 67; *see also Am. Express*

---

[6] The FAA also applies because Twitter's business plainly "involve[es] commerce."  *See* 9 U.S.C. § 2.  Courts broadly construe the phrase "involving commerce" to cover any contract affecting interstate commerce to the full extent of Congress's Commerce Clause power.  *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied–Bruce Terminix Cos.*, 513 U.S., at 273–274, 115 S.Ct. 834).  The Third Circuit has held that the Internet, on which Twitter operates, is both a channel and instrumentality of interstate commerce.  *See United States v. MacEwan*, 445 F.3d 237, 245, n. 8 (3d Cir. 2006) (citations omitted).

*Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *see also Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018).  Section 4, in turn, allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition for a district court order "directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  The FAA "leaves no room for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Under the FAA, "[the] Court's task is to determine whether 'a valid agreement to arbitrate exists between the parties and [whether] the specific dispute falls within the substantive scope of that agreement.'"  *Dizon v. J.P. Morgan Chase*, No. CV 22-716 (MN), 2023 WL 2456063, at *2 (D. Del. Mar. 10, 2023) (quoting *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998)).  If the answer to both questions is "yes," then the Court must compel arbitration.  *Sanum Investment Limited v. San Marco Capital Partners LLC*, 263 F. Supp. 3d 491, 495 (D. Del. 2017) (citations omitted).  Here, because the answer to both inquiries is plainly "yes," the Court should compel Plaintiff to arbitrate his individual claims.

2.      *Plaintiff Concedes That He Signed the DRA.*

It is undisputed that Plaintiff signed a DRA with Twitter requiring him to

arbitrate all claims that are covered by the terms of the DRA.[7]  The Complaint is

replete with allegations that he signed the DRA.  *See, e.g.,* D.I. 1, ¶ 17 ("Plaintiff

signed the DRA…"); *see also id.*, ¶ 20 ("Plaintiff affirmatively pleaded that he had

signed the DRA…"); *id.*, ¶ 160 ("Plaintiff knows he signed his DRA…").

3.      *The DRA Encompasses the Claims Alleged in Plaintiff's Complaint.*

"In construing the scope of an arbitration clause, courts generally operate

under a pronounced 'presumption of arbitrability.'"  *Pick v. Discover Financial*

*Services, Inc.*, No. CIV. A. 00-935-SLR, 2001 WL 1180278, at *3 (D. Del. Sept.

28, 2001) (citing *Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000).

"[W]here a written agreement evidences an intent on the part of the contracting

parties to arbitrate the dispute in question, a court must compel the parties to

arbitrate that dispute."  *CardioNet, Inc. v. Cigna Health Corp.*, 751, F.3d 165, 172

(3d Cir. 2014) (citations omitted).  A claim is subject to arbitration "unless it may

be said with positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the asserted dispute."  *United Steelworkers of Am. v.*

---

[7] As set forth *supra*, Twitter objected to Plaintiff's Demand for Arbitration because it did not comply with the January 19 Opinion or JAMS Rule 5(a).  Twitter has since confirmed that Plaintiff did sign the DRA and did not opt out of it.  Wegman Decl., ¶¶ 5, 8.

*Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

Here, the claims in the Complaint fall within the scope of the DRA.  Count One alleges that Twitter "waived" its right to arbitrate under the DRA and, in so doing, "breached" the DRA.  *See generally* D.I. 1, Count One.  The alleged "breaches" of the DRA consisted solely of Twitter's efforts to *enforce* the DRA's terms (*i.e.*, objecting to Plaintiff's failure to comply with the JAMS Rules and procedural requirements, and declining to proceed under JAMS' Minimum Standards, which do not apply by the DRA's plain terms and would negate Section 6 of the DRA and render it meaningless – *see e.g.,* D.I. 1, ¶¶ 217, 220-222).  Disputes relating to the interpretation of the DRA have been assigned to the arbitrator under Section 1 of the DRA.  Wegman Decl., ¶ 5, Ex. A § 1 ("Disputes covered by this Agreement include, without limitation, disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement"); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (citations omitted) ("the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability'"); *see also Certain*

*Underwriters at Lloyd's London v. Westchester Fire Ins. Co*, 489 F.3d 580, 587-588 (3d Cir. 2007).  As to fee sharing, Section 6 of the DRA states that "any disputes [regarding the apportionment of fees] will be resolved by the Arbitrator." *Id*., § 6.

The remaining counts in Plaintiff's Complaint allege contract claims premised upon Twitter's alleged failure to pay severance benefits, WARN Act violations, employment discrimination, and wage theft.  These claims "aris[e] out of or relate[] to [Plaintiff's] employment with … or termination of employment" with Twitter and therefore fall squarely within Section 1 of the DRA.  *Id.* § 1.  The DRA therefore encompasses all the claims at issue in Plaintiff's Complaint.

4.     *The Class Action Waiver is Enforceable.*

Class waivers in arbitration agreements are enforceable under the FAA.  Courts must "rigorously enforce" arbitration agreements according to their terms, including terms that "specify *with whom* the parties choose to arbitrate their disputes."  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (italics in original) (citations and brackets omitted).  There is no "entitlement to class proceedings for the vindication of statutory rights."  *Id*. at 234.  In *Epic Systems*, 138 S. Ct. at 1632, the Supreme Court confirmed that arbitration agreements in the employment context are no exception to the rule that class waivers are enforceable under the FAA.

16

Here, Plaintiff expressly waived his right to file or participate in a class action when he entered into the DRA:

> **You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis**.  Employee and the Company agree that any arbitration will be limited to the claims between Employee and the Company individually.  Employee acknowledges and agrees that Employee and the Company are each waiving the right to participate as a plaintiff class member in any purported class action, collective action or representative action proceeding ("Class Action Waiver").

Wegman Decl., ¶ 5, Exh. A § 5 (emphasis in original).

Only the Court is authorized to resolve the enforceability of the class action waiver.  *See id*.  Because the plain language in the DRA clearly prohibits arbitration on a class basis, and because such waivers are enforceable as a matter of law, the Court should compel Plaintiff to submit his claims to arbitration on an individual basis only.  *See, e.g., Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 188 (3d Cir. 2010) (affirming District Court order compelling the parties to arbitrate their claims on an individual basis).

### B.   By Filing a Declaratory Judgment Action, Plaintiff Is Trying to Force Twitter to Waive Its Right to Arbitrate Under the FAA.

The Complaint alleges, contrary to the express terms of the DRA, that Twitter is obligated to pay all arbitration fees and costs.  *See* D.I. 1, ¶ 218.  Filing a declaratory judgment action, however, is not an appropriate way to obtain a judicial determination of this contractual dispute because the plain terms of the DRA assign such contractual disputes to the arbitrator.  If Plaintiff wishes for the

Court to adjudicate the fee sharing issue and believes that the DRA, contrary to its terms, requires Twitter to pay all arbitration fees and costs, he may do so in connection with a petition to compel arbitration under Section 4 of the FAA. *See* 9 U.S.C. § 4 (allowing courts to compel arbitration through "an order directing that such arbitration proceed in the manner provided for in such agreement"); *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010 (9th Cir. 2004) (recognizing that Section 4 permits a party to an arbitration agreement to file a petition to compel arbitration and payment of arbitration fees, but holding that the parties' agreement did not require the opposing party to pay).

Rather than take this accepted approach, Plaintiff improperly filed a putative class action lawsuit alleging not only a breach of the DRA, but numerous other claims clearly encompassed by the parties' arbitration agreement.  Because the DRA clearly commends these disputes to the arbitrator for resolution on an individual basis, Plaintiff has placed Twitter in an unusual situation—one in which Twitter must either simply waive its right to arbitrate this dispute in accordance with the DRA's terms, and accept a judicial resolution, or must assert its right to arbitrate and keep silent as to the substance of Plaintiff's many flawed allegations and legal theories because the DRA leaves those issues to the arbitrator.  Twitter files this Motion to preserve its right to arbitrate under the DRA—in accordance with *all* its terms, including the fee apportionment terms of Section 6 and the class

action waiver.  If Plaintiff believes that the terms of the DRA support obligating Twitter to pay all the fees in an individual arbitration with and Plaintiff wishes to have that issue resolved by this Court in a manner permitted by the DRA, then he can file a petition seeking such relief under Section 4 of the FAA, and Twitter will respond in due course.

Twitter also acknowledges that the parties are in an untenable position given the June 21 Opinion, which candidly announces JAMS' insistence on imposing a fee-allocation rule of its own making, "notwithstanding any contrary provision in the parties' arbitration agreement," unless Plaintiff is willing to waive application of the Minimum Standards.  But the FAA does not permit requiring Twitter to forgo its right to enforce the agreement's terms based on JAMS' misguided and unsupported refusal to adhere to those terms.  *See, e.g.*, *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1100 (N.D. Ill. 2015)  ("[A]ny default fee provisions in the . . . JAMS rules are overridden by the express Agreement that the parties signed.").[8]

---

[8] While Twitter is unwilling and not obligated to waive its contractual rights, it is open to other resolutions that would be consistent with the DRA's terms (including, *e.g.*, proceeding before a substitute arbitration provider).  *See, e.g.*, *Khan v. Dell Inc.*, 669 F.3d 350, 357 (3d Cir. 2012) (If "[t]he contract's language does not indicate the parties' unambiguous intent not to arbitrate their disputes if [the contractually designated arbitration provider] is unavailable[,] Section 5 of the FAA requires a court to address such unavailability by appointing a substitute arbitrator.").

## V.    CONCLUSION

For the foregoing reasons, Twitter respectfully requests that this Court issue

an Order compelling arbitration of Plaintiff's claims on an individual basis.

Dated: August 28, 2023                    MORGAN, LEWIS & BOCKIUS LLP

*/s/ Jody C. Barillare*
Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendants X Corp. f/k/a
Twitter, Inc. and X Holdings Corp. f/k/a
X Holdings I, Inc.*