# EXHIBIT 1

# Morgan Lewis

**Eric Meckley**
Partner
+1.415.442.1013
eric.meckley@morganlewis.com

January 5, 2023

**VIA EMAIL PDF ATTACHMENT**

Sarah Nevins
Arbitration Practice Manager
SNevins@jamsadr.com

Nicholaus Mindiola
Billing Specialist
nmindiola@jamsadr.com

Re:   JAMS Reference No. 1601001991:  Twitter's Objections to Demands for Arbitration and Request to Withdraw Invoice No. 6477450 dated January 4, 2023

Dear Ms. Nevins and Mr. Mindiola:

My firm represents Twitter, Inc. ("Twitter") in connection with the demands for arbitration filed on behalf of numerous individual claimants by counsel Lichten & Liss-Riordan, P.C. ("Claimants' Counsel").  Twitter hereby timely objects to JAMS proceeding with any of these demands and requests that JAMS immediately withdraw the invoice issued to Twitter (JAMS no. 6477450) dated January 4, 2023.  Twitter requests that JAMS confirm in writing that it will cease all proceedings and withdraw the pending invoice.  The bases for Twitter's timely objection are as follows:

On December 19, 2022, Claimants' Counsel submitted demands for arbitration on behalf of 100 individuals and then, on December 29, 2022, submitted a demand for arbitration for one additional claimant. On December 29, 2022, Claimants' Counsel sent an email to you and copied counsel for Twitter requesting that JAMS begin the processing of these arbitrations.  In addition, just today Claimants' Counsel apparently submitted demands for arbitration on behalf of an additional 100 persons.

**None of the demands for arbitration submitted by Claimants' Counsel includes an arbitration agreement signed by the individual claimant**.  Rather, each demand attaches an identical *unsigned and undated template form* of a Twitter arbitration agreement.  These submissions by Claimants' Counsel are incomplete and insufficient to confer JAMS with any authority or jurisdiction to initiate arbitrations on behalf of these claimants for multiple reasons.

First, the failure to provide an arbitration agreement signed by any claimant fails to comply with JAMS Rules.  Specifically, JAMS Employment Arbitration Rules and Procedures, Rule 5(a) states:

DB2/ 44625307.1

Morgan, Lewis & Bockius LLP

One Market
Spear Street Tower
San Francisco, CA  94105-1596           +1.415.442.1000
United States                                          +1.415.442.1001

Sarah Nevins
Nicholaus Mindiola
January 5, 2023
Page 2

> "The Arbitration is deemed commenced when JAMS issues a Commencement Letter based upon the existence of one of the following: (i) A post-dispute Arbitration Agreement fully executed by all Parties specifying JAMS administration or use of any JAMS Rules; or (ii) A pre-dispute written contractual provision requiring the Parties to arbitrate the dispute or claim and specifying JAMS administration or use of any JAMS Rules or that the Parties agree shall be administered by JAMS; or (iii) A written confirmation of an oral agreement of all Parties to participate in an Arbitration administered by JAMS or conducted pursuant to any JAMS Rules; or (iv) The Respondent's failure to timely object to JAMS administration, where the Parties' Arbitration Agreement does not specify JAMS administration or JAMS Rules; or (v) A copy of a court order compelling Arbitration at JAMS."

None of these five triggering factors exists here. In pertinent part, the rules require that a "pre-dispute written *contractual* provision" be submitted. The arbitration agreement attached to the demands for arbitration is an unsigned and undated template form, which fails to constitute a "contract" between any of these specific claimants and Twitter. In addition, JAMS Rule 5(a) requires that the arbitration agreement contain a provision "specifying JAMS administration or use of any JAMS Rules or that the Parties agree shall be administered by JAMS[.]" Without submission of the actual arbitration agreement signed and dated by each specific claimant, JAMS has no legitimate basis to find that any specific claimant and Twitter have agreed that JAMS should administer their specific arbitration. Without an actual signed and dated copy of an arbitration agreement between a specific claimant and Twitter agreement, no legitimate basis exists for JAMS to conclude that *these specific claimants and Twitter* agreed to arbitration before JAMS. Because JAMS Rule 5(a) allows an arbitration to commence *only if and when* one of the specified triggering elements is satisfied – and none has been satisfied here (at least to date) – JAMS should not proceed with commencing arbitration and, notably, JAMS should withdraw the January 4, 2023 invoice to Twitter, as Twitter should not be required to pay a non-refundable fee for any demands that are not appropriately before JAMS.

Second, Twitter has a form of arbitration agreement that numerous employees have signed that does *not* specify JAMS as the arbitration provider and instead provides a *different* process for selection and appointment of an arbitrator. This arbitration agreement states:

> "The Arbitrator shall be selected by mutual agreement of the Company and the employee. Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted. If for any reason the parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator. The court shall then appoint an arbitrator, who shall act under this Agreement with the same force and effect as if the parties had selected the arbitrator by mutual agreement. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise."

Sarah Nevins
Nicholaus Mindiola
January 5, 2023
Page 3

This arbitration agreement does not specify (or even mention) JAMS or JAMS Rules. *See* **Exhibit 1** attached hereto for reference to that arbitration agreement. As described above, this agreement expressly states that selection of an arbitrator is subject to the parties agreement or order of a court – and thus makes obvious that the arbitrator and/or arbitration provider may be one of the numerous potential arbitration providers that operate within the United States and need not be exclusively limited to JAMS.

Undoubtedly, many of the claimants on whose behalf Claimants' Counsel has submitted demands signed this arbitration agreement that did *not* specify JAMS and provided a *different* arbitration selection method. It is not surprising that Claimants' Counsel failed to submit signed and dated agreements for these specific claimants because, had she done so, it would be apparent that many of these claimants did *not* sign the blank form template and instead signed the agreement reflected in **Exhibit 1**. JAMS is not authorized and lacks jurisdiction to administer an arbitration where an agreement, such as **Exhibit 1**, does not specify JAMS as the administrator and instead expressly requires a different process for arbitrator selection – a process that Claimants' Counsel here clearly failed to follow.

Third, Twitter objects to JAMS administering or commencing arbitration for any claimant unless and until Claimants' Counsel submits a signed and dated arbitration agreement specifying JAMS as the arbitration provider for that specific claimant.

Fourth, it appears obvious that Claimants' Counsel rushed to submit incomplete and insufficient demands for arbitration for the purpose of leveraging large initial case management fees against Twitter. California Code of Civil Procedure section 1281.97 requires the drafting party to the arbitration agreement to pay all fees or costs to initiate an arbitration within 30 days after the due date. However, because the demands submitted by Claimants' Counsel do *not* confer JAMS with the authority or jurisdiction to administer and/or commence arbitrations against Twitter, JAMS should not issue any invoices to Twitter for any fees – particularly given the fact that a large percentage of these claimants signed arbitration agreements that do not reference JAMS and will have their arbitrations proceed before a different administrator. Therefore, JAMS should immediately withdraw and/or suspend the invoice issued to Twitter (JAMS no. 6477450) dated January 4, 2023.

I request that JAMS confirm in writing that it will cease all proceedings with respect to all of the demands submitted by Claimants' Counsel and withdraw the pending invoice. JAMS should proceed only if and when, and to the extent that, Claimants' Counsel submits an arbitration that is signed and dated by the specific claimant and that specifies JAMS as the arbitration provider.

Please do not hesitate to contact me with any questions.

Sincerely,

*Eric Meckley*

Eric Meckley

Cc: Claimants' Counsel Shannon Liss-Riordan

DB2/ 44625307.1

# EXHIBIT 1

# DISPUTE RESOLUTION AGREEMENT

> This Dispute Resolution Agreement is a contract and covers important issues relating to your rights. It is your sole responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice.

### 1. How This Agreement Applies

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment and survives after the employment relationship terminates. Nothing contained in this Agreement shall be construed to prevent or excuse Employee or the Company from utilizing the Company's existing internal procedures for resolution of complaints, and this Agreement is not intended to be a substitute for the utilization of such procedures.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement.

Except as it otherwise provides, this Agreement also applies, without limitation, to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims.

### 2. Limitations On How This Agreement Applies

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Agreement.

# DISPUTE RESOLUTION AGREEMENT

### 3. Selecting The Arbitrator

The Arbitrator shall be selected by mutual agreement of the Company and the Employee. Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted. If for any reason the parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator. The court shall then appoint an arbitrator, who shall act under this Agreement with the same force and effect as if the parties had selected the arbitrator by mutual agreement. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.

### 4. Starting The Arbitration

All claims in arbitration are subject to the same statutes of limitation that would apply in court. The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the attention of the Company's Legal Department, Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

### 5. How Arbitration Proceedings Are Conducted

In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.

**You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis. Accordingly:**

**(a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver"). The Class Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a class action and (2) a civil court of competent jurisdiction finds the Class Action Waiver is unenforceable. In such instances, the class action must be litigated in a civil court of competent jurisdiction.**

**(b) There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action ("Collective Action Waiver"). The Collective Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a collective action and (2) a civil court of competent jurisdiction finds the Collective Action Waiver is unenforceable. In such instances, the collective action must be litigated in a civil court of competent jurisdiction.**

**(c) There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general representative action ("Private Attorney General Waiver"). The Private Attorney General Waiver shall be severable from this Agreement in any case in which a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances and where the claim is brought as a private attorney**

## DISPUTE RESOLUTION AGREEMENT

**general, such private attorney general claim must be litigated in a civil court of competent jurisdiction.**

Although an Employee will not be retaliated against, disciplined or threatened with discipline as a result of his or her exercising his or her rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class, collective or representative action in any forum, the Company may lawfully seek enforcement of this Agreement and the Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims. Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.

The Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

### 6. Paying For The Arbitration

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

### 7. The Arbitration Hearing And Award

The parties will arbitrate their dispute before the Arbitrator, who shall confer with the parties regarding the conduct of the hearing and resolve any disputes the parties may have in that regard. Within 30 days of the close of the arbitration hearing, any party will have the right to prepare, serve on the other party and file with the Arbitrator a brief. The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

### 8. An Employee's Right To Opt Out Of Arbitration

**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.** The Employee must submit a signed and dated statement on a "Dispute Resolution Agreement Opt Out Form" ("Form") that can be obtained from the Company's Human Resources Department at hr@twitter.com. In order to be effective, the signed and dated Form must be returned to the Human Resources Department within 30 days of the Employee's receipt of this Agreement. An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company. An Employee has the right to consult with counsel of the Employee's choice concerning this Agreement.

# DISPUTE RESOLUTION AGREEMENT

### 9. Non-Retaliation

It is against Company policy for any Employee to be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Human Resources Department.

### 10. Enforcement Of This Agreement

This Agreement is the full and complete agreement relating to the formal resolution of employment-related disputes. Except as stated in paragraph 5, above, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration.

**AGREED:**

TWITTER, INC.

**AGREED:**

EMPLOYEE NAME PRINTED



EMPLOYEE SIGNATURE

Date: