IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRIS WOODFIELD, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>  *Plaintiff*,<br><br>  v.<br><br>TWITTER, INC., X CORP., X HOLDINGS I, INC., X HOLDING CORP., and ELON MUSK,<br><br>  *Defendants*. | C.A. No. 1:23-cv-780-CFC |

**DECLARATION OF LAUREN WEGMAN IN SUPPORT OF DEFENDANT X CORP. f/k/a TWITTER, INC. AND X HOLDINGS CORP. f/k/a X HOLDINGS I, INC.'S**
<u>**MOTION TO COMPEL ARBITRATION**</u>

  I, Lauren Wegman, do declare under the penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

  1. I have worked at Twitter for 4.79 years.  Currently, I hold the title of Senior Director, People.  My team is responsible for Global People Operations which includes employee onboarding and off-boarding and management of employee data and personnel changes.

  2. As part of my job duties, I have personal knowledge of Twitter's current processes and practices, and its historical processes and practices dating back at least to April 2020, for onboarding new employees, including how Twitter presents applicants for U.S. positions with an offer letter and a Dispute Resolution Agreement, the process for applicants to review, sign, and submit documentation

1

relating to their prospective employment, and Twitter's record-keeping systems related to the applicant's execution of the offer letter and Dispute Resolution Agreement and submission of a request, if any, to opt out of the Agreement, all of which Twitter maintains in the ordinary course of business. My knowledge of Twitter's practices is based on information I have learned in the course of my work, including through my review of Twitter documents and my understanding of its systems. If called to testify regarding the facts set forth in this declaration, I could and would testify competently thereto.

   3. Since at least 2020, when Twitter offers a job to an applicant for a position in the United States, a member of Twitter's Global People Operations Team prepares an offer packet in Twitter's internal OWL system, which is Twitter's system for generating onboarding documents for new employees, including an offer letter and onboarding packet. When the offer is accepted, the new hire record—which includes the offer letter and onboarding packet—is then transferred to our HRIS system (called Workday) where an employee file is created. The offer packet includes the applicant's offer letter and a Dispute Resolution Agreement, among other things. Twitter sends the applicant's offer packet to the applicant using the email address that the applicant provided during the application process, or the employee's @twitter.com email address if the offer packet was generated during the conversion from an independent contractor position to a position as a full-time employee.

   4. An applicant's offer letter explains the steps the applicant needs to take to accept the offer, which includes signing the offer letter and the other documents in the offer packet, including the Dispute Resolution Agreement, and returning them to Twitter by a specific date on which the offer expires.

   5. I have reviewed the personnel records for Plaintiff Christopher Woodfield, which contain a signed offer letter and a Dispute Resolution

Agreement bearing Woodfield's signature and dated April 16, 2020. Attached hereto as **Exhibit A** is a true and correct copy of Woodfield's signed offer letter and Dispute Resolution Agreement, which are maintained in his personnel records in the ordinary course of business. On April 16, 2020, Woodfield signed the documents enclosed in the offer packet, including the Dispute Resolution Agreement, via Adobe Sign. A PDF copy of the signed offer packet, which included a signed copy of the Dispute Resolution Agreement, was sent to Woodfield's personal email address.

6. Based on my experience and job responsibilities at Twitter, I know that Twitter's policy is to allow employees to opt out of Twitter's Dispute Resolution Agreement so long as an employee submits a Dispute Resolution Agreement Opt-Out Form to Human Resources within 30 days of receipt of the Dispute Resolution Agreement. Dispute Resolution Agreement Opt-Out Forms are kept in an employee's personnel records in the ordinary course of business. Woodfield does not have a Dispute Resolution Opt-Out Form in his personnel records.

Executed this 28th day of August, 2023, at Atlanta, Georgia.

_____
Lauren Wegman