IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRIS WOODFIELD, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>*Plaintiff*,<br><br>v.<br><br>TWITTER, INC., X CORP., X HOLDINGS I, INC., X HOLDING CORP., and ELON MUSK,<br><br>*Defendants*. | C.A. No. 1:23-cv-780-CFC |

**DEFENDANT ELON MUSK'S OPENING BRIEF
IN SUPPORT OF MOTION TO DISMISS UNDER
<u>FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(6)</u>**

Dated: September 6, 2023

Eric Meckley (*pro hac vice forthcoming*)
One Market, Spear Street Tower
San Francisco, CA 94105
415-442-1000
eric.meckley@morganlewis.com

T. Cullen Wallace (*pro hac vice forthcoming)*
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
713-890-5722
cullen.wallace@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendant Elon Musk*

## TABLE OF CONTENTS

Page

I. NATURE AND STAGE OF PROCEEDINGS ...................................................... 1

II. SUMMARY OF THE ARGUMENT ................................................................... 1

III. SUMMARY OF ALLEGATIONS ........................................................................ 1

    A. The Parties. ................................................................................................. 1

    B. The Twitter Merger. ................................................................................... 2

    C. Before the Merger Closes, Twitter Updates Its Employees Regarding the Pending Merger. ............................................................... 3

    D. Post-Merger, Twitter Lays Off Plaintiff and Offers Him Severance Pay. ............................................................................................ 4

IV. ARGUMENT .......................................................................................................... 4

    A. The Court Should Dismiss Plaintiff's Claims Against Musk Under Rule 12(b)(2) for Lack of Personal Jurisdiction. ...................... 4

    B. Alternatively, the Court Should Dismiss Plaintiff's Claims Against Musk Under Rule 12(b)(6) for Failure to State a Claim. ....... 7

        1. Plaintiff's Fraud Claim (Count VI) Fails Because He Does Not Plausibly Allege Fraud by Musk Under Rule 9(b). ................................................................................................. 8

        2. Plaintiff's Wage Theft Claim (Count IX) Fails Because He Has Not Alleged a Plausible Claim for Individual Liability. ................................................................................................ 11

V. CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009).................................................................................................8

*Clairmont v. Genuity Inc.*,
　No. C02-1876L, 2005 WL 8172671 (W.D. Wash. Mar. 24, 2005) ...................11

*CNH Am. LLC v. Kinzenbaw*,
　No. C.A. 08-945 (GMS), 2009 WL 3737653 (D. Del. Nov. 9,
　2009) ......................................................................................................................6

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
　822 F.2d 1242 (2d Cir. 1987) ..............................................................................10

*Forbes v. Eagleson*,
　228 F.3d 471 (3d Cir. 2000) ................................................................................10

*Granite State Ins. Co. v. UJEX, Inc.*,
　No. CIV. 03-1220 (JBS), 2005 WL 1618792 (D.N.J. July 11,
　2005) ....................................................................................................................11

*IMO Indus., Inc. v. Kiekert AG*,
　155 F.3d 254 (3d Cir. 1998) ..................................................................................4

*Int'l Shoe Co. v. Washington*,
　326 U.S. 310 (1945).................................................................................................5

*Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*,
　844 F. Supp. 2d 519 (D. Del. 2012).....................................................................2

*Lazar v. Super. Ct.*,
　12 Cal. 4th 631 (1996) ..........................................................................................9

*LivePerson, Inc. v. NextCard, LLC*,
　No. C.A. 08-062-GMS, 2009 WL 742617 (D. Del. Mar. 20, 2009) ...................7

*MarkDutchCo 1 B.V. v. Zeta Interactive Corp.*,
   411 F. Supp. 3d 316 (D. Del. 2019), *aff'd*, 2021 WL 3503805 (3d
   Cir. Aug. 10, 2021) ............................................................................................... 8

*Marnavi S.p.A. v. Keehan*,
   900 F. Supp. 2d 377 (D. Del. 2012) ........................................................................ 6

*Monsanto Co. v. Syngenta Seeds, Inc.*,
   443 F. Supp. 2d 636 (D. Del. 2006) ........................................................................ 5

*Naporano Iron & Metal Co. v. Am. Crane Corp.*,
   79 F. Supp. 2d 494 (D.N.J. 1999) ......................................................................... 11

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*,
   263 F. Supp. 3d 498 (D. Del. 2017) ........................................................................ 4

*Plaksin v. NewSight Reality, Inc.*,
   No. 2:19-CV-00458-RGK-SS, 2019 WL 4316255 (C.D. Cal., Apr.
   30, 2019) ............................................................................................................... 12

*Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*,
   No. CIVA 09-022-SLR/MPT, 2009 WL 5184350 (D. Del. Dec. 23,
   2009), ....................................................................................................................... 6

*Rolo v. City Investing Co. Liquidating Tr.*,
   155 F.3d 644 (3d Cir. 1998) ................................................................................. 10

*Round Rock Rsch. LLC v. ASUSTeK Computer Inc.*,
   967 F. Supp. 2d 969 (D. Del. 2013) ........................................................................ 7

*Sathianathan v. Pac. Exch., Inc.*,
   248 F. App'x 345 (3d Cir. 2007) ............................................................................ 5

*Stanley Black & Decker, Inc. v. Gulian*,
   70 F. Supp. 3d 719 (D. Del. 2014) .......................................................................... 8

*Stiley v. Block*,
   130 Wash. 2d 486 (1996) ........................................................................................ 8

*Usher v. White*,
   64 Cal. App. 5th 883 (June 10, 2021) .................................................................. 12

*Wilson v. Zuckerberg*,
   No. CV 18-3049, 2019 WL 9100305 (E.D. Pa. May 8, 2019)..............................5

**Statutes**

10 Del. C. § 3104 ...................................................................................................5

RCW 49.52.070......................................................................................................12

**Other Authorities**

Fed. R. Evid. 201(b)(2) ...........................................................................................2

Fed. R. Civ. P. 9(b) ............................................................................................8, 11

Fed. R. Civ. P. 12(b)(2).............................................................................1, 4, 7, 12

Fed. R. Civ. P. 12(b)(6)...........................................................................1, 7, 11, 12

I.  **NATURE AND STAGE OF PROCEEDINGS**

On July 18, 2023, Plaintiff filed a Complaint (D.I. 1) alleging two claims (Counts VI, IX) against Defendant Elon Musk ("Musk").

Musk now moves to dismiss both claims asserted against him under either Rule 12(b)(2) for lack of personal jurisdiction or under Rule 12(b)(6) for failure to state a claim.

II.  **SUMMARY OF THE ARGUMENT**

1.  Pursuant to Rule 12(b)(2), the Court should dismiss all claims against Musk because Plaintiff identifies no basis for this Court's exercise of jurisdiction over Musk.

2.  Pursuant to Rule 12(b)(6), the Court should dismiss Plaintiff's fraud claim (Count VI) because Plaintiff has neither identified any fraudulent conduct engaged in by Musk nor pled this claim with the requisite level of particularity.

3.  Pursuant to Rule 12(b)(6), Plaintiff's wage theft claim (Count IX) should be dismissed for failure to state a plausible claim of individual liability against Musk.

III.  **SUMMARY OF ALLEGATIONS**

A.  **The Parties.**

Plaintiff Chris Woodfield is a former employee of Twitter Inc.'s Seattle, Washington office. D.I. 1 ("Compl.") ¶ 33. Elon Musk is a resident of Texas. *Id.* ¶ 36. Twitter, Inc. was a Delaware corporation with headquarters in California. *Id.* ¶

1

34.  X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc. are Nevada corporations.  Compl. ¶¶ 34, 35.

### B.      The Twitter Merger.

On April 25, 2022, Twitter entered a merger agreement ("Merger Agreement") with X Holdings I, Inc. and X Holdings II, Inc.  Def.'s Request for Judicial Notice ("RJN") Ex. A[1]; *see also* Compl. ¶ 6.  Musk entered the Merger Agreement "solely for the purposes of Sections 5.4, 6.2(d), 6.3, 6.8, 6.10, 6.11, 6.12 and 9.9 (the '**Specified Provisions**')" as the "**Equity Investor**."  RJN Ex. A (emphasis in original); *see also* Compl. ¶ 6.

The Specified Provisions to which Musk is bound relate solely to financing the merger and administrative aspects of closing the deal.  *Id.*  They ***exclude*** all other sections of the Merger Agreement, such as section 6.9.  Section 6.9, "Employee Benefits," relates to the payment of post-merger severance benefits and also contains a provision expressly excluding employees like Plaintiff as third-party beneficiaries.  RJN Ex. A § 6.9; *see also* Compl. ¶ 7.

---

[1] The Court may consider the Merger Agreement because it is incorporated by reference in the Complaint and is a public record filed with the Securities and Exchange Commission of which the Court may take judicial notice.  Fed. R. Evid. 201(b)(2); *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 524 (D. Del. 2012) (recognizing that on a Rule 12(b)(6) motion, a "court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference").

## C. Before the Merger Closes, Twitter Updates Its Employees Regarding the Pending Merger.

According to Plaintiff, April 2022 to October 2022 was a "time of significant uncertainty" because Twitter was in active negotiations or litigation with Musk regarding the Merger Agreement which had not yet closed. Compl. ¶¶ 6–11, 48–57.

During that time, Plaintiff alleges that Twitter provided several updates regarding employee compensation. Compl. ¶¶ 8–10. For example, Plaintiff alleges that Twitter told employees in April 2022 that "[t]he terms of the agreement specifically protect Tweep [employee] benefits, base salary, and bonus plans . . . so that they cannot be negatively impacted for at least one year from the closing date." *Id.* ¶ 8. Twitter also said that "[i]n the event of a layoff, any employee whose job is impacted would be eligible for severance." *Id.* ¶ 8; *see also id.* ¶¶ 80, 81. Plaintiff further alleges that the next month, May 2022, after Twitter employees continued to inquire about severance, Twitter told its employees that its severance policy for layoffs "was to provide . . . (1) two months base salary . . . (2) pro-rated performance bonuses . . . (3) the cash value of any RSUs that would have vested within three months of separation, and (4) contribution for the continuation of healthcare coverage . . . ." *Id.* ¶¶ 10, 86–91.

3

### D. Post-Merger, Twitter Lays Off Plaintiff and Offers Him Severance Pay.

The merger closed on October 27, 2022. Compl. ¶ 59. Musk had no control over Twitter until the "post-takeover period." *Id*. ¶¶ 102–03.

Plaintiff alleges that on November 4, 2022, Twitter laid off approximately half its workforce, including Plaintiff, and offered those affected employees a severance of "one month base pay." Compl. ¶¶ 112–16.

## IV. ARGUMENT

### A. The Court Should Dismiss Plaintiff's Claims Against Musk Under Rule 12(b)(2) for Lack of Personal Jurisdiction.

Plaintiff fails to meet his burden of alleging facts that support a "prima facie showing of personal jurisdiction" over Musk. *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 502 (D. Del. 2017) (explaining further that a prima facie showing requires facts sufficient to "establish with reasonable particularity" that jurisdiction exists).

In fact, Plaintiff offers zero factual allegations about Musk's contacts with Delaware (because there are none), let alone facts sufficient to meaningfully analyze whether Plaintiff satisfies Delaware's long-arm statute and the "minimum contacts" standard of the Due Process Clause of the Constitution.[2] *See, e.g.*, Compl. ¶ 36

---

[2] Personal jurisdiction requires a two-part analysis. The first step is evaluating whether personal jurisdiction exists under the long-arm statute of Delaware, the state in which this Court sits. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir.

4

(alleging Musk is a Texas resident); *Wilson v. Zuckerberg*, No. CV 18-3049, 2019 WL 9100305, at *1 (E.D. Pa. May 8, 2019) (concluding complaint should be dismissed for lack of personal jurisdiction because plaintiff bears the burden of establishing jurisdiction and had "failed to allege any facts to suggest minimum let alone any contacts which might support" general or specific personal jurisdiction).[3]

The only connection that Plaintiff draws between Musk and Delaware is that Musk owns more than 50% of Twitter "through X Holdings I," and both X Holdings I and Twitter *were* Delaware corporations before being merged into Nevada corporation X Holdings Corp. and Nevada corporation X Corp., respectively. Compl. ¶¶ 34–35, 171, n.1.  Plaintiff seeks to "pierce the corporate veil" and hold

---

1998); 10 *Del. C.* § 3104 (Delaware long-arm statute).  Second, the court must decide whether exercising personal jurisdiction in Delaware "comports with the Due Process Clause of the Constitution."  *Id.*  Due Process requires the existence of "minimum contacts" between Musk, as the non-resident defendant, and Delaware, as forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945).

[3] Plaintiff's allegations about emails, FAQs, and representations being made about severance compensation are insufficient to create personal jurisdiction over Musk, especially since Plaintiff does not allege who made these communications or where they were directed.  *See, e.g.*, Compl. ¶¶ 8, 89, 115–16; *Sathianathan v. Pac. Exch., Inc.*, 248 F. App'x 345, 347 (3d Cir. 2007) (finding no personal jurisdiction where the only contacts the defendants made with the forum state were a handful of telephone calls, e-mails, and letters); *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 646 (D. Del. 2006) (dismissing for lack of personal jurisdiction because "[p]ress releases and similar communications do not give rise to personal jurisdiction unless they are 'expressly aimed' at the relevant forum").

Musk liable for acts of the corporation based on his conclusory allegation that there exists a "unity of interest and ownership" between Twitter and Musk.  *Id.* ¶ 170.

Insofar as Plaintiff relies on an alter ego theory to establish personal jurisdiction over Musk, this tactic fails as well.  The alter ego theory requires that a "corporation and shareholders operated as a single economic entity," and that the "overall element of injustice or unfairness is present."  *Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*, No. CIVA 09-022-SLR/MPT, 2009 WL 5184350, at *6–7 (D. Del. Dec. 23, 2009), *report and recommendation adopted as modified*, No. CIV. 09-22-SLR/MPT, 2010 WL 1337621 (D. Del. Mar. 31, 2010).  Injustice or unfairness requires an act of "fraud, injustice, or inequity," which Plaintiff does not come close to pleading here.  *Id.* (dismissing claim over individual defendant based on his capacity as President and CEO for lack of personal jurisdiction and denying jurisdictional discovery).

It is "well-established" that "mere ownership or direction of a corporate entity," like Musk's alleged corporate ownership, "without more, is not sufficient to establish that the corporate form should be disregarded."  *CNH Am. LLC v. Kinzenbaw*, No. C.A. 08-945 (GMS), 2009 WL 3737653, at *1 (D. Del. Nov. 9, 2009) (rejecting personal jurisdiction over principal owner, president and CEO); *Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 391–92 (D. Del. 2012) (finding no personal jurisdiction over individual defendants who, for example, received

compensation as officers, because piercing the corporate veil is "appropriate only in exceptional circumstances" and plaintiff failed to adequately plead requisite fraud or injustice); *see also Round Rock Rsch. LLC v. ASUSTeK Computer Inc.*, 967 F. Supp. 2d 969, 978 (D. Del. 2013) (granting motion to dismiss for lack of personal jurisdiction, noting "piercing the corporate veil is an 'extraordinary remedy'"); *LivePerson, Inc. v. NextCard, LLC*, No. C.A. 08-062-GMS, 2009 WL 742617, at *3 (D. Del. Mar. 20, 2009) (granting motion to dismiss for lack of personal jurisdiction under agency and alter ego theories).[4]

For these reasons, Plaintiff has failed to establish that this Court has personal jurisdiction over Musk, and his claims against Musk should be dismissed under Rule 12(b)(2) as a result.

### B.  Alternatively, the Court Should Dismiss Plaintiff's Claims Against Musk Under Rule 12(b)(6) for Failure to State a Claim.[5]

Under Rule 12(b)(6), a claim must be dismissed if a plaintiff fails to allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible

---

[4] Plaintiff also cannot establish that a non-existent corporation's place of incorporation, Delaware, provides a basis for personal jurisdiction here, given personal jurisdiction is determined at the time of filing, when Twitter had already become X Corp., a Nevada corporation. *Round Rock*, 967 F. Supp. 2d 969, 974 (D. Del. 2013) ("[E]xistence of personal jurisdiction is evaluated at the time the complaint was filed.").

[5] Plaintiff also vaguely asserts that Musk should be "personally liable for any amounts awarded on the claims alleged" based on his allegations about piercing the corporate veil, although he does not assert any claims against Musk other than Claims VI (fraud) and IV (wage theft). Compl. ¶¶ 170–88; *see also id.* at pp. 25–36

7

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "are not obligated to accept as true bald assertions, unsupported conclusions and unwarranted inferences, or allegations that are self-evidently false." *Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 726 (D. Del. 2014). Here, even if accepted as true, Plaintiff's allegations fail to state a plausible claim against Musk.

### 1. Plaintiff's Fraud Claim (Count VI) Fails Because He Does Not Plausibly Allege Fraud by Musk Under Rule 9(b).

Federal Rule of Civil Procedure 9(b) sets a heightened pleading standard for fraud claims, requiring Plaintiff "to state with particularity the circumstances constituting fraud or mistake." *MarkDutchCo 1 B.V. v. Zeta Interactive Corp.*, 411 F. Supp. 3d 316, 331 (D. Del. 2019), *aff'd*, 2021 WL 3503805 (3d Cir. Aug. 10, 2021). As applied here, Plaintiff must allege: (1) Musk made a false representation; (2) which Musk knew or believed was false; (3) that Musk intended to induce Plaintiff to act or refrain from acting; (4) that Plaintiff's action or forbearance was taken in justifiable reliance upon ***Musk's*** representation; and (5) that Plaintiff was damaged as a result. *Id.* at 332.[6]

---

(asserting nine counts against various defendants). As noted above, Plaintiff fails to allege required elements for piercing the corporate veil. *See supra* § IV.A.

[6] The elements for fraud are substantially the same under California and Washington law. *Stiley v. Block*, 130 Wash. 2d 486, 505 (1996) (holding elements of fraud under Washington law are: "(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon

8

Plaintiff does not meet this heightened pleading standard. Plaintiff's theory of fraud is that pre-merger (and therefore pre-Musk ownership), **Twitter made representations** about severance packages that, post-merger, were not upheld. Compl. ¶¶ 7–13, 76, 77, 260–73. The Complaint is devoid of allegations that **Musk** made any false representations (and that Musk knew the representations were false, and made them with the intent of inducing Plaintiff's reliance, as required for a fraud claim). Plaintiff concedes that Twitter—**not** Musk—made the alleged representations about future severance benefits. *See, e.g.*, Compl. ¶¶ 56 (litigation commenced), 102–03 (Musk took control post-takeover in October 2022), 260–61 (alleging "Twitter represented" employees would receive favorable severance packages and "Twitter intended" reliance). In an attempt to hold Musk responsible for statements that concededly he did not make, Plaintiff asserts that Musk, X Holdings I, and X Holdings II "intended Twitter to communicate [Musk's] purported agreement to the Severance Stability Promise" (Section 6.9 of the Merger Agreement) to Twitter employees, and that Musk "personally approved many of

---

it; and (9) damages suffered by the plaintiff"); *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996) (holding the elements of fraud in California are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage," and require, when asserted against corporate employer, the names of persons who made representations, their authority to speak, to whom they spoke, and other particularities).

9

Twitter's communications with its employees regarding the Merger Agreement and the protections it offered the employees." Compl. ¶¶ 262–63.

These purely conclusory and threadbare allegations do not give rise to a plausible fraud claim against Musk. Plaintiff's allegations lack the requisite specificity and detail about the alleged false representation, act or omission. For example, Plaintiff offers no specific factual allegations about how Musk purportedly expressed his "intent" for Twitter to make severance representations (and how that equates to him making the false representation himself), or whether Musk knew Twitter's severance statements were false at the time Twitter made them, or which of the "many" Twitter "communications" regarding the Merger Agreement Musk purportedly "approved", or when any of these actions occurred, or whether Musk possessed any authority over Twitter's statements regarding severance pre-merger such that he could be legally accountable for them as if he had made the representations himself (which he did not). *See, e.g.*, *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (dismissing claims against defendants whose actions were not specifically identified and only generally connected to allegedly fraudulent parties); *Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 658–59 (3d Cir. 1998) *abrogation on other grounds recognized by Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000) (affirming dismissal of fraud claim where the "allegations relating to the allegedly fraudulent scheme are quite

10

detailed," but complaint "lacks any specific allegations" about who precisely made representations, how, when, and who received that information).[7]

The Court should dismiss Count VI against Musk for failure to state a plausible claim of fraud.

### 2. *Plaintiff's Wage Theft Claim (Count IX) Fails Because He Has Not Alleged a Plausible Claim for Individual Liability.*

Plaintiff's wage theft claim (Count IX) should be dismissed for failure to state a claim under Rule 12(b)(6) because Plaintiff does not plausibly allege facts supporting individual liability against Musk. Plaintiff's conclusory and unadorned allegation that "Plaintiff may bring claims for wage theft against . . . Musk as an individual," and that Musk is now an "owner," is insufficient under Washington and California law. Compl. ¶¶ 102, 304. Plaintiff does not allege that Musk personally engaged in any aspect of the purported "wage theft," and Musk's position at Twitter alone is insufficient to plausibly allege liability. *See, e.g.*, *Clairmont v. Genuity Inc.*,

---

[7] Plaintiff also improperly claims fraud against all defendants by using different parties interchangeably and collectively. *See, e.g.*, Compl. at pp. 32 (asserting fraud against "all Respondents [sic]") ¶¶ 198, 262 (referring to Musk, X Holdings I, and X Holdings II together without any individualized details). Such "collectivized allegations against 'defendants' do not suffice" to state a claim of fraud against an individual defendant. *See, e.g.*, *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999) (explaining further that Rule 9(b) is "not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'"); *Granite State Ins. Co. v. UJEX, Inc.*, No. CIV. 03-1220 (JBS), 2005 WL 1618792, at *8 (D.N.J. July 11, 2005) ("[T]he Third Circuit has held that Rule 9(b) requires a plaintiff to identify the source of the allegedly fraudulent misrepresentation or omission").

11

No. C02-1876L, 2005 WL 8172671, at *4–5 (W.D. Wash. Mar. 24, 2005) (granting summary judgment on wage theft claim under Washington's RCW 49.52.070 because defendant was not "liable simply by virtue of his [CEO] position" and there was no evidence of "willfulness," meaning "knowing and intentional action" where the individual defendant knew or believed payment was owed); *Usher v. White*, 64 Cal. App. 5th 883, 894–97 (June 10, 2021) (granting summary judgment on California wage claim because being "owner" was insufficient absent a showing of "personal involvement" or similar "sufficient participation" in the violation); *Plaksin v. NewSight Reality, Inc.*, No. 2:19-CV-00458-RGK-SS, 2019 WL 4316255 at *4 (C.D. Cal., Apr. 30, 2019) (dismissing California Labor Code claims against an individual defendant because the "allegations pertain[ed] only to [his] role as a corporate officer," and included no "allegation of individual wrongdoing").

The Court should dismiss Count IX for failure to state a plausible claim for wage theft against Musk in his individual capacity.

## V.  CONCLUSION

For the foregoing reasons, Musk asks the Court to dismiss all of Plaintiff's claims against him (Counts VI, IX) for lack of personal jurisdiction under Rule 12(b)(2) and, alternatively, for failure to state a claim under Rule 12(b)(6).

Dated: September 6, 2023

Eric Meckley (*pro hac vice forthcoming*)
One Market, Spear Street Tower
San Francisco, CA 94105
415-442-1000
eric.meckley@morganlewis.com

T. Cullen Wallace (*pro hac vice forthcoming*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
713-890-5722
cullen.wallace@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP

/s/ *Jody C. Barillare*
Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendant Elon Musk*