# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **CHRIS WOODFIELD, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,**<br><br>**PLAINTIFF,**<br><br>**V.**<br><br>**TWITTER, INC., X CORP., X HOLDINGS I, INC., X HOLDING CORP., AND ELON MUSK,**<br><br>**DEFENDANTS.** | **C.A. NO. 1:23-CV-780-CFC**<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL** |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL

Of Counsel
Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice*)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com
lhaygood@kusklaw.com

Joseph L. Christensen (#5146)
CHRISTENSEN & DOUGHERTY LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensendougherty.com

*Attorneys for Plaintiffs*

## **<u>TABLE OF CONTENTS</u>**

I.     Summary of the Argument ................................................................. 1

II.    Statement of Facts .......................................................................... 2

III.   Argument ...................................................................................... 6

   A.   The Court Cannot Enforce an Arbitration Agreement
Defendants Breached ........................................................................ 6

   B.   Defendants' Minimum Standards Argument is Both
Wrong and Irrelevant on This Motion ............................................... 14

   C.   Defendants Do Not Address Their Serial Breach by
Delaying Payments ......................................................................... 17

IV.    Conclusion .................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agerkop v. Sisyphian LLC*, No. CV1910414CBMJPRX
  (C.D. Cal. Apr. 13, 2021) ...................................................................18

*Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091 (N.D. Ill. 2015) .......................16

*Bain Cotton Co. v. Chesnutt Cotton Co.*, No. 5:11-CV-189-C, 2012
  (N.D. Tex. Oct. 17, 2012) ...................................................................13

*Bedgood v. Wyndham Vacation Resorts, Inc.*, 595 F. Supp. 3d 1195
  (M.D. Fla. 2022) ...................................................................16

*Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005)..................................... 8, 10

*Colorado Structures, Inc. v. Ins. Co. of the W.*, 161 Wash. 2d 577,
  167 P.3d 1125 (2007) ...................................................................13

*DMA Intern., Inc. v. Qwest Communications Intern., Inc.*,
  585 F.3d 1341 (10th Cir. 2009) ...................................................................13

*Eliasieh v. Legally Mine, LLC*, No. 18-CV-03622-JSC
  (N.D. Cal. Apr. 21, 2020) ...................................................................... 8, 10

*Fed. Election Comm'n v. O'Donnell*, 209 F. Supp. 3d 727 (D. Del. 2016)...............7

*First Wheel Mgmt. Ltd. v. Inventist, Inc.*, No. CV 17-1059
  (MN) (D. Del. July 27, 2023) ...................................................................13

*Gomez v. MLB Enterprises, Corp.*, No. 15-CV-3326(CM)
  (S.D.N.Y. June 5, 2018) ...................................................................... 8, 10

*Heisman v. Wyndham Vacation Resorts, Inc.*, No. CV2011480KMJBC
  (D.N.J. Mar. 22, 2021) ...................................................................16

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)........................... 10, 14

*James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76 (Del. 2006).................10

*Lang v. PTC, Inc.*, No. CV2104451KMESK (D.N.J. Nov. 12, 2021) ....................15

*Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136 (Cal. App. 1990) ..........................11

*Metro. Park Dist. of Tacoma v. Griffith*, 106 Wash. 2d 425 (Wash. 1986).............11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985)...................................................................7

*N.L.R.B. v. Ne. Oklahoma City Mfg. Co.*, 631 F.2d 669 (10th Cir. 1980) .............18

*Nguyen v. Dental Sleep Masters, LLC*, No. SACV170732DOCDFMX
  (C.D. Cal. Apr. 30, 2018) ...................................................................... 8, 10

*Ranzy v. Extra Cash of Texas, Inc.*, No. CIV.A. H-09-3334
 (S.D. Tex. Mar. 11, 2010) ......................................................16
*Ranzy v. Tijerina*, 393 F. App'x 174 (5th Cir. 2010) ................................16
*Roach v. Tate Publ'g & Enterprises, LLC*, No. 1:15-CV-00917-SAB
 (E.D. Cal. Mar. 20, 2017) .....................................................18
*Samson v. NAMA Holdings, LLC*, 637 F.3d 915 (9th Cir. 2011) ........................ 7, 10
*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) .......................18
*Tolbert v. Sisyphian, LLC*, No. 21-55484 (9th Cir. Sept. 13, 2022).......................18
*Trombley Enterprises, LLC v. Sauer, Inc.*, No. 5:17-CV-04568-EJD
 (N.D. Cal. Sept. 17, 2018) ....................................................11

## Statutes

28 U.S.C. § 1927 ..................................................................13
RCW 7.04A.210(4) ................................................................17

## Rules

D. Del. LR 7.13(c)(2) ..............................................................7

## I.    SUMMARY OF THE ARGUMENT

1.   Defendants refused to arbitrate with Plaintiff Woodfield when he served them a demand for arbitration, objecting that JAMS could not take jurisdiction. Now, Defendants demand that Woodfield *must* arbitrate and ask the Court to compel him to return to JAMS, the forum to which they objected. But courts have long refused to allow litigants to engage in such a bad-faith jurisdictional shell game, and this Court should decline the invitation to be the first to permit it. Defendants' prior behavior was directly inconsistent with – and thereby in breach of – their agreement to arbitrate. As such, Defendants cannot compel Woodfield to arbitrate, and cannot enforce any other aspect of the breached Dispute Resolution Agreement ("DRA"), including the class action waiver.

2.   Defendants have also repeatedly breached Woodfield's DRA – and the DRA of each proposed class member – by refusing to arbitrate under the JAMS Rules as required by the parties' agreement. JAMS's Rules are clear: it will not hear any arbitration to which its Minimum Standards apply unless the employer pays all forum fees and costs other than a small initial filing fee. JAMS (correctly) determined that the Minimum Standards apply to the arbitrations filed against Twitter. Defendants have nonetheless anticipatorily breached the DRA by refusing to pay the forum fees and costs required by the Minimum Standards (or by the

1

American Arbitration Association's analogous rule). Therefore, the class members are entitled to treat the DRA – including its class waiver – as breached and unenforceable.

3.  Perhaps nothing indicates Defendants' flagrant bad faith so much as this: in *this* motion, and in *this* forum, Defendants argue that the Court must compel Woodfield to seek a ruling from JAMS on his anticipatory breach claim, because the DRA delegates that issue to the arbitrator. But in *that* forum, Defendants have argued that JAMS *cannot* rule on the issue. As with Defendants' approach to Woodfield's substantive claims, Defendants are playing both sides of the issue, with the primary goal of delaying, for as long as possible, the substantive reckoning their conduct requires. Because, as noted above, Defendants breached Woodfield's DRA by objecting to arbitration with JAMS, his DRA's delegation of the fees issue is irrelevant, and Woodfield is entitled to seek declaratory relief from the Court on behalf of the prospective class.

## II.   STATEMENT OF FACTS

The facts relevant to this motion are those asserted in the Complaint relating to Defendants' breaches of the DRA: Defendants drafted the DRA referencing the "JAMS Rules," which are defined in the DRA as "the then-current JAMS Employment Arbitration Rules and Procedures." Declaration of Akiva M. Cohen ("Cohen"), ¶ 3; D.I. 14-1 at 8 ("Selecting the Arbitrator"). The DRA includes a

hyperlink to the JAMS Employment Arbitration Rules and Procedures, *id.*, which state that "The Parties shall be deemed to have made these Rules a part of their Arbitration Agreement ('Agreement') whenever they have provided for Arbitration by JAMS under its Employment Rules[.]" Cohen, Ex. 1 (the "Rules"), Rule 1(b). And the DRA expressly provides that the arbitration will be conducted "pursuant to the then-current JAMS Rules." D.I. 14-1 at 8 ("How Arbitration Proceedings Are Conducted").

JAMS will commence an arbitration proceeding only once all payments required under the applicable fee schedule have been received. Rule 5(b). Consistent with the expectation that arbitration be speedy and efficient, JAMS issues its invoices as "due on receipt." Cohen, ¶ 4. Defendants, however, do not pay on receipt as the rules require, but delay *all* payments by weeks or months after the invoice date. *Id.*, ¶¶ 3-7. In this manner, Defendants have delayed every arbitration by months of wasted time. *Id.* Yet Defendants admittedly made no attempt to pay any invoice faster than 30 days past issuance, on the theory that a month's delay of each arbitration for each of the two initial invoices was "reasonable." *Id.*, ¶ 6, Ex. 2.

Defendants also stall any arbitration in which the claimant does not submit a fully executed DRA with their Demand for Arbitration by asking JAMS to decline jurisdiction, despite having no good-faith basis to do so. Cohen, ¶ 14. The Rules

3

state that an arbitration may be commenced based on the existence of a "pre-dispute written contractual provision requiring the Parties to arbitrate the employment dispute or claim and specifying JAMS administration or use of any JAMS Rules or that the Parties agree shall be administered by JAMS." Rule 5(a)(ii). The Rules do not require a claimant to attach a fully executed agreement; the existence of the pre-dispute written contractual provision is sufficient. Defendants notably have never claimed that such an agreement does not exist, nor have they argued any basis on which they could challenge the existence of such an agreement, even while objecting to arbitration at JAMS. Cohen, ¶ 14. Defendants instead trap claimants who did not retain a copy of the executed DRA in a frustrating game of "keep-away," directing them to request the executed copy of their DRAs from an email address that sends them to an automated form which is closed to new entries, or which promises a response in days that actually comes in weeks – or not at all. Cohen, ¶¶ 16-22. Defendants can introduce delay in this manner at their whim.

Defendants also refuse to proceed in arbitration if JAMS requires Defendants to pay the forum fees under the Minimum Standards unless that requirement is duplicated by state law, D.I. 13-10, though Rule 31(c) incorporates the Minimum Standards' fee allocation rules and Defendants agreed in the DRA to abide by the Rules.

Defendants add several additional facts in support of their motion, many of which are outright false or deliberately misleading. For instance, Defendants claim that Mr. Woodfield filed his demand "along with hundreds of other individuals [who] purported to initiate arbitrations without producing signed copies of the DRA." Opp at 1. Not so, and Defendants know it. *See* D.I. 13-3 at 1 (Mr. Meckley noting that the referenced "hundreds of other individuals" involved "separate arbitrations brought by different claimants' counsel [Shannon Liss-Riordan]" months earlier). Mr. Woodfield filed his demand on May 5, 2023, as part of a batch of 33 demands filed at the same time by undersigned counsel; of that batch, only two claimants could not locate fully executed DRAs. Cohen, ¶ 26; D.I. 13-3. Each claimant in that batch attached their own individual DRA, and the two employees who could not locate theirs specifically alleged that they recalled signing their DRA and had not opted out, and they also provided their specific form DRA – signed by Twitter – providing for arbitration with JAMS. *Id*. In contrast, Ms. Liss-Riordan's claimants' referenced filings relied on a single "identical unsigned and undated template form of a Twitter arbitration agreement" DRA that was not applicable to all of the filing claimants and made no individualized claims. *Id.*, ¶¶ 9-10; D.I. 13-1 at 2.

Similarly, Defendants attempt to mislead the Court by suggesting that Mr. Woodfield filed his demand in default of an agreement among counsel that

employees without a copy of their DRA could ask Twitter to provide it prior to filing. Opp at 8. There was no such agreement. Mr. Woodfield's demand was filed on May 5, 2023. Cohen, ¶ 23. The only thing Defendants' counsel agreed to do – on May 4, 2023 – was to "do [his] best to follow-up" if counsel emailed him a list of employees without DRA, after refusing to agree to any timeline for a response and in response to Mr. Woodfield's counsel's express recitation that the employees continued to reject the notion that such a request needed to delay the arbitration. Cohen, Ex. 6. As Defendants' subsequent conduct has plainly demonstrated, Defendants were perfectly capable of locating Mr. Woodfield's DRA in their files after receiving his demand for arbitration.

## III.   ARGUMENT

### A. The Court Cannot Enforce an Arbitration Agreement Defendants Breached

When Plaintiff demanded arbitration with JAMS, Defendants refused, objecting that Plaintiff – who could not locate a *fully* executed copy of his arbitration agreement, only one signed by Twitter – could not compel JAMS to accept the arbitration absent Defendants' consent without attaching the fully executed DRA. D.I. 13-3.  JAMS accordingly declined to commence the arbitration given Defendants' objection. D.I. 13-6. Now that Plaintiff has come to Court, Defendants swing about, attaching the fully executed arbitration agreement that was always in their files, and ask the Court to compel the arbitration Plaintiff

initially sought and *Defendants* refused to participate in. The Court should not entertain such gamesmanship.

On a motion to compel arbitration, the Court engages in a two-step process. First, it assesses whether the parties agreed to arbitrate the claims at issue. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626–628, (1985). Here, there is no dispute that the parties did.[1] Second, the Court must consider "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* That is the issue here, and Defendants spend exactly zero ink addressing it in their legal argument.[2,3]

It is well-settled that a party that has breached an arbitration agreement cannot enforce it. *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 932 (9th Cir. 2011) (permitting parties to compel arbitration after refusing to arbitrate would "create a perverse incentive scheme by rewarding attempts to frustrate contractual

---

[1] Defendants inexplicably devote pages of their briefing to arguing that the DRA is valid and covers the claims in the Complaint. Plaintiff *expressly* alleged that.

[2] *See* D.I. 12 at 12-17 (arguing only (1) the FAA governs the DRA, (2) Plaintiff signed it, (3) the claims are within the scope of the DRA, and (4) class waivers are generally enforceable).

[3] Because Plaintiff's Complaint expressly identified Defendant's breaches of contract as the basis for his claim that he could bring this action, D.I. 1, ¶ 32, and Defendants thus should have addressed this issue in their moving papers, the Court should disregard any new argument on that issue Defendants submit on reply. D. Del. LR 7.13(c)(2). *See also Fed. Election Comm'n v. O'Donnell*, 209 F. Supp. 3d 727, 737 (D. Del. 2016) (argument raised for the first time on reply is waived).

arbitration rights") (cleaned up); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005) (employer that refused to arbitrate breached the arbitration clause and cannot compel arbitration); *Eliasieh v. Legally Mine, LLC*, No. 18-CV-03622-JSC, 2020 WL 1929244, at *5 (N.D. Cal. Apr. 21, 2020) ("Defendant is in material breach of the arbitration agreement and cannot compel Plaintiff to arbitrate his claims"); *Gomez v. MLB Enterprises, Corp.*, No. 15-CV-3326(CM), 2018 WL 3019102, at *12 (S.D.N.Y. June 5, 2018) (defendants cannot enforce an arbitration agreement they materially breached); *Nguyen v. Dental Sleep Masters, LLC*, No. SACV170732DOCDFMX, 2018 WL 6265058, at *9 (C.D. Cal. Apr. 30, 2018) ("because Defendants here refused to submit to arbitration upon Plaintiff'' request… Defendants breached their obligation under the Arbitration Agreement and cannot now seek to enforce [it]"). That rule requires denial of Defendants' motion to compel.

1. Defendants breached the DRA.

Defendants breached the express terms of the DRA that required them to arbitrate with Plaintiff at JAMS. Plaintiff properly initiated arbitration via the procedure provided for in the DRA, filing an arbitration demand with JAMS and transmitting it to Defendants. D.I. 1, ¶ 18; Cohen, ¶ 23. JAMS accepted the filing, invoiced Plaintiff for the initial filing fee, accepted Plaintiff's payment of the filing

fee, and invoiced Defendants for their share of the fees. Cohen, ¶ 25. At that point, Defendants had an obligation, under the DRA, to proceed with arbitration.

Instead, Defendants objected to arbitrating with Mr. Woodfield, arguing that JAMS' rules did not allow for commencement of the arbitration because JAMS would "issue a Commencement Letter [only] based upon … the existence of pre-dispute written contractual provision requiring the Parties to arbitrate the dispute or claim and specifying JAMS administration." D.I. 13-3. Of course, Plaintiff had provided just that; Mr. Woodfield's arbitration demand alleged the existence of that "pre-dispute written contractual provision," Cohen, Ex. 11, ¶ 23, and Defendants now affirmatively argue that Mr. Woodfield's DRA was such an agreement. Nothing in the DRA required Plaintiff to retain a fully-executed copy before he could demand arbitration or allowed Defendants to deny the existence of such a provision – or refuse to arbitrate – simply because he had not done so. Yet that is what Defendants did, thereby breaching the DRA.

Defendants spend much of the fact section of their brief (but no legal argument) protesting that their refusal to arbitrate was allowable *under the Rules*. They note that JAMS had previously declined to commence arbitrations over their objections and had indicated that it would only accept jurisdiction if claimants attached executed DRAs. But whether Defendants complied with their obligations

under the Rules is irrelevant.[4] The only relevant legal question is whether Defendants complied with their obligations *under the DRAs*. Because Defendants' DRA obligated them to arbitrate with Mr. Woodfield, their refusal to do so breached the DRA. *See Samson*, 637 F.3d at 932; *Brown*, 430 F.3d at 1012; *Eliasieh*, 2020 WL 1929244, at *5; *Gomez*, 2018 WL 3019102, at *12; *Nguyen*, 2018 WL 6265058, at *9. That is particularly true given that JAMS' prior communication made clear that it would accept jurisdiction so long as Defendants had simply not contested it. D.I. 13-2 (noting that a respondent's failure to timely object to jurisdiction with JAMS would also be a basis for JAMS issuing a commencement letter). Plaintiff's submission, in other words, was sufficient to commence arbitration with JAMS. The only reason it did not commence was Defendants' improper objection to jurisdiction, in breach of the DRA.

---

[4] With all due respect to JAMS, Defendants did not even do that. JAMS' rules allow commencement based on the *existence* of a pre-dispute written agreement to arbitrate with JAMS, not based on *a copy* of that agreement. Had Defendants moved in court to stay arbitration for failure to provide the copy of the DRA and without affirmatively denying that the DRA was in effect, that motion would have been rejected as frivolous. *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78-79 (Del. 2006) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)) (there is no basis in law to support the contention that an agreement is unenforceable because of the failure to provide a copy). That JAMS made a risk-averse decision to proceeding with the arbitration over Defendants' objection to jurisdiction in the absence of a court order to do so does not *ipso facto* mean that the objection was well-founded.

2. If Defendants' conduct didn't breach the express terms of the agreement, it breached their duty of good faith and fair dealing.

Even were the Court to accept the Defendants' argument that they had no obligation to *arbitrate* under the DRA because Mr. Woodfield had not attached a fully executed version to his arbitration demand, Defendants' conduct would in any event breach the DRA because it does not comport with their duty of good faith and fair dealing in failing to simply supply the fully executed DRA to JAMS in order to facilitate arbitration.[5] The duty of good faith and fair dealing "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Metro. Park Dist. of Tacoma v. Griffith*, 106 Wash. 2d 425, 437 (Wash. 1986). *See also Trombley Enterprises, LLC v. Sauer, Inc.*, No. 5:17-CV-04568-EJD, 2018 WL 4407860, at *3 (N.D. Cal. Sept. 17, 2018). The covenant "is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (Cal. App. 1990).

---

[5] The DRA does not have a choice of law clause and the parties to it were located in Washington and California. Twitter has previously argued that the DRA is governed by the law of the employee's residence – here, Washington – and presumably will do so again in this instance.

Here, Defendants refused to cooperate with Plaintiff in having his demand arbitrated before JAMS, as they were obligated to do, and engaged in bad faith action to frustrate his enjoyment of the right to arbitrate. Defendants' bad faith is excruciatingly clear from the nature of their conduct: they objected to arbitration *not* because they believed Plaintiff had no right to demand arbitration with JAMS, but solely as a means of erecting needless procedural barriers to his claim, and for no purpose other than delay. Indeed, Defendants cannot even argue that they had a right to refuse to be put to the effort of confirming the existence of Mr. Woodfield's executed DRA, because *they did so anyway, but only as a separate procedure that would not facilitate the arbitration*.[6] Because the erection of such needless procedural hurdles is fundamentally antithetical to arbitration, *cf. Bain Cotton Co. v. Chesnutt Cotton Co.*, No. 5:11-CV-189-C, 2012 WL 12882093, at *3 (N.D. Tex.

---

[6] This is part of what makes Defendants' citation to the "prior instance" in which JAMS had required claimants to submit copies of their executed DRAs so thoroughly disingenuous. In that prior circumstance, a *different* attorney had submitted more than a hundred arbitration demands without making any individualized allegations that any particular claimant had a DRA providing for arbitration with JAMS. Cohen Dec. at ¶ 9; D.I. 13-1 at 2. Those demands attached a single purported "exemplar" DRA that was not, in fact, the applicable form DRA for all of the former employees the attorney was representing, some of whom had actually signed an earlier form DRA that did *not* provide for arbitration with JAMS. Cohen Dec. at ¶ 10. That is **very** different from the situation here, in which Defendants acknowledged their obligation to engage in whatever effort was necessary to locate Mr. Woodfield's DRA in their files, but simply refused to engage in that effort without maximally delaying the arbitration.

Oct. 17, 2012) (the "entire purpose" of arbitration is to shorten procedural hurdles), *aff'd*, 531 F. App'x 500 (5th Cir. 2013), there can be no question that doing so breached Defendants' duty of good faith and fair dealing. Indeed, had Defendants raised such a bad-faith objection in a federal court, their counsel would have been subject to sanctions for vexatiously multiplying the proceedings. 28 U.S.C. § 1927; *see also DMA Intern., Inc. v. Qwest Communications Intern., Inc.*, 585 F.3d 1341, 1345-46 (10th Cir. 2009) ("[O]ne who assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail does so at the risk of being sanctioned.") (internal quotations omitted).

3. <u>Plaintiff had no obligation to move to compel arbitration.</u>

Finally, Defendants' complaint that Plaintiff should have moved to compel arbitration is frivolous (Opp at 11, 18). Yes, Plaintiff could have chosen to so move; with Defendants having breached the DRA, Plaintiff had the option of seeking specific performance. But a non-breaching party can choose to enforce the agreement *or* treat it as no longer binding. *See First Wheel Mgmt. Ltd. v. Inventist, Inc.*, No. CV 17-1059 (MN), 2023 WL 4824856, at *3 (D. Del. July 27, 2023); *Colorado Structures, Inc. v. Ins. Co. of the W.*, 161 Wash. 2d 577, 588, 167 P.3d 1125, 1131 (2007) (nonbreaching party "has an election").[7] Plaintiff chose the

---

[7] There should be no dispute Defendants' breach was material; the ability to require Defendants to arbitrate on Mr. Woodfield's demand was the sole benefit of the agreement to Mr. Woodfield.

13

latter, as is his right. That Defendants would have preferred Plaintiff seek to enforce the DRA is of no more moment than their furious backpedaling upon recognizing the consequences of having breached it.

### B. Defendants' Minimum Standards Argument is Both Wrong and Irrelevant on This Motion

Defendants similarly devote pages of their briefing to arguments about the propriety of JAMS' ruling that its Minimum Standards apply to arbitrations under Twitter's form DRA and argue that issue was delegated to the arbitrator. Opp at 18 ("the DRA leaves those issues to the arbitrator"). But that argument misses the point, for multiple reasons.

First, because Defendants breached Mr. Woodfield's DRA by refusing to arbitrate with him, the DRA's delegation of the fees issue is irrelevant. Defendants cannot compel Mr. Woodfield to address that issue in arbitration.

Second, on its own merits, Defendants' recognition that Twitter's employees were entitled to have Defendants' objections to the fee invoices heard by individual arbitrators only confirms the breach. Twitter entered into a DRA requiring it to arbitrate at JAMS under JAMS' procedures. D.I. 14-1. The DRA does not limit JAMS' ability to interpret those rules and procedures and does not carve out for the parties any right to refuse to abide by JAMS' interpretations of its rules while seeking such a ruling, thereby compelling Defendants to abide by those interpretations. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002)

14

(absent contrary provision, arbitration agreement confers on provider ability to interpret its own rules); *Lang v. PTC, Inc.*, No. CV2104451KMESK, 2021 WL 5277190, at *5 (D.N.J. Nov. 12, 2021) (specifically applying that rule to disputes over the Minimum Standards). Yet Defendants announced that they would no longer arbitrate *any* claims with JAMS other than those in California (or other states that independently required the employer to pay the arbitral fees), stopped participating in (or paying invoices for) pending arbitrations, and *actively objected* when one of Plaintiff's colleagues sought to have an arbitrator construe the DRA to address Defendants' arguments that the DRA did not require them to pay fees. Cohen Dec. ¶¶ 30-36.[8] By refusing to participate in the arbitrations and objecting to employees seeking to have an arbitrator decide Defendants' "dispute" about the construction of the DRAs, and by failing to seek "relief" from the arbitrators themselves, Defendants breached the DRAs a second time. Indeed, Defendants are asking that Mr. Woodfield be compelled to an arbitration that *Defendants have*

---

[8] In point of fact, though *in this forum* Defendants argue that the non-payment issue could be the subject of a motion to compel under §4 of the FAA, Opp at 18, in arbitration Defendants' counsel effectively conceded that on any such application Defendants would argue that the Court could *not* address that issue at all, because of the delegation clause. Cohen, ¶ 38.

*already said they will not participate in*. Opp. at 19, n.8 (reiterating that

Defendants will not actually arbitrate with Mr. Woodfield at JAMS).[9]

Third, Defendants' position that the DRA allows them to refuse to pay fees

assessed against them by JAMS is incorrect, and *Bahoor* provides them with no

support. Unlike the arbitration agreement in *Bahoor*, in which the parties expressly

agreed to equally share the arbitration fees, *Bahoor v. Varonis Sys., Inc.*, 152 F.

Supp. 3d 1091, 1100 (N.D. Ill. 2015), the DRA Twitter drafted does *not* provide

---

[9] Defendants off-handedly suggest that the Court can simply substitute a different arbitrator for JAMS under Section 5 of the FAA. But that is wrong thrice over. It is wrong because Section 5 substitution is not an option where the named arbitrator is only "unavailable" because the party seeking substitution refuses to follow the rules of the arbitration provider. *See Heisman v. Wyndham Vacation Resorts, Inc.*, No. CV2011480KMJBC, 2021 WL 1138125, at *4 (D.N.J. Mar. 22, 2021); *Bedgood v. Wyndham Vacation Resorts, Inc.*, 595 F. Supp. 3d 1195, 1203–04 (M.D. Fla. 2022) (same). It is also wrong because the DRA names JAMS as the exclusive arbitrator, rendering the choice of arbitrator integral to the agreement. *Ranzy v. Extra Cash of Texas, Inc.*, No. CIV.A. H-09-3334, 2010 WL 936471, at *5 (S.D. Tex. Mar. 11, 2010), *aff'd sub nom. Ranzy v. Tijerina*, 393 F. App'x 174 (5th Cir. 2010). (Indeed, there is no reasonable argument that a shift from a provider that requires the employer to pay all of the fees to one that requires the employee to bear some portion of the costs would not have mattered to the employees who chose not to opt out). And it is wrong because *substitution would not matter anyway*. The DRA requires arbitration under the JAMS rules and procedures. Those rules and procedures require Defendants to pay the arbitration fees. *See* JAMS Employment Arbitration Rules, Rule 2 (providing that the parties may not agree to procedures that vary from the Minimum Standards), Rule 31(c) (requiring that the drafting party pay the forum fees where the arbitration is based on an agreement the employee was required to sign as a condition of employment, as also provided by the Minimum Standards). So any "substitute" arbitrator would need to apply the very same rules Defendants refuse to arbitrate under.

16

that the parties will equally share the arbitration fees. Rather, the DRA provides that the arbitration fees will either (1) be paid entirely by Twitter if required by law; or (2) allocated as required by the law of the employee's home state. Opp. Ex. A at 6. Washington law does not require Mr. Woodfield to bear 50% of the arbitration fees; on the contrary, it provides as a default that such fees must be paid as allocated by the arbitrator. RCW 7.04A.210(4). And any arbitrator in a JAMS arbitration can only allocate such fees as allowed by JAMS' rules. Thus, JAMS' application of its rules is consistent with – not contrary to – the DRA Twitter crafted and the parties signed. That Defendants now *wish they had* included a provision providing for equal allocation of the arbitral fees does not give Defendants license to misrepresent to the Court that such a provision already exists.

In sum, Defendants have repeatedly breached the DRAs, and cannot compel arbitration or rely on the delegation or class action waiver clauses contained in that agreement.

## C. Defendants Do Not Address Their Serial Breach by Delaying Payments

Finally, Defendants motion does not address – and therefore entirely concedes – yet another breach Plaintiff alleged in the Complaint: Defendants' material breach of the arbitration agreements by deliberately delaying payments in violation of the rules of the arbitration provider. D.I. 1, ¶¶ 137-144. Because speed

and efficiency are defining elements of arbitration, *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010), Defendants' deliberate refusal to abide by JAMS' invoicing rules – which provide that invoices are due on receipt – to obtain a sixty-plus day delay by refusing to timely pay such invoices, Cohen Dec. ¶¶ 3-7, is itself a material breach of the arbitration agreements that precludes any attempt by Defendants to enforce those same agreements. *See Agerkop v. Sisyphian LLC*, No. CV1910414CBMJPRX, 2021 WL 1940456, at *3 (C.D. Cal. Apr. 13, 2021) (refusing to compel arbitration where defendant materially breached arbitration agreement by delaying payment of invoices), *appeal dismissed sub nom. Tolbert v. Sisyphian, LLC*, No. 21-55484, 2022 WL 16844513 (9th Cir. Sept. 13, 2022); *Roach v. Tate Publ'g & Enterprises, LLC*, No. 1:15-CV-00917-SAB, 2017 WL 6733983, at *3 (E.D. Cal. Mar. 20, 2017) ("Defendants' failure to pay the costs of arbitration has resulted in the claims not having an expeditious resolution"). *Cf. N.L.R.B. v. Ne. Oklahoma City Mfg. Co.*, 631 F.2d 669, 673 (10th Cir. 1980) (approving finding that the employer's "repeated failure to honor its contractual obligation to pay the monthly bonus in timely fashion constituted a material breach of the contract" excusing the employees from its obligations). A defendant who wantonly disregards the contract when doing so benefits them should, in equity, lose the protections of that contract.

## IV.   Conclusion

Faced with an arbitration demand from a former employee they knew had signed an arbitration agreement, Defendants opted to play delaying games, refusing to appear at JAMS and instead insisting that Mr. Woodfield had to first ask Twitter for the fully executed DRA from its files, and wait for Twitter's response, before he could press his claims in arbitration. That was consistent with Defendants' general policy of delaying their former employees' arbitrations without regard to their obligations under the DRAs they now seek to enforce. And Defendants have also announced that they will not arbitrate with those employees at JAMS after all.

To the extent that Defendants now find themselves in an "untenable position," D.I. 12 at 19, it is a position entirely of their own making. Defendants drafted the DRA, selected JAMS as the arbitration provider, selected the JAMS rules to govern the arbitration, and required employees to execute the DRA as a condition of employment. When employees attempted, in good faith and in accordance with their contractual obligations, to initiate arbitration, Defendants raised baseless objections to commencing arbitration, and Defendants brought arbitrations to a screeching halt by refusing to comply with their obligations.

Defendants find themselves in their current position because – and only because – of the decisions they made. Defendants must live with the result of their

own actions: they repeatedly breached the DRA and forfeited any argument that Mr. Woodfield remains bound by the contract Defendants repudiated. The motion to compel arbitration must therefore be denied.

Respectfully submitted,

Dated: September 28, 2023

Of Counsel
Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice*)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com
lhaygood@kusklaw.com

/s/ *Joseph L. Christensen*
Joseph L. Christensen (#5146)
CHRISTENSEN & DOUGHERTY LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensendougherty.com

*Attorneys for Plaintiff*