# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRIS WOODFIELD, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>*Plaintiff*,<br><br>v.<br><br>TWITTER, INC., X CORP., X HOLDINGS I, INC., X HOLDING CORP., and ELON MUSK,<br><br>*Defendants*. | C.A. No. 1:23-cv-780-CFC |

## DEFENDANT X CORP. f/k/a TWITTER, INC. AND X HOLDINGS CORP. f/k/a X HOLDINGS I, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION

Dated: October 17, 2023

Eric Meckley (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
415-442-1000
eric.meckley@morganlewis.com

T. Cullen Wallace (*pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
713-890-5722
cullen.wallace@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendants X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc.*

## **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................1

II.    ARGUMENT...............................................................................................2

       A.    Twitter Did Not Breach the DRA. ....................................................2

             1.    Twitter Neither Refused to Arbitrate Woodfield's Claims
                   Nor Breached the DRA by Insisting on Compliance with
                   JAMS Rule 5(a). .....................................................................2

             2.    Plaintiff's Untimely Payment Argument Is Baseless. ...............5

             3.    Twitter Is Not Bound by The JAMS Minimum Standards........6

       B.    Twitter Has Consistently Sought to Enforce the DRA
             According to Its Terms......................................................................8

III.   CONCLUSION..........................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accretive Tech. Grp., Inc. v. Adobe Sys., Inc.*,
   No. 15-cv-309, 2015 WL 4920079 (W.D. Wash. Aug. 17, 2015) ....................... 5

*Agerkop v. Sisyphian LLC*,
   No. 19-cv-10414, 2021 WL 1940456 (C.D. Cal. Apr. 13, 2021),
   *appeal dismissed*, 2022 WL 16844513 (9th Cir. Sept. 13, 2022) ....................... 6

*Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ............................................................................... 1, 9

*Brown v. Dillard's, Inc.*,
   430 F.3d 1004 (9th Cir. 2005) ................................................................... 4

*Cox v. Ocean View Hotel Corp.*,
   533 F.3d 1114 (9th Cir. 2008) ................................................................... 4

*Cutter & Buck, Inc. v. Genesis Ins. Co.*,
   306 F. Supp. 2d 988 (W.D. Wash. 2004), *aff'd*, 144 F. App'x 600
   (9th Cir. 2005) ..................................................................................... 1, 8

*Eliasieh v. Legally Mine*,
   LLC, No. 18-cv-3622, 2020 WL 1929244 (N.D. Cal. Apr. 21,
   2020) ..................................................................................................... 4

*Fleetwood v. Stanley Steemer Int'l, Inc.*,
   725 F. Supp. 2d 1258 (E.D. Wash. 2010), *aff'd sub nom.
   Fleetwood v. Stanley Steemer Int'l*, 446 F. App'x 868 (9th Cir.
   2011) ..................................................................................................... 5

*Gomez v. MLB Enterprises, Corp.*,
   No. 15-cv-3326, 2018 WL 3019102 (S.D.N.Y. June 5, 2018) ........................... 4

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ................................................................... 7

*Nguyen v. Dental Sleep Masters, LLC*,
   No. 17-cv-732, 2018 WL 6265058 (C.D. Cal. Apr. 30, 2018) ...................... 4, 5

*NLRB v. Ne. Oklahoma City Mfg. Co.*,
    631 F.2d 669 (10th Cir. 1980) ...................................................................................6

*Priority Healthcare Corp. v. Aetna Specialty Pharmacy, LLC*,
    590 F. Supp. 2d 663 (D. Del. 2008) ..........................................................................1

*Roach v. Tate Publ'g & Enters., LLC*,
    No. 15-cv-917, 2017 WL 6733983 (E.D. Cal. Mar. 20, 2017) .................................6

*Samson v. NAMA Holdings, LLC*,
    637 F.3d 915 (9th Cir. 2011) ....................................................................................4

*Selman v. FCB Worldwide Inc.*,
    No. B168315, 2004 WL 2729656 (Cal. Ct. App. Dec. 1, 2004)
    (unpublished) ............................................................................................................7

*Simeon v. Domino's Pizza LLC*,
    No. 17-cv-5550, 2019 WL 7882143 (E.D.N.Y. Feb. 6, 2019) ..................................7

*Tauriello v. Twp. of Edison*,
    288 F. App'x 825 (3d Cir. 2008) ...............................................................................2

*Welding Eng'rs Ltd. v. NFM/Welding Eng'rs, Inc.*,
    No. 21-1372, 2022 WL 7352206 (3d Cir. Oct. 13, 2022) .........................................8

**Statutes**

9 U.S.C. § 4 ................................................................................................................1, 2, 9

Cal. Code Civ. Proc. §§ 1281 *et seq.* .............................................................................6

**Other Authorities**

JAMS Rule 4 ..................................................................................................................10

JAMS Rule 5(a) ............................................................................................................2, 3

JAMS Rule 31(c) .............................................................................................................7

I.   **INTRODUCTION**

Under the FAA and basic contract law, parties may enforce agreements according to their terms. *See*, *e.g.*, *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *Priority Healthcare Corp. v. Aetna Specialty Pharmacy, LLC*, 590 F. Supp. 2d 663, 668 (D. Del. 2008); *Cutter & Buck, Inc.*, 306 F. Supp. 2d at 1011-12 (W.D. Wash. 2004), *aff'd*, 144 F. App'x 600 (9th Cir. 2005). That is precisely what Twitter seeks to do with the Dispute Resolution Agreement ("DRA") signed by Plaintiff.

Plaintiff argues that Twitter committed a variety of "breaches" of the DRA and waived its right to arbitrate. Not true. Twitter has neither refused to arbitrate with Plaintiff nor disavowed any DRA provision. Plaintiff's asserted "breaches" were all merely efforts to enforce the DRA *as written*. These include (a) insisting that Plaintiff comply with the JAMS Employment Arbitration Rules and Procedures (the "JAMS Rules") for commencing arbitration, and (b) refusing to accept the JAMS Minimum Standards, which are separate from the JAMS Rules, contradict the DRA, and do not apply even on their own terms.

The Court should grant Twitter's Motion, order Plaintiff to arbitrate "in accordance with the terms of the [parties'] agreement," 9 U.S.C. § 4, and dismiss this action.

1

## II.   ARGUMENT

### A.   Twitter Did Not Breach the DRA.

Plaintiff concedes that the parties agreed to arbitrate the claims in his complaint.  D.I. 26, at 7.  Plaintiff argues only that "legal constraints external to the parties' agreement foreclose[] the arbitration of those claims."  *Id.*  Specifically, he cites cases holding that a party that refused to arbitrate cannot compel arbitration.  *Id.*  But Twitter has never refused to arbitrate with Plaintiff.  Twitter simply sought to enforce the parties' agreement according to its terms.[1]  Twitter's effort to *enforce* the terms of the DRA cannot constitute a *breach* of the DRA.  Plaintiff's contrary arguments are meritless.  And, because Twitter has not breached the DRA, let alone materially breached it, Plaintiff cannot treat the DRA as no longer binding.  *See, e.g.*, *Tauriello v. Twp. of Edison*, 288 F. App'x 825, 828 (3d Cir. 2008) ("[I]n the case of a non-material breach, the termination option is not open to the non-breacher.").

### 1.   Twitter Neither Refused to Arbitrate Woodfield's Claims Nor Breached the DRA by Insisting on Compliance with JAMS Rule 5(a).

Plaintiff's claim that Twitter "refused to arbitrate with [him]" is patently false.  *See* Meckley Decl., ¶¶ 5-8, Exs. 3-6.  Twitter expressly stated that it was not waiving its right to arbitrate Plaintiff's claims, and that it was fully willing to proceed with

---

[1] Plaintiff erroneously argues that Twitter's Motion spent "zero ink" addressing Plaintiff's allegations of breach (D.I. 26, at 7).  Twitter explained that the purported breaches "consisted solely of Twitter's efforts to *enforce* the DRA's terms."  D.I. 13, at 15; *see also id.* at 1, 2.  Twitter did not "waive" this argument.

2

arbitration upon Plaintiff's compliance with JAMS' rules. *Id.*, ¶ 7, Ex. 5. Plaintiff's Opposition ignores these undisputed facts.[2]

Plaintiff also argues that Defendants were "obligated" to arbitrate Plaintiff's claims despite his failure to submit a signed agreement, but he cites no authority for this assertion. As Twitter explained, JAMS Rule 5(a), as interpreted by JAMS' General Counsel, prevented Plaintiff from initiating arbitration using an unsigned copy of the DRA. *See* Meckley Decl., ¶ 4, Ex. 2 ("JAMS requests Claimants to … include a <u>signed</u> arbitration agreement for each Claimant[.]"); *see also* D.I. 12, at 7-8. Plaintiff's submission of an unsigned copy meant that under JAMS Rule 5(a), his arbitration proceeding was not properly commenced.[3]

Plaintiff asserts that a signed DRA was not required because the DRA does not specify that a "fully-executed copy" is necessary to commence arbitration. D.I. 26, at 9. But the DRA *does* require arbitration "pursuant to the then-current JAMS

---

[2] Far from refusing to arbitrate, Twitter is currently arbitrating with 65 other claimants represented by Plaintiff's counsel in JAMS proceedings. These other claimants, unlike Plaintiff, submitted signed agreements as JAMS Rules require.

[3] Plaintiff attempts to distinguish his demand from the demands submitted by other claimants' counsel. But JAMS Rule 5(a) applies to all claimants under the DRA. Nor can Plaintiff's demand be viewed in a vacuum. As Plaintiff's counsel is aware, Plaintiff's demand was one of *thousands* of demands for arbitration against Defendants. Given the massive volume of demands, Twitter reasonably chose to adhere to Rule 5(a)'s requirements. Twitter was under no obligation to facilitate the mass filing of arbitration demands against itself. Twitter's enforcement of the JAMS Rules, as reasonably interpreted by JAMS' General Counsel, cannot reasonably be considered a breach of an agreement that expressly incorporates those rules.

3

Rules," and those rules, as JAMS' General Counsel explained, preclude claimants from starting an arbitration without an executed agreement. Wegman Decl., Ex. A, DRA § 5.

Without a properly commenced arbitration, Twitter was not obligated to arbitrate and thus did not repudiate or breach the DRA. When a claimant has not "properly initiated arbitration," the employer "could not have repudiated the agreement" by declining to proceed. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1122 (9th Cir. 2008). In *Cox*, the plaintiff failed to initiate arbitration in accordance with AAA's rules, which the agreement incorporated. Because the plaintiff "did not abide by the terms of the arbitration clause," the Ninth Circuit found that the employer did not breach its agreement to arbitrate. *Id.* at 1123; *see also Nguyen*, 2018 WL 6265058, at *9 ("[A] defendant will only be said to have breached an arbitration agreement when refusing to submit to arbitration upon a plaintiff's request if the plaintiff has properly initiated arbitration proceedings pursuant to the parties' agreement.").[4]

---

[4] The cases cited by Plaintiff are inapposite. In each case, the breaching parties refused to arbitrate as the agreement's terms required. *See Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 932 (9th Cir. 2011) (breaching party "absolutely refused to arbitrate claims asserted against them"); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005) (absolute refusal to arbitrate); *Eliasieh v. Legally Mine, LLC*, No. 18-cv-3622, 2020 WL 1929244, at *5 (N.D. Cal. Apr. 21, 2020) (arbitration terminated for nonpayment of fees and noncompliance with AAA's procedures); *Gomez v. MLB Enterprises, Corp.*, No. 15-cv-3326, 2018 WL 3019102, at *12 (S.D.N.Y. June 5, 2018) (arbitration terminated because defendants "refused

Plaintiff's argument fares no better when repackaged using the implied covenant of good faith and fair dealing. The premise of this argument is that the implied covenant somehow obligated Twitter to excuse Plaintiff's noncompliance with the JAMS Rules incorporated by the DRA. But the duty of good faith and fair dealing cannot override a contract's express terms. *See*, *e.g.*, *Fleetwood v. Stanley Steemer Int'l, Inc.*, 725 F. Supp. 2d 1258, 1276 (E.D. Wash. 2010), *aff'd sub nom. Fleetwood v. Stanley Steemer Int'l*, 446 F. App'x 868 (9th Cir. 2011); *Accretive Tech. Grp., Inc. v. Adobe Sys., Inc.*, No. 15-cv-309, 2015 WL 4920079, at *8 (W.D. Wash. Aug. 17, 2015). Nor does the implied covenant obligate Twitter to actively assist in the mass filing of arbitrations against itself.

### 2. Plaintiff's Untimely Payment Argument Is Baseless.

Plaintiff argues that Twitter breached the DRA by failing to timely pay arbitration invoices. However, Plaintiff ignores the practical reality that because Plaintiff failed to submit a signed DRA, *no invoice for his arbitration ever became due*, and thus no invoice could have been paid "late."

Plaintiff instead relies entirely on invoices issued in *other* arbitrations, which have no bearing on whether Twitter's contract with *Plaintiff* was breached. Wegman Decl., Ex. A, DRA § 5 (Plaintiff agreed to bring any dispute in arbitration "on an

---

to pay the required arbitration fees"); *Nguyen v. Dental Sleep Masters, LLC*, No. 17-cv-732, 2018 WL 6265058, at *9 (C.D. Cal. Apr. 30, 2018) (defendants "refused to submit to arbitration upon Plaintiff's request").

individual basis only"). And, in any event, Plaintiff identifies no statute or cases to suggest that a practice of paying arbitration invoices within 30 days of receipt renders the payment "untimely." At least one state has determined that paying within 30 days is timely. *See* Cal. Code Civ. Proc. §§ 1281 *et seq.* Plaintiff cites zero authority requiring payment on a faster schedule or suggesting that Twitter's payments within this timeframe (again, for other claimants, not him) were untimely or unreasonable.[5]

### 3. Twitter Is Not Bound by The JAMS Minimum Standards.

Plaintiff alleges that Twitter breached the DRA "by refusing to arbitrate under the JAMS Rules as required by the parties' agreement." D.I. 26, at 1. This is also untrue. Twitter agreed to arbitrate under the JAMS Rules. It did not agree to arbitrate under the JAMS Minimum Standards, which are policies that exist separate and distinct from the JAMS Rules and are inapplicable here for multiple reasons.

First, the JAMS Minimum Standards apply only to arbitration provisions "*required* as a condition of employment." Meckley Decl., Ex. 7 at 2 (emphasis

---

[5] In *Agerkop v. Sisyphian LLC*, the breaching party failed to pay one invoice altogether, and failed to pay a different invoice for nearly three months. *See* No. 19-cv-10414, 2021 WL 1940456, at *3 (C.D. Cal. Apr. 13, 2021), *appeal dismissed*, 2022 WL 16844513 (9th Cir. Sept. 13, 2022). *Roach v. Tate Publ'g & Enters., LLC*, involved a total failure to pay arbitration costs. *See* No. 15-cv-917, 2017 WL 6733983, at *3 (E.D. Cal. Mar. 20, 2017). And *NLRB v. Ne. Oklahoma City Mfg. Co.* involved failing to pay monthly bonuses, not arbitration fees. *See* 631 F.2d 669, 673 (10th Cir. 1980).

6

added). That does not describe the DRA here, which states in bolded text: "**Arbitration is not a mandatory condition of Employee's employment at the Company.**" Wegman Decl., Ex. A, DRA § 8. Rather, the DRA expressly allows Plaintiff 30 days "**to opt out and not be subject to this Agreement**." Under well-settled law, arbitration agreements with opt-out provisions are not mandatory conditions of employment. *See, e.g.*, *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016); *Simeon v. Domino's Pizza LLC*, No. 17-cv-5550, 2019 WL 7882143, at *5 (E.D.N.Y. Feb. 6, 2019). Thus, the Minimum Standards are inapplicable by their own terms. *See, e.g.*, *Selman v. FCB Worldwide Inc.*, No. B168315, 2004 WL 2729656, at *3 (Cal. Ct. App. Dec. 1, 2004) (unpublished).[6]

Second, Plaintiff's argument negates the DRA's fees provision, which requires Twitter to pay all fees only where required "under applicable law." Wegman Decl., Ex. A, DRA § 6. "If under applicable law [Twitter] is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law." *Id.* Were the DRA governed by the Minimum Standards, this provision would be superfluous and its mandate that fees be apportioned where permitted by law would never apply; the Minimum Standards would always control and force Twitter to pay all the fees. The

---

[6] JAMS Rule 31(c) does not apply for similar reasons. *See* Cohen Decl., Ex. 1 (JAMS Rule 31(c) applicable only where "an Arbitration is based on a clause or agreement that is required as a condition of employment.")

Court should reject Plaintiff's effort to render this material provision meaningless. *See, e.g.*, *Welding Eng'rs Ltd. v. NFM/Welding Eng'rs, Inc.*, No. 21-1372, 2022 WL 7352206, at *3 (3d Cir. Oct. 13, 2022); *Cutter & Buck, Inc. v. Genesis Ins. Co.*, 306 F. Supp. 2d 988, 1011-12 (W.D. Wash. 2004), *aff'd*, 144 F. App'x 600 (9th Cir. 2005).

**B.     Twitter Has Consistently Sought to Enforce the DRA According to Its Terms.**

Plaintiff portrays Twitter as arguing here that disputes over the DRA's terms are reserved for the Arbitrator while arguing in *Zhang* that the arbitrator should not interpret Section 6 of the DRA. There is no inconsistency. In both matters, Twitter has argued for applying the DRA according to its terms.

What Plaintiff ignores is that JAMS has determined it will *not* adhere to the DRA's terms. JAMS insists that it will apply the Minimum Standards "notwithstanding any contrary provision in the parties' arbitration agreement." Meckley Decl., Ex. 9. JAMS also insists that while "any further issue about whether the Minimum Standards apply in a given case should be directed to the arbitrator in the case," JAMS *retains authority* to "make a final determination" on the issue— despite the DRA's express assignment of this authority to the arbitrator. *Id.* In *Zhang*, the claimant (represented by Plaintiff's counsel) asked the Arbitrator to construe the DRA as requiring Twitter to pay the entirety of the arbitration fees, but without pledging to accept the Arbitrator's interpretation if it conflicts with JAMS's

8

decision to apply the Minimum Standards. *See* Cohen Decl., Ex. 17. Twitter thus argued that the *Zhang* claimant was seeking an advisory opinion and playing "heads-I-win-tails-you-lose": if the Arbitrator ruled in Twitter's favor, the claimant could ignore this ruling given JAMS' insistence that JAMS has final say; but if the Arbitrator ruled against Twitter, the claimant could try to hold Twitter to that ruling. *Id.*

Twitter's position—consistent both in *Zhang* and here—is that the individual arbitrator (not JAMS) has ultimate authority to resolve fees disputes. That is what DRA Section 6 says. Neither JAMS' refusal to adhere to the DRA's terms, nor Plaintiff's false and self-serving pronouncements that Twitter "waived" the DRA, supersede the DRA's unambiguous terms. On the contrary, the FAA makes clear that where, as here, the parties have agreed to arbitrate, "the court shall make an order directing the parties to proceed to arbitration *in accordance with the terms of the agreement*." 9 U.S.C. § 4 (emphasis added); *see Italian Colors*, 570 U.S. at 233 ("[C]ourts must 'rigorously enforce' arbitration agreements according to their terms.") (citation omitted).

The only way to move forward consistent with the FAA—particularly given Plaintiff's opposition to appointing a substitute arbitration provider, *see* D.I. 26 at 16 n.9—is for this Court to make clear that the JAMS Minimum Standards cannot override the DRA. Although JAMS refuses to adhere to the DRA's terms on its own

9

initiative, JAMS will comply with such a directive from this Court. The Minimum Standards state that when their applicability is contested, "JAMS will . . . defer administering the arbitration . . . to allow the contesting party to seek a judicial ruling on the issue" and "will comply with that judicial determination." Meckley Decl., Ex. 7 at 5. If this Court rules that the DRA is not a required condition of employment, cannot be overridden by the noncontractual Minimum Standards, and must be enforced according to its terms, then JAMS will comply with such ruling, and the parties can proceed with the merits of their dispute.[7] The Court should do exactly that.

---

[7] Even if JAMS's current position were supported by the JAMS Rules (it is not), the FAA's directive to enforce the DRA according to its terms would "govern over the Rule." JAMS Rule 4.

10

## III. CONCLUSION

The Court should direct the parties to proceed to arbitration in accordance with the terms of the DRA and dismiss Plaintiff's complaint.

| | |
|---|---|
| Dated: October 17, 2023 | MORGAN, LEWIS & BOCKIUS LLP |
| Eric Meckley (*pro hac vice*)<br>One Market, Spear Street Tower<br>San Francisco, CA 94105<br>415-442-1000<br>eric.meckley@morganlewis.com | /s/ *Jody C. Barillare*<br>Jody C. Barillare (#5107)<br>1201 N. Market Street, Suite 2201<br>Wilmington, Delaware 19801<br>302-574-7294<br>jody.barillare@morganlewis.com |
| T. Cullen Wallace (*pro hac vice*)<br>1000 Louisiana Street, Suite 4000<br>Houston, TX 77002-5005<br>713-890-5722<br>cullen.wallace@morganlewis.com | *Attorneys for Defendants X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc.* |

11