## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRIS WOODFIELD, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, <br><br> PLAINTIFF, <br><br> V. <br><br> TWITTER, INC., X CORP., X HOLDINGS I, INC., X HOLDING CORP., AND ELON MUSK, <br><br> DEFENDANTS. | C.A. NO. 1:23-cv-00780-CFC <br><br> JURY TRIAL DEMANDED |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT MUSK'S MOTION TO DISMISS

Of Counsel

Akiva Cohen (admitted *pro hac vice*)
Dylan M. Schmeyer (admitted *pro hac vice*)
Michael D. Dunford (admitted *pro hac vice*)
Lane A. Haygood (admitted *pro hac vice*)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com
lhaygood@kusklaw.com

Joseph L. Christensen (#5146)
CHRISTENSEN & DOUGHERTY LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensendougherty.com

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

I.    Nature and Stage of Proceedings ...................................................................6

II.   Summary of the Argument ...........................................................................6

III.  Elon Musk is subject to this Court's personal jurisdiction.............................7

   A. Plaintiff Adequately Pleaded Veil-Piercing and Alter Ego...........................10

IV.   This Court should deny Defendant Musk's motion to dismiss under
      Rule 12(b)(6). ...........................................................................................14

   A. Plaintiff's Fraud Claims Are Adequately Pleaded as to Musk. ....................15

   B. Musk Has Individual Liability for Plaintiffs' Wage Theft Claims. ..............18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Arnold v. Soc'y for Sav. Bancorp, Inc., 1993 WL 526781
(Del. Ch. Dec. 17, 1993), aff'd in relevant part, rev'd in part,
650 A.2d 1270 (Del. 1994) ....................................................9

*ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained
Annuity Tr.*, No. CIV.A. 6562-VCP, 2011 WL 4552508
(Del. Ch. Sept. 14, 2011) ...................................................7

*Autrey v. 22 Texas Serv. Inc.,* 79 F.Supp. 735 (S.D.Tex.2000) ...............................12

*Bensusan Rest. Corp. v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996),
*aff'd,* 126 F.3d 25 (2d Cir. 1997) ...........................................9

*Cronin v. Cent. Valley Sch. Dist.*, 12 Wash. App. 2d 99, 456 P.3d 843 (2020) ......19

*Dassault Falcon Jet Corp. v. Oberflex, Inc.,* 909 F.Supp. 354 (M.D.N.C.1995) ....12

*Deutsch v. ZST Digital Networks, Inc.*, No. CV 8014-VCL,
2018 WL 3005822 (Del. Ch. June 14, 2018) ......................................8

*DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242 (2d Cir. 1987) .......17

*Echostar Satellite Corp. v. Ultraview Satellite, Inc.,* No. 01-cv-00739,
2009 WL 1011204 (D.Colo. April 15, 2009) ......................................11

*Espinoza v. Hepta Run, Inc.*, 74 Cal. App. 5th 44 (Cal. App. 2022),
*review denied* (Apr. 27, 2022) ...............................................18

*Fenico v. City of Philadelphia*, 70 F. 4th 151 (3d Cir. 2023) .................................14

*Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403 (Cal. App. 2014) .....................17

*Harco Nat'l Ins. Co. v. Green Farms, Inc.*, 1989 WL 110537
(Del. Ch. Sept. 19,1989) ......................................................10

*Harris v. Harris*, 289 A.3d 2773 (Del. Ch. 2023) ........................................9

*Hazout v. Tsang Mun Ting*, 134 A.3d 274 (Del. 2016) .............................................8

*In re Hydroxycut Marketing and Sales Practices Litigation*,
810 F.Supp.2d 1100, (S.D. Cal. 2011) ..........................................11

*In re World Vision Entertainment, Inc.,* 275 B.R. 641 (M.D.Fla.2002) .................12

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130 (2d Cir. 1993) .......................11

*Kuhn Const., Inc. v. Diamond State Port Corp.*, 990 A.2d 393 (Del. 2010)............7

*Lauter v. Rosenblatt*, 2018 WL 3854160 (C.D. Cal. Aug. 10, 2018)......................16

*Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 216 L. Ed. 2d 815 (2023)............10

*Next Level Ventures, LLC v. AVID USA Techs. LLC*, No. 2022-0699-MTZ, 2023 WL 3141054 (Del. Ch. Mar. 16, 2023) ........................................................8

*Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892 (3d Cir. 2021) ............................15

*Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817 (N.Y. 2016) .............16

*PATS Aircraft, LLC v. Vedder Munich GmbH*, 197 F. Supp. 3d 663 (D. Del. 2016) ..................................................................................................10

*Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Min. & Mill. Co.*, 243 U.S. 93 (1917).................................................................................................10

*Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35 (Del. Ch. 2015)...16

*Realmark Inv. Co. v. Am. Fin. Group,* 171 B.R. 692 (N.D.Ga.1994) .....................12

*Salzberg v. Sciabacucchi*, 227 A.3d 102 (Del. 2020)..............................................12

*Select Creations, Inc. v. Paliafito Am., Inc.,* 852 F.Supp. 740 (E.D.Wis.1994)......12

*Seviour-Iloff v. LaPaille*, 80 Cal. App. 5th 427 (Cal. App. 2022), *as modified on denial of reh'g* (July 21, 2022)....................................................19

*Solae, LLC v. Hershey Canada, Inc.*, 557 F. Supp. 2d 452 (D. Del. 2008) ...........10

*Spay, Inc. v. Stack Media Inc.*, 2021 WL 6053869 (Del. Ch. Dec. 21, 2021).... 9, 10

*TAC-Critical Sys., Inc. v. Integrated Facility Sys., Inc.*, 2011 WL 13267050 (D.D.C. Sept. 2, 2011) ......................................................11

*Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462 (Tex. 2022), *reh'g denied* (Sept. 2, 2022), *cert. denied*, 143 S. Ct. 2493 (2023)....................16

*Trans-World Intern., Inc. v. Smith-Hemion Productions, Inc.*, 972 F.Supp. 1275 (C.D. Cal. 1997) ...................................................................10

*Usher v. White*, 64 Cal. App. 5th 883 (Cal. App. 2021), *reh'g denied* (June 10, 2021)...........................................................................................18

*Vasey v. California Dance Co.*, 70 Cal.App.3d 742 (Cal. 1977) ...........................13

*Winklevoss Cap. Fund, LLC v. Shrem*, 351 F. Supp. 3d 710 (S.D.N.Y. 2019).......17

**Statutes**

10 *Del. C.* § 3104(c)(1) ................................................................................................7

RCW 49.52.050.................................................................................................18

RCW 49.52.070.................................................................................................18

**Other Authorities**

Crespi, *Choice of Law in Veil-Piercing Litigation: Why Courts Should
    Discard the Internal Affairs Rule and Embrace General Choice-of-Law
    Principles*, 64 N.Y.U. Ann. Surv. Am. L. 85, 125 (2008)...................................12

**Treatises**

Rest. 2d. Torts § 533 .........................................................................................16

Restatement (Second) of Conflicts of Laws § 307 (1971) .....................................11

## I.       Nature and Stage of Proceedings

This is Plaintiff's Answering Brief to Defendant Musk's Motion to Dismiss Based on Rule 12(b)(2) as to Counts VI and IX and Alternative Motion to Dismiss Under Rule 12(b)(6) (Doc. 20, 21). By stipulation, this brief is due on October 19, 2023 (Doc. 28).

## II.      Summary of the Argument

The exercise of personal jurisdiction over Defendant Elon Musk is justified for many reasons: (1) he has expressly consented to personal jurisdiction; (2) he has impliedly consented to personal jurisdiction; and (3) Delaware has a specific long-arm statute that would apply in this situation.

Beyond that, Musk's arguments that Plaintiff Woodfield has not adequately pleaded the elements of veil-piercing or alter ego are not well-founded, because Plaintiff has adequately pleaded that Musk has commingled assets and management of the various corporate defendants with his personal assets in the running of Twitter, and so any claims for which Plaintiff does not have a direct cause of action against Musk, Plaintiff would have cause of action against Musk under a theory of alter ego or veil-piercing.

Elon Musk's Rule 12(b)(6) grounds for dismissal must also be denied at this stage because Plaintiff has adequately pleaded causes of action for fraud and wage

theft, which are plausible in light of the facts as alleged in the original Petition (Doc. 1).

### III.       Elon Musk is subject to this Court's personal jurisdiction.

As the Parties have previously represented to the Court, they are in the process of negotiating the final language in a stipulation by which Mr. Musk will withdraw his objection to personal jurisdiction and will expressly consent to jurisdiction in this Court. As such, Plaintiff respectfully requests leave to brief this issue separately if necessitated by the unexpected collapse of those negotiations. To the extent a substantive response is necessary in this opposition, Plaintiff notes:

1) Musk expressly consented to jurisdiction in Delaware for any dispute that "arises out of" the Merger Agreement *or* the merger itself. Cohen, Ex. 1, Sec. 9.10. *See ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Tr.*, No. CIV.A. 6562-VCP, 2011 WL 4552508, at *5 (Del. Ch. Sept. 14, 2011) (such language is broad). Section 9.10 of the Merger Agreement recites that it is binding on "[e]ach of the parties" to the Merger Agreement (a group that includes Musk) and **specifically** includes Musk's agreement to at least some of its terms: "… ***Equity Investor*** … agrees…" Cohen, Ex. 1, Sec.9.10. *Cf. Kuhn Const., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010) (court may not read provisions out of the contract).

2) Musk in any event consented to jurisdiction by serving as an officer of Delaware corporations, as President of the "X Holdings" entities he incorporated in Delaware and CEO of Twitter Inc., a Delaware corporation. 10 *Del. C.* § 3114. *Cf. Hazout v. Tsang Mun Ting*, 134 A.3d 274, 292 (Del. 2016) (officer is a proper party and subject to §3114 jurisdiction when "the claims against him arise out of the same facts and occurrences as the claims against [the corporate defendants]—alleged wrongs [he] committed…as the company's President ..."). This raises no due process concern. *Id. See also Next Level Ventures, LLC v. AVID USA Techs. LLC*, No. 2022-0699-MTZ, 2023 WL 3141054, *22 (Del. Ch. Mar. 16, 2023) (citing *Hazout* and collecting cases); *Deutsch v. ZST Digital Networks, Inc.*, No. CV 8014-VCL, 2018 WL 3005822, *12 (Del. Ch. June 14, 2018) (it "is not a close call").

3) Musk would in any event be subject to personal jurisdiction under Delaware's long-arm statute, 10 *Del. C.* § 3104(c)(1). Counts 1, 5,6, 8, and 9 of the Complaint arise out of (a) Musk's incorporation of a Delaware special purpose entity to merge with the Delaware corporation he intended to acquire; (b) the contract governing that transaction; and (c)

Musk's conduct and communications relating thereto.[1] That is more than sufficient to confer jurisdiction under the long-arm statute. *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 1993 WL 526781, *3 (Del. Ch. Dec. 17, 1993), *aff'd in relevant part, rev'd in part*, 650 A.2d 1270 (Del. 1994); *accord Harris v. Harris*, 289 A.3d 277, 302-03 (Del. Ch. 2023) (§ 3104 authorizes the exercise of personal jurisdiction over a defendant who engages in even a single transaction in Delaware including the formation of a Delaware entity or the negotiation and consummation of a merger involving a Delaware corporation (such as Twitter)).[2]

4) The exercise of personal jurisdiction over Musk will not violate Due Process because the claims are all sufficiently related and involve the same subject matter as to warrant, as a matter of policy, Delaware courts

---

[1] If the Court has personal jurisdiction over Musk on *any* claims, it may exercise jurisdiction over him on *all* of the claims because they are sufficiently related as a factual matter. *Spay, Inc. v. Stack Media Inc.*, 2021 WL 6053869, at *5 (Del. Ch. Dec. 21, 2021). Such an exercise of discretion would be particularly appropriate where the same claims are before the Court against other defendants and all claims are related to the same set of facts and actors.

[2] In his reply brief on this issue in *Arnold v. X Corp*, D.I. 37, Case No. 1:23-cv-00528 (D. Del. 2023), Mr. Musk argued that the Court could not consider arguments related to personal jurisdiction beyond the four corners of the complaint. But Courts assessing personal jurisdiction are not so limited. *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 298 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997); *accord URS Corp. v. Lebanese Co. for Dev. & Reconstruction of Beirut Cent. Dist. SAL*, 512 F. Supp. 2d 199, 216 (D. Del. 2007).

assuming personal jurisdiction to try these related matters before a single tribunal. *See SPay, Inc.*, 2021 WL 6053869 at \*5.  *See also Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2039, 216 L. Ed. 2d 815 (2023) (reaffirming *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Min. & Mill. Co.*, 243 U.S. 93, 96, (1917) and noting "that 'express or implied consent' can continue to ground personal jurisdiction—and consent may be manifested in various ways by word or deed."); *Solae, LLC v. Hershey Canada, Inc.*, 557 F. Supp. 2d 452, 456 (D. Del. 2008). Doing so will not offend traditional notions of fair play and substantial justice. *PATS Aircraft, LLC v. Vedder Munich GmbH*, 197 F. Supp. 3d 663, 672 (D. Del. 2016).

## A. Plaintiff Adequately Pleaded Veil-Piercing and Alter Ego

Plaintiff sufficiently pleaded his claim that Musk is personally liable for the corporate defendants' other liabilities via alter ego or "piercing the corporate veil." There is no significant conflict between Delaware and California veil-piercing law. *See Trans-World Intern., Inc. v. Smith-Hemion Productions, Inc.*, 972 F.Supp. 1275, 1291 (C.D. Cal. 1997), *citing Harco Nat'l Ins. Co. v. Green Farms, Inc.*, 1989 WL 110537, \*4 (Del. Ch. Sept. 19,1989). If the tests differ in any marked way, typically the law of the state of incorporation would apply. *In re Hydroxycut Marketing and Sales Practices Litigation*, 810 F.Supp.2d 1100, 1121 n.10 (S.D.

Cal. 2011). To that extent, California substantive law should apply because Twitter, Inc., is headquartered in California and the facts giving rise to this lawsuit all occurred within California, at Twitter's offices in San Francisco.

But Musk's single-cite-based contention that the Court must simply apply the law of the forum state is wrong. *See*, *e.g.*, *TAC-Critical Sys., Inc. v. Integrated Facility Sys., Inc.*, 2011 WL 13267050, at *4 (D.D.C. Sept. 2, 2011) (collecting cases and engaging in a conflict-of-laws analysis). Veil-piercing presents its own question regarding choice of law. The Restatement (Second) of Conflicts of Laws § 307 states that the "local law of the state of incorporation will be applied to determine the existence and extend of a shareholder's liability to the corporation for assessments or contributions and to its creditors for corporate debts." *See* Restatement (Second) of Conflicts of Laws § 307 (1971). Several states have cited Sec. 307 as indicating that the law of the state of incorporation governs veil piercing claims. *See*, *e.g.*, *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132-33 (2d Cir. 1993) ("Texas substantive law applies to this alter ego claim because Texas is the place of Circle K's incorporation") (citing Sec. 307 for the proposition that the law of the state of incorporation determines when the veil is pierced); *Echostar Satellite Corp. v. Ultraview Satellite, Inc.,* No. 01-cv-00739, 2009 WL 1011204, at *7 (D.Colo. April 15, 2009) (stating "[t]he Restatement provides that the law of the state of incorporation sets the standards for piercing the

11

corporation's veil" and citing § 307 in support of this assertion); *In re World Vision Entertainment, Inc.,* 275 B.R. 641, 662 (M.D.Fla.2002) (citing § 307 in support of application of law of state of incorporation); *Autrey v. 22 Texas Serv. Inc.,* 79 F.Supp. 735, 740 (S.D.Tex.2000) ("The Court looks to the law of the state of incorporation for each corporate Defendant to determine whether its corporate entity should be disregarded.") (citing § 307); *Dassault Falcon Jet Corp. v. Oberflex, Inc.,* 909 F.Supp. 354, 348 (M.D.N.C.1995) (stating that § 307 applies law of state of incorporation to veil-piercing issues); *Select Creations, Inc. v. Paliafito Am., Inc.,* 852 F.Supp. 740, 774 (E.D.Wis.1994) ("A court applies the law of the state of incorporation of the controlled corporation to determine whether the corporate form should be disregarded") (citing § 307); *Realmark Inv. Co. v. Am. Fin. Group,* 171 B.R. 692, 694-95 (N.D.Ga.1994) (citing § 307 in support of application of state of incorporation's law in veil piercing claim).

Plaintiff is not a shareholder and the claims do not involve the corporation's internal affairs; as such, the Court should apply the "most significant relationship" test to determine which state has the stronger interest in applying its veil-piercing law to the conduct at issue. *See Salzberg v. Sciabacucchi*, 227 A.3d 102, 131-34 (Del. 2020). *See also* Crespi, *Choice of Law in Veil-Piercing Litigation: Why Courts Should Discard the Internal Affairs Rule and Embrace General Choice-of-Law Principles*, 64 N.Y.U. Ann. Surv. Am. L. 85, 125 (2008). Because the alleged

conduct occurred in California, where Twitter is headquartered, California has the strongest interest in ensuring that dominant shareholders do not abuse the corporate form to insulate that conduct from liability, and to the extent there is any conflict, the Court should apply California law.

Under California law, a plaintiff need only allege facts to show a unity of interest and ownership, and an unjust result if a corporation is treated as the sole actor. *See Vasey v. California Dance Co.*, 70 Cal.App.3d 742, 749 (Cal. 1977). Here, Plaintiff alleges that Musk, through X Holdings I and its successors, owns more than 50% of Twitter (and its successors) and dominates Twitter's decision-making and operations. D.I. 10, ¶¶294-304. Plaintiff also alleges Musk intermingled his companies' assets, treating them as one and the same – and as extensions of himself – despite their ostensibly separate corporate existences. *Id.*, ¶¶305-306. Plaintiff has also sufficiently alleged it would be inequitable to allow Musk to use the corporate form to escape liability.

By intermingling his corporate assets in the alleged conduct without formally having Twitter contract with the employees of his other companies, Musk has created a situation where—absent claims against Musk himself—the corporate defendants could argue the discriminatory or other wrongful activity was engaged in by Tesla, Space X, or Boring Company employees working as *Musk's* agents, not Twitter's. Indeed, Musk would have every incentive to do so. The only way to

avoid such a shell-game is to recognize that Musk's decision to treat his various corporations as interchangeable personal playthings opens him to personal liability for their actions. Moreover, as Plaintiff alleged, Musk has repeatedly asserted that the debt load **created by his acquisition of Twitter** has driven Twitter to the edge of bankruptcy. D.I. 10, ¶¶ 304-305. Musk **chose** to saddle Twitter with crushing debt despite having more than enough money to pay Twitter's purchase price with no debt. That is sufficient to allege that Twitter was undercapitalized, *id.*, ¶¶308-310, and that allowing him to use that (perhaps deliberate) undercapitalization to avoid liability for obligations taken on *in that very acquisition* would be inequitable and unjust. No more is necessary at the pleading stage.

Thus, as to any cause of action for which Plaintiff does not have a direct claim against Musk, Plaintiff has sufficiently pleaded that Musk can be derivatively liable through veil piercing or alter ego. Musk's factual arguments on those issues must await discovery and trial.

## IV.    This Court should deny Defendant Musk's motion to dismiss under Rule 12(b)(6).

Musk's 12(b)(6) arguments fare no better than his 12(b)(2) motion, dealt with *supra*. To survive dismissal under Fed. R. Civ. Proc. 12(b)(6), Plaintiff needs only show that, accepting all well-pleaded allegations as true and viewing them in the light most favorable to Plaintiff, the claims have facial plausibility. *Fenico v. City of Philadelphia*, 70 F. 4th 151, 161 (3d Cir. 2023). In assessing whether the

claims are adequately pleaded, the Court must "assume the veracity" of all reasonable inferences that can be drawn from the factual allegations and draw all such inferences in favor of Plaintiff. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904, 913 (3d Cir. 2021) (reversing dismissal where district court "asked for direct proof … without permitting the discovery essential to uncovering the evidence"). Plaintiff has exceeded that burden as to each claim.

### A. Plaintiff's Fraud Claims Are Adequately Pleaded as to Musk.

When Musk signed the merger agreement on behalf of X Holdings I on April 25, 2022, he represented that X Holdings intended to provide the promised severance. D.I. 1, ¶69. Musk intended that commitment be communicated to the employees,[3] and in fact approved the communications that conveyed this message to the employees, both in his individual capacity and on behalf of X Holdings I. D.I. 1, ¶¶ 262-63. He did so intending Plaintiffs to rely on those communications and remain at Twitter through the pendency of the merger. D.I. 1, ¶¶268. And, when he signed the agreement and subsequently approved Twitter's representations made to the employees, he in fact had every intent of disregarding his promises. D.I. 1, ¶¶270.

---

[3] That allegation is anything but conclusory. As Plaintiff alleged, from the Merger Agreement's parties' perspective, the purpose of §6.9(a) was to aid in employee retention. *See, e.g.,* D.I. 1, ¶¶ 68-76. That *required* §6.9(a)'s existence be conveyed to the employees.

Musk, as an officer of a corporation, can be held individually liable for fraudulent statements or any knowing misrepresentations made in his representative capacity as officer. *Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 479 (Tex. 2022), *reh'g denied* (Sept. 2, 2022), *cert. denied*, 143 S. Ct. 2493 (2023); *Lauter v. Rosenblatt*, 2018 WL 3854160, at *4 (C.D. Cal. Aug. 10, 2018); *Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 60 (Del. Ch. 2015); *YDRA, LLC v. Mitchell*, 123 A.D.3d 1113, 1114 (2d Dep't 2014). Materially false statements to third parties give rise to fraud liability "so long as the statement was made with the intent that it be communicated to the plaintiff and that the plaintiff rely on it," *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 828 (N.Y. 2016), which Plaintiff alleged here. D.I. 1, ¶¶68-77, 262, 268. *See also* Rest. 2d. Torts § 533 (liability exists where third party justifiably relies on misrepresentation made to another if "the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other").

As noted in the Complaint, Musk admits that neither he nor his corporate co-defendants never intended the Merger Agreement to provide employees with any protections at all, much less special protections. Indeed, fairly read, the Complaint alleges that Musk and his co-defendants specifically agreed to include a provision in Merger Agreement which they intended to have no effect other than to mislead Plaintiff (and those situated similarly to him) and deceive them into remaining

employed at Twitter. Having created an illusory provision, Musk needed to (and did) communicate the representations regarding the stability of employee benefits to Plaintiff to (fraudulently) induce him to remain. Twitter's statements to its employees that the Merger Agreement did provide special protections, which Musk and X Holdings intended that Twitter convey to the employees and approved, were false. These are statements that were specifically made by Musk and X Holdings. *C.f.*, *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1249 (2d Cir. 1987).  That is sufficient.[4]

The fraud claims are also supported by Musk's statement that he would abide by the terms of the Merger Agreement, made when he signed that agreement. It is well-established that "statements of intent to do something in the future, made with the knowledge that the acts will not in fact be performed or with the present intention not to perform them," will support a fraud claim. *Winklevoss Cap. Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 718 (S.D.N.Y. 2019) (quotation omitted); *see also*, *Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403, 1411 (Cal. App. 2014). Here, Plaintiffs pleaded sufficient facts to plausibly allege Musk and X Holdings had no intention of keeping the promise when they made it: that Musk breached

---

[4] Musk's argument that he cannot be held liable for statements made before he owned or controlled Twitter misses the point. Musk is liable for *his own* false statements, which he used Twitter to convey.

the Merger Agreement (for the first time) within weeks of executing it, never intended the Merger Agreement to provide the protections stated in §6.9(a), has a standing policy of not paying bills, does not view legal obligations as sufficient reason to pay, and instituted this policy at Twitter immediately after taking over the company. D.I. 1, ¶¶135-136, 265, and 271. Plaintiff also pleaded that Musk began breaching his and X Holdings' obligations under the Merger Agreement immediately after taking over the company. *Id.*, ¶¶102-116. Plaintiff's allegations are plausible and supported by the facts as alleged in Plaintiff's pleadings. At this stage, that is sufficient to prevail.

### B. Musk Has Individual Liability for Plaintiffs' Wage Theft Claims.

Plaintiff's complaint adequately alleges that Musk bears personal liability on their California and Washington wage theft claims. "[T]o be … liable under section 558.1, an 'owner' … must either have been personally involved in the purported violation … or … had sufficient participation in the activities of the employer … that the 'owner' may be deemed to have contributed to, and thus … 'cause[d]' … a violation." *Usher v. White*, 64 Cal. App. 5th 883, 896–97 (Cal. App. 2021), *reh'g denied* (June 10, 2021). The owner need only "have had some oversight of…operations or…influence on corporate policy that resulted in…violations." *Espinoza v. Hepta Run, Inc.*, 74 Cal. App. 5th 44, 59 (Cal. App. 2022), *review denied* (Apr. 27, 2022). Indeed, courts have no discretion to excuse such an owner

from liability. *Seviour-Iloff v. LaPaille*, 80 Cal. App. 5th 427, 444 (Cal. App. 2022), *as modified on denial of reh'g* (July 21, 2022). Washington labor law, RCW 49.52.070, likewise imposes civil liability where the officer "[w]ilfully and with intent to deprive the employee of any part of his or her wages . . . pay[s] any employee a lower wage than the wage such employer is obligated to pay such employee by . . . contract." RCW 49.52.050 and 49.52.070. "The standard for proving willfulness is low. An employer's failure to pay will be deemed willful unless it was the result of carelessness or error." *Cronin v. Cent. Valley Sch. Dist.*, 12 Wash. App. 2d 99, 118, 456 P.3d 843, 855 (2020).

Unlike the authorities cited by Defendants, in this case there are allegations of Musk's direct involvement in the wage theft. Plaintiff has alleged that Musk knew about Twitter's severance benefits because he agreed in the Merger Agreement to maintain those benefits for the first year after acquiring Twitter. D.I. 1, ¶¶69-73, 104-116. Plaintiff has alleged that Musk never intended to honor the severance stability promise—meaning that he never intended to pay Plaintiff the wages he was due upon dismissal. D.I. 1, ¶266. Plaintiff has pleaded both that Musk exercised general and pervasive control over Twitter's operations, D.I. 1, ¶¶172-181, and that the particular non-payment policies were adopted at Musk's direction. *Id.*, ¶¶181, 271. Further, Plaintiff alleges that Musk, as CEO of Twitter, immediately chose to terminate thousands of employees and offer severance

benefits far lower than Twitter was obligated to pay by contract. D.I. ¶¶102-116. Taken together, Plaintiff's allegations demonstrate that the failure to pay Plaintiff's his severance benefits was not the result of carelessness or error on Musk's part, but that it resulted from a deliberate choice he made. Thus, Plaintiff has adequately pleaded a theory of individual liability for Musk regarding the wage theft claims.

## CONCLUSION

Therefore, considering all the foregoing, Plaintiff respectfully requests that the Court deny, in all its aspects, the motion to dismiss filed by Defendants in this case.

Dated: October 19, 2023

Of Counsel
Akiva Cohen (admitted *pro hac vice*)
Dylan M. Schmeyer (admitted *pro hac vice*)
Michael D. Dunford (admitted *pro hac vice*)
Lane A. Haygood (admitted *pro hac vice*)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com
lhaygood@kusklaw.com

Respectfully submitted,

*/s/ Joseph L. Christensen*

Joseph L. Christensen (#5146)
CHRISTENSEN & DOUGHERTY LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensendougherty.com

*Attorneys for Plaintiffs*