# **EXHIBIT A**

"Evidence is relevant is: (a) it has any tendency to make a fact more of less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401. "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602.

Hearsay is an out of court statement offered to prove the truth of the matter asserted.  Fed. R. Evid. 801.  Hearsay is inadmissible unless an exception applies. Fed. R. Evid. 802.

### EXCERPTS OF THE COHEN DECLARATION THAT ARE INADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE

| | | |
|---|---|---|
| 1. | "These arbitrations have been characterized by a consistent pattern of delay."<br><br>¶ 2. | **Not relevant.**  FRE 401, 402.<br><br>**Speculation.**  FRE 602.<br><br>**Lacks Foundation**.  FRE 602. |
| 2. | "In every case, Defendants have delayed payment of the invoiced fees until roughly 30 days after the due date listed on each invoice. And by this stratagem, Defendants delay *every* arbitration by roughly two months."<br><br>¶ 3. | **Not relevant.**  FRE 401, 402.<br><br>**Speculation.**  FRE 602.<br><br>**Lacks Foundation**.  FRE 602. |
| 3. | "As a result, every arbitration we have filed has been delayed by at least two months – one month waiting for Twitter to pay its case initiation fees, and another waiting for Twitter | **Not relevant.**  FRE 401, 402.<br><br>**Speculation.**  FRE 602.<br><br>**Lacks Foundation**.  FRE 602. |

| | | |
|---|---|---|
| | to pay its initial deposits towards the arbitrator fees. Some have been delayed for far longer, because Defendants reset their internal deadline for payment every time JAMS reissues an invoice." ¶ 5. | |
| 4. | "Defendants have acknowledged that there is no law or rule that allows them to impose these extensive delays; rather, they simply assert that delaying each arbitration for months is 'reasonable.'" ¶ 6, Ex. 2. | **Not relevant.** FRE 401, 402. **Speculation.** FRE 602. **Lacks Foundation**. FRE 602. |
| 5. | "It is evident from the consistency of the payment delays that they are intentional and voluntary, not a result of any flaw in Defendants' payment system. Defendants have consistently declined to confirm when asked that they have ever intended to make payment any sooner than 30 days after the due date, and have previously cited a California law as the basis for that delay." ¶ 7, Ex. 3. | **Not relevant.** FRE 401, 402. **Speculation.** FRE 602. **Lacks Foundation**. FRE 602. |
| 6. | "Defendants have not limited their delay tactics to payment of invoices. Another of Defendants' delay tactics has been refusal to arbitrate unless the claimant has a fully executed copy of their Dispute Resolution Agreement ('DRA') in hand." ¶ 8. | **Speculation.** FRE 602. **Lacks Foundation**. FRE 602. |
| 7. | "The genesis of this tactic appears to have been another attorney's decision | **Not relevant.** FRE 401, 402. |

2

| | | |
|---|---|---|
| | to file arbitration demands for several hundred claimants without making any individualized allegations that any claimant actually had an arbitration agreement with Twitter that required Twitter to arbitrate with JAMS. Instead, for each claimant, she simply filled out the JAMS-provided Demand for Arbitration form reciting that the claimant brought particular claims similar in fact in law to those alleged in various class actions against Twitter (attaching to each demand the applicable class action or actions) and relying on an 'identical unsigned and undated template form of a Twitter arbitration agreement' for all claimants." ¶ 9, Ex. 4. | **Lacks Foundation**. FRE 602. **Speculation.** FRE 602. |
| 8. | "Revealing the bad faith of those objections, Defendants' objection letters to JAMS were extremely carefully worded to avoid suggesting that Twitter denied the existence of the DRA. Indeed, in each instance, Defendants professed a willingness to check the files that would confirm that Claimants had a DRA providing for arbitration with JAMS, but only upon separate request by each claimant for a copy of the DRA." ¶ 14, Ex. 5. | **Not relevant.** FRE 401, 402. **Speculation.** FRE 602. **Lacks Foundation**. FRE 602. |
| 9. | "There was no purpose to Defendants' objection to JAMS' jurisdiction and insistence on that process of a separate request other than to cause delay. The process by | **Not relevant.** FRE 401, 402. **Speculation.** FRE 602. **Lacks Foundation**. FRE 602. |

3

| | | |
|---|---|---|
| | which Defendants would check each employee's client file and confirm the existence of the DRA was no different when it occurred in response to a request by the employee for a copy of their file than it would have been to check the same file and confirm the obligation to arbitrate. Yet Defendants insisted that they would not arbitrate with any claimant who had not either preserved their own copy of the fully executed DRA, or separately requested – and received – it from Twitter." ¶ 15. | |
| 10. | "This was no small hurdle for the former Twitter employees. Rather, Twitter had erected substantial barriers to the employees' ability to successfully request *anything* from the company, and its counsel refused to commit to *any* timeline on which such requests would be processed or honored." ¶ 16. | **Not relevant.** FRE 401, 402. **Speculation.** FRE 602. **Lacks Foundation**. FRE 602. |
| 11. | "On April 23, 2023, in an attempt to resolve this issue and obviate future disputes, I proposed to Defendants' counsel that for each of our clients who were unable to locate their signed DRA, Defendants' counsel would inspect Twitter's personnel files within a week of an emailed request and either provide us with the | **Not relevant.** FRE 401, 402. **Speculation.** FRE 602. **Lacks Foundation**. FRE 602. |

4

| | | |
|---|---|---|
| | signed DRA or confirm that there was none. Defendants' counsel rejected this proposal. In the days that followed, I proposed several alternate procedures in an attempt to resolve this problem; Defendants' Counsel rejected all of them. On May 4, 2023, Defendants' counsel finally made it clear that my clients were on their own, saying, 'Your clients can send an email to People Questions to request their DRAs, as they always have been [sic].' He also said that if counsel emailed him a list, he would 'do his best' to follow up. But he would not provide any sort of timeline for any such follow up, despite multiple prior requests for such a timeline." <br><br> ¶ 17, Ex. 6. | |
| 12. | "The People Questions email address (peoplequestions@twitter.com) was not a functional way to receive information from Twitter. One of my clients emailed People Questions on April 21, 2023, and was directed to a Google form in lieu of a substantive response. That Google form, when launched, stated 'The form People Questions Submission Form is no longer accepting responses. Please contact the owner of the form if you think this is a mistake.'" <br><br> ¶ 18, Ex. 7. | **Hearsay.**  FRE 801, 802. <br> **Not relevant.**  FRE 401, 402. <br> **Lacks Foundation**.  FRE 602. <br> **Speculation.**  FRE 602. |

5

| | | |
|---|---|---|
| 13. | "Nonetheless, our clients who were lacking their DRAs dutifully emailed People Questions as requested by Defendants' counsel in the first week of May 2023. All of them received an apparently automated reply informing them that their requests would be completed within five to seven days. As of the date of this declaration, only one of them has received any response at all."<br><br>¶ 19. | **Hearsay.**  FRE 801, 802.<br>**Not relevant.**  FRE 401, 402.<br>**Lacks Foundation**.  FRE 602.<br>**Speculation.**  FRE 602. |
| 14. | "Continuing the efforts to obtain our clients' fully executed DRAs, my office emailed Defendants' counsel on May 17, 2023, informing them that emailing People Questions had not produced the promised results. This email went unanswered for several days; on May 22, 2023, my office sent a follow-up email. On May 23, 2023 – exactly one month after I had first requested Defendants' counsel's assistance locating my clients' DRAs -- Defendants' counsel responded with all but one of the requested DRAs and explained, 'The process Eric describes below will work, but in these cases it appears to have taken a bit longer than anticipated.' For the final client, Defendants neither provided the requested DRA nor confirmed that there was no DRA in the client's files. To this day, Defendants refuse to concede that their inability to locate an executed DRA in his file means that no such agreement exists, | **Not relevant.**  FRE 401, 402.<br>**Speculation.** FRE 602.<br>**Lacks Foundation**.  FRE 602. |

6

| | | |
|---|---|---|
| | and instead insist that this client must wait an unspecified amount of additional time while Twitter engages in unspecified further activity in an attempt to 'locate' his DRA." ¶ 20, Ex. 8. | |
| 15. | "Encouraged by Defendants' counsel's representation that the process 'would work', another of my clients emailed PeopleQuestions to request her fully executed DRA on May 26, 2023. A true and correct copy of her email with her personally identifying information redacted is attached hereto as **Exhibit 9.** Despite Defendants' counsel's promises, she never received a response." ¶ 21, Ex. 9. | **Hearsay.** FRE 801, 802. **Not relevant.** FRE 401, 402. **Lacks Foundation**. FRE 602. **Speculation.** FRE 602. |
| 16. | "My office emailed Defendants' counsel in a last-ditch effort to obtain this client's DRA on June 7, 2023. We never received a response; as of the date of this declaration, we have been unable to obtain this client's DRA. ¶ 22, Ex. 10. | **Not relevant.** FRE 401, 402. **Speculation.** FRE 602. **Lacks Foundation**. FRE 602. |
| 17. | "That date of hire was after the date on which Twitter updated its DRA to include arbitration with JAMS, and after the date that, according to Defendants' sworn testimony before the Northern District of California, Twitter had developed an automated process by which it ensured that all | **Not relevant.** FRE 401, 402. **Speculation.** FRE 602. **Lacks Foundation**. FRE 602. |

7

| | | |
|---|---|---|
| | employees had executed their DRA before commencing employment at Twitter. Indeed, Defendants have confirmed that Twitter maintains executed declarations in easily accessible files as part of their regular course of business." <br><br> ¶ 24, Ex. 12. | |
| 18. | "JAMS accepted the filing, invoiced Mr. Woodfield for his share of the filing fees, received payment on that invoice, and issued an invoice dated May 8, 2023 to Defendants, due upon receipt, for their share of the initial filing fees." <br><br> ¶ 25. | **Lacks Foundation**. FRE 602. <br> **Speculation.** FRE 602. |
| 19. | "While his colleague wished to proceed with arbitration, Mr. Woodfield elected to accept Defendants' conduct as the breach of the arbitration agreement that it was, and therefore did not oppose Defendants' objection. JAMS accordingly closed Mr. Woodfield's file." <br><br> ¶ 27. | **Hearsay.** FRE 801, 802. <br> **Speculation.** FRE 602. <br> **Lacks Foundation**. FRE 602. |
| 20. | "On June 28, 2023, Defendants identified its most successful delay tactic to date. After months of acknowledging that they owed fees under the DRA, which provided for arbitration with JAMS pursuant to the JAMS Employment Rules and Procedures and JAMS' application of the | **Not relevant.** FRE 401, 402. <br> **Lacks Foundation**. FRE 602. <br> **Speculation.** FRE 602. |

| | | |
|---|---|---|
| | Minimum Standards to arbitrations brought pursuant to that DRA, Defendants suddenly decided that they would no longer pay such fees, grinding well over a thousand arbitrations filed against them to a sudden halt. Despite the efforts described below, those arbitrations remain on hold to this day." ¶ 28. | |
| 21. | "And Defendants did, in fact, comply with the Minimum Standards for months. The first arbitrations against Twitter were filed in 2022; since that time, JAMS has consistently applied the Minimum Standards to the arbitrations brought under the DRA. That application has been reflected throughout the process, beginning with the very first invoice issued by JAMS in each arbitration. Under normal JAMS rules, Claimants must pay a $2,000 case initiation fee. In arbitrations subject to the Minimum Standards, however, JAMS will only invoice Claimants $400, and will invoice the balance to Respondents. JAMS did just that in each of the more than 1,000 demands for arbitration filed in connection with claims similar to those alleged in this action, invoicing each Claimant $400 and invoicing the balance to Respondents in every case. For six months, until June 2023, Defendants paid, albeit late, each invoice issued to them: for case initiation fees, for arbitrator deposit fees, or otherwise. | **Not relevant.** FRE 401, 402.<br>**Lacks Foundation.** FRE 602.<br>**Speculation.** FRE 602.<br>**Hearsay.** FRE 801, 802. |

9

| | | |
|---|---|---|
| | JAMS issued many of these invoices to Defendants after expressly providing Defendants with notice that it would apply the Minimum Standards to these arbitrations and would therefore be invoicing Defendants for all future arbitral fees. JAMS' notice to Defendants also specifically informed Defendants that proceeding with the arbitration and paying those invoices would constitute Defendants' consent to the application of the Minimum Standards." ¶ 29, Ex. 13. | |
| 22. | "Despite that, and despite Defendants' contention on this motion that any dispute about the Minimum Standards needed to be heard by individual arbitrators appointed in each individual case, on June 2, 2023, Defendants filed a letter with JAMS as an organization asking JAMS to reconsider its application of the Minimum Standards to *all* of the arbitrations filed under the DRA, and incorrectly arguing that application of the Minimum Standards violated the DRA." ¶ 30. | **Not relevant.** FRE 401, 402. **Speculation.** FRE 602. **Lacks Foundation**. FRE 602. |
| 23. | "Plaintiff's counsel, and each of the firms representing potentially affected claimants, opposed. On June 21, 2023, JAMS reiterated that it would apply the Minimum Standards to any | **Lacks Foundation**. FRE 602. **Speculation.** FRE 602. |

10

|    |    |    |
|----|----|----|
|    | arbitration brought under a DRA that Twitter had required employees to sign as a condition of beginning their employment at Twitter." ¶ 31, Ex. 14. |    |
| 24. | "In response, on June 28, 2023, Defendants provided their notice that they would no longer pay fees in those arbitrations or participate in them." ¶ 32. | **Not relevant.** FRE 401, 402. **Speculation.** FRE 602. **Lacks Foundation**. FRE 602. |
| 25. | "In response to that refusal, I inquired of the JAMS case administrator whether JAMS would allow the arbitrator to rule on a motion to construe the DRA and determine whether Defendants were obligated to abide by the Minimum Standards under the terms of the DRA, if that motion was brought in one of the cases in which one of my clients had an arbitrator appointed and in which Defendants had already paid the initial deposit towards the arbitration fees. JAMS responded that they could not bill such fees entirely to Defendants absent their consent." ¶ 33. | **Not relevant.** FRE 401, 402. **Lacks Foundation**. FRE 602. **Hearsay.** FRE 801, 802. |
| 26. | "I then asked whether JAMS would allow such an arbitrator to rule on such a motion if one of those | **Not relevant.** FRE 401, 402. **Speculation.** FRE 602. **Lacks Foundation**. FRE 602. |

11

| | | |
|---|---|---|
| | claimants advanced a matching fee deposit so that fees for the motion could be billed equally to all parties, as Defendants contended they were required to be. Though that proposal appears to be exactly what Defendants *vehemently* argue in their motion they should be entitled to as a method of resolving the dispute over the fees, Defendants *just as vehemently* objected to it in their response to JAMS." ¶ 34, Ex. 15. | |
| 27. | "In fact, Defendants were *so* opposed to an arbitrator actually deciding the fees issue that when JAMS agreed with my proposal to allow a claimant to advance fees so that the matter could be heard by an arbitrator, they filed a separate, formal objection to allowing the arbitrator to construe the DRA." ¶ 35, Ex. 16. | **Not relevant.** FRE 401, 402. **Lacks Foundation**. FRE 602. **Speculation.** FRE 602. |
| 28. | "But the objections did not stop there. The Arbitrator proceeded with a pre-motion conference and at that conference, Defendants' counsel strenuously objected to the arbitrator even considering the motion, continuing to argue that the claimant in that matter had no right to an award declaring the meaning of the DRA on this disputed issue, and that the motion should only proceed if | **Not relevant.** FRE 401, 402. **Lacks Foundation**. FRE 602. **Speculation.** FRE 602. **Hearsay.** FRE 801, 802. |

12

| | | |
|---|---|---|
| | the claimant was willing to agree in advance that he waive the Minimum Standards if the Arbitrator ruled that the DRA required fee-splitting."<br><br>¶ 36. | |
| 29. | "At that conference, I asked Defendants' counsel to commit that if Claimant brought a Section 4 petition, Defendants would not argue that since the DRA delegates fee issues to the arbitrator, the reviewing court's jurisdiction extended only to compelling arbitration and would not allow the court to construe the DRA to require the application of the Minimum Standards. Defendant's counsel declined to do so."<br><br>¶ 38. | **Not relevant.** FRE 401, 402.<br>**Speculation.** FRE 602.<br>**Lacks Foundation**. FRE 602.<br>**Hearsay.** FRE 801, 802. . |
| 30. | "The motion is fully briefed before the Arbitrator and pending. Copies of the parties' briefs are attached hereto as **Exhibits 17-19.** As reflected in **Exhibit 18**, Defendants continued to object to the arbitrator issuing any sort of ruling construing the DRA to determine whether it required Respondents to abide by the minimum standards."<br><br>¶ 39, Exs. 17-19. | **Not relevant.** FRE 401, 402.<br>**Speculation.** FRE 602.<br>**Lacks Foundation**. FRE 602. |
| 31. | "I note, again, that in *this* Court, Defendants have contended that Plaintiff is trying some procedural trick to deprive Defendants of their right to have the dispute over fees determined by an arbitrator. Opp. at 18 ('Because the DRA clearly | **Not relevant.** FRE 401, 402.<br>**Speculation.** FRE 602.<br>**Lacks Foundation**. FRE 602. |

13

| | | |
|---|---|---|
| | commends these disputes to the arbitrator for resolution on an individual basis, Plaintiff has placed Twitter in an unusual situation—one in which Twitter must either simply waive its right to arbitrate this dispute in accordance with the DRA's terms, and accept a judicial resolution, or must assert its right to arbitrate and keep silent as to the substance of Plaintiff's many flawed allegations and legal theories because the DRA leaves those issues to the arbitrator.'). With the greatest of respect for my colleagues on the other side of this action, it is not logically possible that both these contradictory positions could be advanced in good faith. They have taken these positions even though I specifically warned them that if they took a mutually contradictory position in court, it would potentially be a basis for sanctions under § 1927. It cannot be the case that Defendants simultaneously want the fee dispute to be addressed by an arbitrator, as they represent to this Court, and also do not believe that the Arbitrator *can* address the fees dispute, which is the argument they are making in the Zhang arbitration." ¶ 40. | |
| 32. | "In sum, Defendants have engaged in an overt and unceasing campaign to delay litigation of the claims at issue here. They have done so by declining to timely pay invoiced arbitration | **Speculation.** FRE 602. **Lacks Foundation**. FRE 602. **Hearsay.** FRE 801, 802. |

14

| | |
|---|---|
| fees. They have done so by refusing to arbitrate with claimants, like Mr. Woodfield, with whom they have a DRA. They have done so on a mass scale by refusing to abide by JAMS' interpretations of their own rules as the arbitral body Twitter chose and whose rules it bound itself to follow. And they have even done so by advancing mutually contradictory positions in arbitration and before this Court. On this record, Defendants cannot compel arbitration and the motion should be denied."<br><br>¶ 41. | |