# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRIS WOODFIELD, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>*Woodfield*,<br><br>v.<br><br>TWITTER, INC., X CORP., X HOLDINGS I, INC., X HOLDING, CORP., and ELON MUSK,<br><br>*Defendants*. | C.A. No. 1:23-cv-780-CFC |

## DEFENDANT ELON MUSK'S REPLY
## IN SUPPORT OF MOTION TO DISMISS UNDER
## FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Dated: November 14, 2023

Eric Meckley (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
415-442-1000
eric.meckley@morganlewis.com

T. Cullen Wallace (*pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
713-890-5722
cullen.wallace@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendant Elon Musk*

## TABLE OF CONTENTS

Page

A. WOODFIELD DOES NOT PLEAD COUNTS II-V AND VII-VIII AGAINST MUSK. ...................................................................................1

B. WOODFIELD'S VEIL-PIERCING ALLEGATIONS ARE INADEQUATE AND THE UNPLED CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(6). ......................................................2

C. THE UNPLED CLAIMS SHOULD ALSO BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6). .......................5

D. THE COURT SHOULD DISMISS THE CLAIMS WOODFIELD DIRECTLY ASSERTS AGAINST MUSK (COUNTS VI AND VII) FOR FAILURE TO STATE A CLAIM. ......................................................6

    1. Woodfield Does Not and Cannot Allege With Particularity Musk's Individual Liability for Fraud (Count VI). ...............................................................................6

    2. Woodfield's Wage Theft Claim (Count IX) Must Be Dismissed. ............................................................................8

E. CONCLUSION................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arnold v. X Corp.*,
   1:23-cv-528-CFC (D. Del. July 30, 2023) ......................................................... 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................... 8

*Compagnie des Grands Hotels d'Afrique S.A. v. Starman Hotel Holdings LLC*,
   2023 WL 5095274 (D. Del. Aug. 8, 2023) ....................................................... 3

*Cornet v. Twitter, Inc.*,
   No. 1:23-cv-441-CFC (D. Del. May 17, 2023) ................................................ 5

*Cronin v. Cent. Valley Sch. Dist.*,
   456 P.3d 843 (2020) .......................................................................................... 9

*Espinoza v. Hepta Run, Inc.*,
   74 Cal.App.5th 44 (2022) ................................................................................. 9

*Gerritsen v. Warner Bros. Ent. Inc.*,
   116 F. Supp. 3d 1104 (C.D. Cal. 2015) ................................................... 3, 4, 5

*Groove Digital, Inc. v. King.com, Ltd.*,
   2018 WL 6168615 (D. Del. Nov. 26, 2018) ..................................................... 1

*Jackson v. NuVasive, Inc.*,
   2023 WL 5175092 (D. Del. Aug. 11, 2023) ..................................................... 6

*Lauter v. Rosenblatt*,
   2018 WL 3854160 (C.D. Cal. Aug. 10, 2018) ................................................. 7

*Leek v. Cooper*,
   125 Cal. Rptr. 3d 56 (Cal. App. 2011) .............................................................. 4

*Neilson v. Union Bank of California, N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................................ 4

*Prairie Cap. III, L.P. v. Double E Holding Corp.*,
   132 A.3d 35 (Del. Ch. 2015) ..................................................................................7

*Salzberg v. Sciabacucchi*,
   227 A.3d 102 (Del. 2020) .......................................................................................3

*Seviour-Iloff v. LaPaille*,
   80 Cal.App.5th 427 (2022) ....................................................................................9

*Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*,
   650 S.W.3d 462 (Tex. 2022) ..................................................................................7

*Trevino v. Merscorp, Inc.*,
   583 F. Supp. 2d 521 (D. Del. 2008) ................................................................3, 4, 5

*U.S. Bank, N.A. v. Miller*,
   2013 WL 12183652 (C.D. Cal. May 8, 2013) .......................................................8

*Usher v. White*,
   64 Cal.App.5th 883 (Cal. App. 2021) ....................................................................9

*Via Vadis, L.L.C. v. Skype, Inc.*,
   2012 WL 2789733 (D. Del. July 6, 2012) .............................................................1

For the reasons set forth in his Motion and as further explained below, the Court should dismiss Woodfield's claims against Defendant Elon Musk under Rule 12(b)(6).[1]

**A.     Woodfield Does Not Plead Counts II-V and VII-VIII Against Musk.**

As a threshold matter, Woodfield does not plead Counts II-V and VII-VIII against Musk (collectively, the "Unpled Claims"). In the Complaint, Woodfield does not: (i) identify Musk along with any of the other defendants in the headings asserting any of the Unpled Claims; (ii) reference Musk in the allegations supporting any of the Unpled Claims; or (iii) assert any allegations of any kind against Musk in the Unpled Claims, either directly or vicariously.

To the extent Woodfield now claims through his Response that he intended to assert the Unpled Claims against Musk, these claims should be dismissed because Woodfield failed to adequately plead them *against Musk* as required under Rule 8. *See Groove Digital, Inc. v. King.com, Ltd.*, 2018 WL 6168615, at *1 (D. Del. Nov. 26, 2018) (explaining that a complaint that collectively refers to defendants only meets the pleading standard under Rule 8 if "it can be reasonably inferred that each and every allegation is made against each individual defendant."); *Via Vadis, L.L.C. v. Skype, Inc.*, 2012 WL 2789733, at *1 (D. Del. July 6, 2012) (dismissal is appropriate under Rule 12(b)(6) where "there is no substantive reference to

---

[1] As further discussed in (D.I. 40) Musk withdraws his 12(b)(2) Motion.

[defendant] in the complaint" and therefore, there "is sufficient ambiguity in the complaint about [defendant]'s responsibility for the alleged" wrongdoing).

**B.   Woodfield's Veil-Piercing Allegations are Inadequate and the Unpled Claims Should Be Dismissed Under Rule 12(B)(6).**

Woodfield cites no support for the one-sentence argument in his Response that he can plead seven distinct causes of action against Musk through a generalized veil-piercing theory without asserting any specific substantive facts regarding Musk in connection with any of the Unpled Claims. The Court should reject his attempt to do so here, especially considering that the majority of the Unpled Claims are based on allegations concerning contracts, promises, and actions entered into and taken by Twitter *before* Musk owned or controlled the company.

Woodfield does not plausibly plead any specific facts demonstrating that: (i) Musk is vicariously liable to Woodfield for alleged unpaid severance benefits under Section 6.9 of the Merger Agreement—a provision to which Musk is not a signatory and under which Woodfield is expressly disclaimed as a third-party beneficiary (Count II); (ii) Musk is vicariously liable for any alleged contracts and promises made and entered into months and years before Musk owned or controlled Twitter (Counts III-V); or (iii) Musk took any actions against Woodfield giving rise to liability under the federal WARN Act (Count VII) or applicable employment anti-discrimination law (Count VIII).

In addition to Woodfield's factual pleading deficiencies, and irrespective of

2

whether Delaware or California law applies to the veil-piercing analysis, Woodfield fails to plausibly allege facts showing that (i) Musk and Twitter are a "single economic entity"; and that (ii) justice requires disregarding Twitter's corporate form because it is a "sham" "designed to defraud investors and creditors."[2]  *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 529-31 (D. Del. 2008) (dismissing under 12(b)(6) for failure to plausibly allege either prong); *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1135-36, 1144 (C.D. Cal. 2015) (dismissing veil-piercing theory where plaintiff fails to allege that defendant "is using the corporate form unjustly and in derogation of the plaintiff's interests" observing "bad faith is a critical factor in the analysis").

As to prong one, Woodfield fails to plead the vast majority of the factors courts use to evaluate whether there is a sufficient unity of interests, including: (i) "failure to observe corporate formalities"; (ii) "nonpayment of dividends"; (iii) "absence of corporate records"; and (iv) any allegation that "the corporation is

---

[2] Count II brings a claim under the Merger Agreement which expressly chose Delaware law for all claims *relating to* the Merger Agreement, whether sounding in "contract, tort or otherwise." Section 9.8, D.I., 22-1, at 84.  And to the extent that Counts II–IX are not covered by Section 9.8, the Court should apply the internal affairs doctrine to Plaintiff's veil-piercing theory because Delaware "has an interest in its own corporate law determining the status of one of its corporations." *See Compagnie des Grands Hotels d'Afrique S.A. v. Starman Hotel Holdings LLC*, 2023 WL 5095274, at *3 (D. Del. Aug. 8, 2023); *see Salzberg v. Sciabacucchi*, 227 A.3d 102, 131-34 (Del. 2020) (recognizing that the "internal affairs doctrine" applies to "matters peculiar to corporations," such as "the relationships [] of the corporation, its directors, officers and shareholders").

3

merely a façade for the operations of the dominant stockholder or stockholders." *Trevino*, 583 F. Supp. 2d at 528-29 (listing seven factors; dismissing under 12(b)(6) where plaintiff's basis for *alter ego* liability was that one entity was "undercapitalized"); *see also Gerritsen*, 116 F. Supp. 3d at 1145 (reviewing thirteen factors used by California courts; dismissing under prong one because, among other reasons, there were no allegations that defendant "dictates ***every*** facet of [the corporation's] business—from broad policy decisions to routine matters of day-to-day operation") (emphasis added).[3]

As to prong two, Woodfield does not allege in the Complaint that Musk used Twitter to perpetrate a fraud, or that Twitter was "a sham entity" created by Musk in order to defraud Woodfield, nor could he, as no such facts exist. *Trevino*, 583 F. Supp. 2d at 529 (dismissal appropriate where plaintiff failed to plausibly allege corporation was used to "defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or otherwise evade the law"); *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1116–17 (C.D. Cal. 2003) (dismissal

---

[3] Woodfield's sole allegation of common ownership intended to show "unity of interests" is that Musk owns more than 50% of Twitter, which is insufficient to plausibly plead veil-piercing under any applicable law. *See Leek v. Cooper*, 125 Cal. Rptr. 3d 56 (Cal. App. 2011) ("[a]n allegation that a person owns all of the corporate stock and makes all of the management decisions is insufficient to cause the court to disregard the corporate entity."). Likewise, while Woodfield pleads that Twitter is allegedly "undercapitalized, this allegation is implausible and does not allege any substantive facts explaining *how* Twitter allegedly became undercapitalized "specifically as a result of Musk's purchase of the corporation."

4

appropriate where plaintiff failed to allege "some conduct amounting to bad faith" making it inequitable for the individual "to hide behind [the] corporate veil").

At most, Woodfield makes the conclusory allegation that a "risk" exists of Twitter declaring bankruptcy, but this does not constitute an inequitable result under applicable Delaware or California veil-piercing authority.  D.I. 1 ¶ 187; *Trevino*, 583 F. Supp. 2d at 530 ("the possibility that a plaintiff may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil"); *Gerritsen*, 116 F. Supp. 3d, at 1145 (mere status as an unsatisfied creditor is not "an inequitable result [warranting] application of the *alter ego* doctrine").  Because Woodfield fails to adequately plead a plausible veil-piercing theory under applicable law, the Court should dismiss the Unpled Claims against Musk under Rule 12(b)(6).

C. **The Unpled Claims Should Also Be Dismissed for Failure to State a Claim Under Rule 12(B)(6).**

Even if Woodfield could adequately plead the Unpled Claims against Musk under a vicarious liability theory, such claims must nevertheless be dismissed for the additional reasons set forth in Twitter's motion to dismiss in the *Cornet* case and in Twitter's and Musk's motions to dismiss in the *Arnold* case, all of which are presently pending before this Court and involve the Unpled Claims.  *See Cornet v. Twitter, Inc.*, No. 1:23-cv-441-CFC (D. Del. May 17, 2023) (D.I. 78); *see also Arnold v. X Corp.*, 1:23-cv-528-CFC (D. Del. July 30, 2023) (D.I. 15, 18).

**D.   The Court Should Dismiss the Claims Woodfield Directly Asserts Against Musk (Counts VI and VII) for Failure to State a Claim.**

Woodfield's fraud and wage theft claims—the only claims pled directly against Musk—should be dismissed for several reasons, as set forth below.

  1.   <u>Woodfield Does Not and Cannot Allege With Particularity Musk's Individual Liability for Fraud (Count VI).</u>

As explained in Musk's Motion, Woodfield fails to identify a single fraudulent statement allegedly made *by Musk*. *See* D.I. 1 ¶ 260 ("In signing the Merger Agreement, and in its subsequent statements to its employees, **Twitter** represented") (emphasis added). Nor could he, because Woodfield fails to explain how any alleged misrepresentations by Twitter could be attributable to Musk when Musk did not own or control Twitter at the time Woodfield alleges the misrepresentations were made. To sidestep this fact, Woodfield now improperly raises new arguments for the first time in his Response, which should be disregarded because "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Jackson v. NuVasive, Inc.*, 2023 WL 5175092, at *4 (D. Del. Aug. 11, 2023).

Woodfield makes the new argument that Musk made a fraudulent representation in Section 6.9 of the Merger Agreement when he "signed the merger agreement on behalf of X Holdings I" (D.I. 32, at 15), however, such argument is meritless because Musk is not a party to that provision of the Merger Agreement.

6

*See* D.I. 22, Ex. A, at 16.  Woodfield's citation to *Prairie Cap. III, L.P. v. Double E Holding Corp.*, supports Musk's position on this point.  132 A.3d 35, 50 (Del. Ch. 2015).  There, the court found that an "exclusive representations" clause in a purchase agreement barred reliance on any representations beyond those expressly contained in the "representations and warranties" section.  *Id.* ("Unfortunately for [Counter-Plaintiff], the SPA forecloses claims of fraud based on extra-contractual misrepresentations").[4]  Likewise, the parties to this Merger Agreement made clear that the only representations made by X Holdings I are in the representations and warranties section of Article V, *not* Article VI where Section 6.9 is located.  D.I. 22-1, at 52, Section 5.11 (X Holdings I does not make "any representation [] of any kind whatsoever" except those in Article V).  As a result, Woodfield cannot identify with particularity any fraudulent representations that Musk made to him under Section 6.9 in *any capacity*.

Woodfield's attempt to recast his breach of contract claim as a fraud claim is also improper under applicable law; to find otherwise would "potentially turn every breach of contract claim into one of fraud as well, so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep its

---

[4] Plaintiff's other citations are similarly inapposite.  *Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 479-80 (Tex. 2022) (disclaimer clause barred reliance on extracontractual representations); *Lauter v. Rosenblatt*, 2018 WL 3854160, at *4 (C.D. Cal. Aug. 10, 2018) (no fraud allegation).

7

promise." *See U.S. Bank, N.A. v. Miller*, 2013 WL 12183652, at *7 (C.D. Cal. May 8, 2013).

Woodfield's new argument that Musk made representations in unspecified "communications" regarding "promised severance" also fails. D.I. 32, at 15. His new argument is entirely implausible, as he alleges that Musk (i) approved and directed Twitter to communicate on his behalf, (ii) during a time in which Musk indisputably did *not own or control Twitter* and was actively litigating *against* Twitter, (iii) to promise benefits to persons Musk *did not employ or have any relationship with*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009) ("determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense."). Because Woodfield has not and cannot plead a plausible claim for fraud against Musk under the present circumstances, his claim should be dismissed under Rule 12(b)(6).

2. Woodfield's Wage Theft Claim (Count IX) Must Be Dismissed.

Woodfield's wage theft claim fails because he does not make any allegation supporting Musk's individual liability under any applicable law. *See* D.I. 1 ¶ 305 ("**Twitter's** choice to pay Woodfield less [] was made willfully") (emphasis added). Woodfield's attempt to argue that Musk *theoretically* could be liable fails to substantively oppose Musk's argument that the Complaint lacks any factual allegations of *Musk's misconduct*. D.I. 1 ¶¶ 300-07.

Woodfield's sole allegation is that "Twitter [] willfully" chose to pay him less than he was owed, *not that Musk did so*. D.I. 1 ¶ 305. Apparently recognizing this flaw, Woodfield attempts to pivot in his Response by arguing that Musk "never intended to pay Woodfield the ***wages*** he was due." D.I. 32, at 19 (emphasis added). But Woodfield never made this allegation in his Complaint and in his Response he cites to a paragraph of the Complaint which mentions neither "wages" nor severance. *See, e.g.*, D.I. 1 ¶ 266 ("Musk and X Holdings I never intended for the Merger Agreement to provide Twitter's employees with the protections Twitter represented to the employees were contained in the Merger Agreement").

Woodfield's cited cases in fact support Musk's position. In *Usher* the court observed that dismissal is appropriate where, as here, "plaintiffs merely rely on the individual defendant's respective positions as owners, directors, officers, and/or managing agents of the employer." *Usher v. White*, 64 Cal. App. 5th 883, 895 (Cal. App. 2021). *Seviour-Iloff v. LaPaille* is inapplicable at the pleading stage because its holding is limited to "whether courts have discretion to deny liability" *after* a finding that the individual defendant "engaged in some affirmative action." 80 Cal. App. 5th 427, 445 (2022).[5] Because Woodfield has not and cannot plead a plausible

---

[5] *See Espinoza v. Hepta Run, Inc.*, 74 Cal.App.5th 44, 59 (2022) ("an individual must have engaged in some affirmative action beyond [their] status as an owner,"); *Cronin v. Cent. Valley Sch. Dist.*, 456 P.3d 843, 855 (2020) (recognizing that plaintiff must make a threshold showing that the defendant is an "employer" and affirmatively "fail[ed] to pay" before RCW 49.52.050 applies).

9

claim for wage theft against Musk, this claim should be dismissed under Rule 12(b)(6).

### E. Conclusion.

For the foregoing reasons, the Court should dismiss all of Woodfield's claims against Musk under Rule 12(b)(6).

Dated: November 14, 2023

MORGAN, LEWIS & BOCKIUS LLP

 /s/ Jody C. Barillare
Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendant Elon Musk*