# Exhibit A

# JAMS ARBITRATION  NO. 1601002342

| | |
|---|---|
| YUNFENG ZHANG,<br><br>                          Claimant,<br><br>        -against-<br><br>TWITTER, INC., et al.,<br><br>                       Respondents. | **PARTIAL FINAL AWARD** |

       Claimant  Yunfeng Zhang ("Zhang") was employed by Respondent Twitter, Inc. ("Twitter") as a Senior Machine Learning Engineer from late June 2021 until February 2, 2023.[1] Prior to joining Twitter, Zhang signed a Dispute Resolution Agreement ("DRA").

       Section 1 of the DRA requires Zhang to resolve "any dispute arising out of or related to [his] employment with Twitter" or the "termination of [his] employment."  Section 3 of the DRA provides that the parties shall select the Arbitrator by mutual agreement, but that, if they could not agree, "the dispute shall be heard by a neutral arbitrator chosen according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures" ("JAMS Rules").

       The DRA further provides in Section 6 that

> in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees.  If under applicable law, the Company is not required to pay all of the Arbitrator's or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes will be resolved by the Arbitrator.

       Finally, Section 8 of the DRA, captioned "An Employee's Right To Opt Out of Arbitration" informed Zhang that:

> **Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.**

---

[1] In addition to Twitter, Zhang has named as Respondents X Holdings I, Inc., and Elon Musk.  Respondent Twitter is described in the Demand for Arbitration as an entity that became a wholly-owned subsidiary of Respondent X Holdings I as the result of a merger in or around April 2022.  Musk is described as a "natural person" who engineered the acquisition of Twitter and appointed himself "Chief Twit."  For convenience, I will refer to the Respondents collectively as "Twitter."

(Bold face type in original).  For an opt-out to be effective under Section 8, it must be submitted "to the Human Resources Department [of Twitter] within 30 days of the Employee's receipt of [the DRA]."

Zhang commenced this arbitration on February 13, 2023.  Thereafter, JAMS advised the parties that the JAMS Policy on Employment Minimum Standards of Procedural Fairness ("Minimum Standards") would apply to this proceeding "notwithstanding any contrary provisions in the parties' pre-dispute arbitration agreement."  Standard No. 6 of those Minimum Standards states, in part, that "[t]he only fee that an employee may be required to pay [in connection with an employment-related dispute] is JAMS' initial Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services."  A comment to the Standard cautions that this "does not preclude an employee from contributing to administrative and arbitrator fees and expenses."

Zhang has now moved for an interim award declaring that the DRA requires the Respondents to pay all JAMS' costs other than the initial filing fee because (a) this case is governed by the Minimum Standards, and (b) the Respondents waived any argument to the contrary by paying the case initiation fees and proceeding for a period of time under the Minimum Standards.  Zhang further requests that I not consider his waiver argument unless I conclude that the DRA does not require Twitter to comply with the Minimum Standards.

For its part, Twitter contends that the Minimum Standards are inapplicable because Zhang was given an opportunity to opt out of the DRA entirely, provided he did so within 30 days.  Twitter argues further that I should not reach this issue because JAMS has made clear that it will not administer this proceeding unless Twitter accedes to the applicability of Standard No. 6.  Accordingly, in Twitter's view, I am impermissibly being asked to render an advisory opinion.

I heard oral argument with respect to Zhang's motion to October 25, 2023.  Although Zhang maintains that he cannot be required to pay any additional fees with respect to this proceeding, he has remitted an amount equaling the funds posted by Twitter before Twitter concluded that Zhang had to split the ongoing costs of this proceeding.  Zhang did so in an effort to ensure that there would be sufficient funds for the Arbitrator to consider the issues raised by his motion and to rule.

Rule 2(a) of the JAMS Rules provides, in substance, that the parties may amend the JAMS Rules so long as their agreement is consistent with the Minimum Standards.  The Minimum Standards, in turn, provide that JAMS will accept an arbitration that is "based on a clause or agreement that is required as a condition of employment . . . only if the proceeding complies with the Minimum Standards," i.e., the employer pays all JAMS fees other than the initial case management fee.  After Twitter urged JAMS to find that the Minimum Standards were inapplicable due to the opt-out provision in the DRA, JAMS adhered to its initial determination that the fees for this proceeding could not be apportioned.  JAMS also stated in a notice to all parties that if Twitter refused to proceed under the Minimum Standards, JAMS would "decline to administer the arbitration."  JAMS further observed that any further issue regarding the applicability of the Minimum Standards should be referred to the Arbitrator, who,

after hearing from the parties, could ask JAMS to review its decision, although JAMS would make the final determination.

The parties disagree as to the body of law that I should apply to resolve their dispute. Zhang maintains that I should look to the law of California, which is where the decision to terminate him allegedly was made. Twitter contends that federal and New York law are applicable because Section 1 of the DRA provides that it shall be "governed by the Federal Arbitration Act" and that, "[i]f the FAA is found not to apply, it shall be enforced pursuant to the laws of the state where the employee worked. Here, it is undisputed that Zhang worked for Twitter in New York.

Zhang's contention that I should apply California law is based on case law in that state indicating that an employer must pay all the costs of an arbitration if the parties' agreement "contains within its scope the arbitration of FEHA [California Fair Employment and Housing Act] claims." Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 113 (2000). However, as Twitter accurately notes, the DRA contains two choice of law provisions expressly calling for the application of either federal or New York law. The mere fact that Twitter (a Delaware corporation) has its principal place of business in California is not enough to suggest that the determination of who must pay all the JAMS and arbitrator fees should be determined pursuant to California law – even if, as Zhang contends, the decision to fire him was made in California in violation of FEHA.

In Section 6 of the DRA, the parties agreed that if the governing law does not compel Twitter to pay all the Arbitrators and JAMS' fees, "such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes will be resolved by the Arbitrator." Neither party has drawn my attention to any provision of the Federal Arbitration Act or New York law which spells out who must pay the costs associated with an employment arbitration. Accordingly, the law that Twitter contends applies is silent as to the proper outcome here.

What is clear – and undisputed – is that both parties agreed in the DRA to have their dispute heard before JAMS "pursuant to the then-current JAMS Rules." Rule 31 of the JAMS Rules provides insofar as relevant as follows:

> (a) Except as provided in paragraph (c) below, unless the Parties have agreed to a different allocation, each Party shall pay its pro rata share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration. To the extent possible, the allocation of such fees and expenses shall not be disclosed to the Arbitrator. JAMS' agreement to render services is jointly with the Party and the attorney or other representative of the Party in the Arbitration. The non-payment of fees may result in an administrative suspension of the case in accordance with Rule 6(c).
>
> . . .
>
> (c) If an Arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an Employee may be required

<u>to pay is the initial JAMS Case Management Fee</u>. JAMS does not preclude an Employee from contributing to administrative and Arbitrator fees and expenses. If an Arbitration is not based on a clause or agreement that is required as a condition of employment, the Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses. . . .

(Emphasis added).

Twitter contends that Rule 31(c)is inapplicable here because Section 8 of the DRA entitled Zhang to opt out of mandatory arbitration as long as he did so in a timely manner. What Twitter fails to acknowledge is that Twitter employees evidently are required to sign the DRA electronically as a condition of employment even though they then may opt out of its applicability if they choose to do so. The DRA, which contains mandatory arbitration language in Section 1, therefore constitutes "<u>an agreement</u> . . . required as a condition of employment" within the meaning of JAMS Rule 31(c). (Emphasis added). It follows that "the only fee that [Zhang] may be required to pay" in order to arbitrate his claims is "the initial JAMS Case Management Fee," even if he failed to opt out of the DRA within the thirty-day period set forth therein.

I therefore see no reason to ask JAMS to revisit its decision to require that Twitter pay all the fees other than the initial case management fee in connection with this proceeding. Nor do I believe that Zhang's request that I rule with respect to this issue is premature or constitutes an impermissible advisory opinion.[2]  Accordingly, because I conclude that JAMS' administrative decision was consistent with both Standard 6 of the Minimum Standards and Rule 31(c) of the JAMS Rules, Zhang is entitled to a partial final award.[3]

<u>PARTIAL FINAL AWARD</u>

For the foregoing reasons, Zhang's application is granted and Respondent Twitter, Inc., and Respondent X Holdings I, Inc. (as Twitter's affiliate, successor, subsidiary, or parent), will be required to pay all the JAMS fees and arbitrator fees (other than the initial case management fee) incurred in connection with this proceeding.[4]

SO ORDERED.

---

[2]      In any event, Twitter cites no authority, nor am I aware of any, suggesting that an arbitrator – unlike a court – is unable to render an advisory opinion.

[3]      Zhang's motion papers request the entry of an "interim award" compelling Twitter's compliance with the Minimum Standards. As became evident during oral argument, Zhang seeks an award that he can attempt to enforce immediately through a motion to compel should Twitter fail to comply.  It is unclear that Zhang can secure such relief before the entry of a final award disposing of all the issues before the Arbitrator. <u>See generally</u> <u>American Int'l Specialty Lines Ins. Co. v. Allied Capital Corp.</u>, 35 N.Y.3d 64, 72 (2020) (declining to adopt the federal courts' view "that partial determinations may be treated as final awards where the parties expressly agree both that certain issues submitted to the arbitrators should be decided in separate partial awards and that such awards will be considered to be final").  Nevertheless, because nothing remains to be decided by me with respect to the issue of responsibility for the payment of JAMS and arbitrator fees, I have captioned this award a "Partial Final Award."

[4]      As Zhang apparently concedes, there has not been a sufficient showing at this juncture that respondent Musk can be required to pay any fees pursuant to the terms of the DRA.  (<u>See</u> Zhang Reply Br. at 1 n.2).

Dated:  New York, New York
     November 30, 2023


            _____
             Frank Maas
             Arbitrator