# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| CHRIS WOODFIELD, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 1:23-cv-00780-TMH |
| v. | ) ) | |
| TWITTER, INC., X CORP., X HOLDINGS I, INC., X HOLDING CORP., and ELON MUSK, | ) ) ) ) | |
| Defendants. | ) ) ) ) | |

## **MEMORANDUM OPINION**

Akiva Cohen, Dylan M. Schmeyer, Michael D. Dunford, Lane A. Haygood, KAMERMAN, UNCYK, SONIKER & KLEIN P.C., New York, New York; Joseph L. Christenson, CHRISTENSEN LAW LLC, Wilmington, DE — Attorneys for Plaintiffs.

Eric Meckley, MORGAN, LEWIS & BOCKIUS LLP, San Francisco, California; T. Cullen Wallace, MORGAN, LEWIS & BOCKIUS LLP, Houston, Texas; Jody C. Barillare, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, Delaware — Attorneys for Defendants.

January 20, 2026
Wilmington, DE

**HUGHES, UNITED STATES CIRCUIT JUDGE, SITTING BY DESIGNATION:**

On July 18, 2023, plaintiff Chris Woodfield filed a class action complaint against various defendants, including Twitter, Inc.; X Corp.; X Holdings I, Inc.; X Holding Corp.; and Elon Musk. Pending is defendant Elon Musk's motion to dismiss all claims asserted against him in his individual capacity pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (D.I. 20 (renewed at D.I. 53)). This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. The motion is fully briefed and ripe for disposition. (D.I. 21; D.I. 32; D.I. 41). For the following reasons, the motion is granted.

### I. BACKGROUND

Chris Woodfield is a former long-time Twitter employee and resident of Washington state.[2] (D.I. 1 ¶¶ 33, 37–38). He was employed by Twitter twice—most recently from May 2020 through his termination in January 2023. (D.I. 1 ¶¶ 38–39). Defendant X Corp. is a Nevada corporation created from the merger of Twitter and X Holdings I (the Twitter Merger)—both Delaware corporations. (D.I. 1 ¶¶ 34–35). Defendant Elon Musk is a Texas resident. (D.I. 1 ¶ 36).

The complaint is a putative class action alleging nine claims against various combinations of defendants, all arising out of employee layoffs following the Twitter

---

[1] Mr. Musk initially sought dismissal under both Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). (D.I. 20). But Mr. Musk has withdrawn the motion as it relates to Rule 12(b)(2). (D.I. 40).

[2] All facts are from the complaint, which the court accepts as true in deciding Mr. Musk's motion to dismiss. (*See* D.I. 1); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 206, 210 (3d Cir. 2009).

Merger in April 2022. (*See generally* D.I. 1). Counts VI (fraud) and IX (wage theft) (together, the Asserted Claims) are the only claims asserted against Mr. Musk individually[3] and are the sole subject of this opinion. (*See generally* D.I. 1). The complaint mirrors in relevant part the complaint in *Arnold v. X Corp.*, also before this court, which asserted nearly identical fraud and wage theft claims against Mr. Musk based on the same underlying facts. *See* Amended Complaint, *Arnold v. X Corp.*, No. 23-cv-00528 (D. Del. June 16, 2023) (D.I. 10) (Arnold Compl.). And this court dismissed all claims against Mr. Musk in *Arnold* on September 29, 2025. *See Arnold v. X Corp.*, No. 23-cv-00528, 2025 WL 2769484, at *1 (D. Del. Sept. 29, 2025).

## II.   LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere labels, conclusions, or a "formulaic recitation of the elements of a cause of action" are not enough. *Twombly*, 550 U.S. at 555. Rather, a "claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[3] Counts I–VI and IX specifically identify the applicable defendant(s) and only Counts VI and IX (fraud and wage theft) name Mr. Musk. (*Compare* D.I. 1 at 26 ("against Twitter and X Holdings I"), *with* D.I. 1 at 36 ("[a]gainst Twitter, X Holdings I, and Musk")). While Counts VII and VIII do not specify a defendant in the heading, they refer solely to Twitter "ha[ving] violated" the law, and neither refers to Mr. Musk in any capacity. (D.I. 1 ¶ 299; *see also* D.I. 1 ¶ 287 ("As a result of Twitter's violation of the WARN Act . . . ."); D.I. 1 ¶¶ 277–99). Thus, the court construes the complaint to assert only Counts VI and IX against Mr. Musk.

3

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Fraud claims are subject to an independent and higher pleading standard under Rule 9(b), which requires plaintiffs "state with particularity" the "circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). This includes the "'who, what, when, where and how' of the events at issue." *In re Rockefeller*, 311 F.3d at 217 (citation omitted).

### III. DISCUSSION

The Asserted Claims in this case are nearly identical to claims asserted against Mr. Musk in *Arnold v. X Corp.*, No. 23-cv-00528. (*Compare* D.I. 1 ¶¶ 259–76, 300–07, *with* Arnold Compl. ¶¶ 353–69, 412–20). Although different plaintiffs are named in each action, the events giving rise to the claims against Mr. Musk are identical, the factual allegations in the complaints overlap significantly, and the grounds for piercing the corporate veil to hold Mr. Musk personally liable are a near word-for-word match. Both suits were brought by the same counsel and were filed within months of each other. As discussed below, there are no significant substantive differences between the relevant claims in the two matters and this court adopts in full the relevant reasoning set forth in its September 29, 2025, decision in *Arnold. See generally Arnold*, 2025 WL 2769484.

### A. Derivative Liability

Mr. Woodfield's complaint includes a section entitled "Veil Piercing Allegations," which is materially identical to the *Arnold* complaint's "Allegations Relating to Piercing the Corporate Veil." (*Compare* D.I. 1 ¶¶ 170–88, *with* Arnold Compl. ¶¶ 293–312). It claims Mr. Musk can be held "personally liable for any amounts awarded on the claims alleged herein." (D.I. 1 ¶ 188). As in *Arnold*, the parties here contest whether veil piercing has been adequately pled. Mr. Woodfield's brief recycles the same veil piercing arguments found in the *Arnold* plaintiffs' briefing, adding minimally to its choice of law authorities. (*Compare* D.I. 32 at 10–14, *with* Plaintiff's Memorandum of Law in Opposition to Elon Musk's Motion to Dismiss at 16–18, *Arnold*, No. 23-cv-00528 (D.I. 25) (Arnold Opp.)). Because we agree with Mr. Woodfield (and the *Arnold* plaintiffs) that there is "no significant conflict between Delaware and California veil-piercing law," the outcome is the same under either state's law, and Mr. Woodfield's additional choice of law arguments are immaterial to our conclusions. (*See* D.I. 32 at 10; Arnold Opp. at 16). For the same reasons as outlined in *Arnold*, this court concludes Mr. Woodfield has not plausibly alleged Mr. Musk is the alter ego of any of the corporate defendants. *See Arnold*, 2025 WL 2769484, at *4–7. Thus, to the extent Mr. Woodfield's fraud or wage theft claims

5

against Mr. Musk are based on a derivative liability theory, they are dismissed without prejudice pursuant to Rule 12(b)(6).[4]

### B. Individual Liability

1. **Fraud**

Mr. Woodfield's complaint asserts a common law fraud claim. D.I. 1 at 32 (Count VI). It too has a similar counterpart in *Arnold*. (*Compare* D.I. 1 ¶¶ 259–76, *with* Arnold Compl. ¶¶ 353–69). While many of Mr. Woodfield's fraud claims are identical to those in *Arnold* (and are dismissed for the same reasons), he does offer slightly more: he asserts "on information and belief" that Mr. Musk ratified the Merger Agreement, never intended the Merger Agreement to provide the protections Twitter claimed, and personally approved many of Twitter's related communications under the belief the Merger Agreement did not actually offer the protections to employees that were described. (D.I. 1 ¶¶ 263–67). But these allegations are either contradicted by the text of the Merger Agreement or are conclusory and devoid of the specific facts required to meet Rule 9's heightened pleading standard. *See Arnold*, 2025 WL 2769484, at *7–8. Mr. Musk is not a party to the relevant portion of the Merger agreement, (s*ee* D.I. 22-1 at 16), and Mr. Woodfield does not plead any concrete facts to support his claim that Mr. Musk had anything to do with Section 6.9's purported promise regarding severance benefits or any related

---

[4] If the complaint is construed to assert claims other than fraud and wage theft against Mr. Musk under a derivative liability theory, *see generally supra* note 3, they too would be dismissed for failure to plead a viable derivative liability theory.

communications, (s*ee* D.I. 1 ¶¶ 259–76). Mr. Woodfield's complaint falls short of the requirement to plead fraud with particularity. *See In re Rockefeller*, 311 F.3d at 217. For the reasons above and those outlined in *Arnold*, this court concludes Mr. Woodfield has not met Rule 9(b)'s heightened pleading standard. Count VI against Mr. Musk is dismissed without prejudice.

2. **Wage Theft**

Mr. Woodfield brings wage theft claims against Mr. Musk under Washington and California law. (*See* D.I. 1 ¶¶ 300–07). Both states allow individuals to be personally liable for wage theft where they exercise some level of control over, or are personally involved in, the relevant business activities. *See Usher v. White*, 64 Cal. App. 5th 883, 886 (2021) (allowing individual liability where there is personal involvement or sufficient participation in relevant activities of the employer "such that [the individual] may be deemed to have contributed to, and thus have caused such violations"); *Allen v. Dameron*, 187 Wash. 2d 692, 708 (2017) (en banc) (requiring claimant show individual is "an officer, vice principal, or agent of [their] employer who has control over the payment of wages"); *see also Failla v. FixtureOne Corp.*, 181 Wash. 2d 642, 656 (2014) (en banc) (finding individual liability where defendant interviewed plaintiff, hired her, unilaterally promoted her, and ordered her compensation increased).

Mr. Musk argues that Mr. Woodfield fails to plead individual liability because the complaint does not make any concrete factual allegations of misconduct by Mr. Musk. (D.I. 21 at 12; *see also* D.I. 41 at 8–10). Mr. Woodfield responds that there

7

"are allegations of Musk's direct involvement in the wage theft," that he has "pleaded both that Musk exercised general and pervasive control over Twitter's operations," and "that the particular non-payment policies were adopted at Musk's direction." (D.I. 32 at 19). This court has already considered substantively identical arguments in *Arnold* under California and New York law. *See Arnold*, 2025 WL 2769484, at *9. And the assertion of Washington law here does not change our conclusion. For the same reasons as outlined in this court's decision in *Arnold*, and because California and Washington both require some level of personal control or involvement to find individual liability, we conclude Mr. Woodfield's allegations are conclusory and do not demonstrate the control required for Mr. Musk to be liable under Washington or California law.

## IV.　CONCLUSION

We have considered the remaining arguments raised by the parties' briefs and find them unpersuasive. For the reasons discussed above, we adopt the relevant portions of our September 29, 2025, decision in *Arnold* and dismiss all claims against Mr. Musk without prejudice. Defendant Musk's motion to dismiss is **GRANTED**.