**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CHRIS WOODFIELD, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | ) | |
| Plaintiffs, | ) | C.A. No. 1:23-cv-00780-TMH |
| v. | ) | |
| TWITTER, INC., X CORP., X HOLDINGS I, INC., X HOLDING CORP., and ELON MUSK, | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

Akiva Cohen, Dylan M. Schmeyer, Michael D. Dunford, Lane A. Haygood, KAMERMAN, UNCYK, SONIKER & KLEIN, P.C., New York, New York; Joseph L. Christensen, CHRISTENSEN LAW LLC, Wilmington, DE — Attorneys for Plaintiffs.

Eric Meckley, MORGAN, LEWIS & BOCKIUS LLP, San Francisco, California; T. Cullen Wallace, MORGAN, LEWIS & BOCKIUS LLP, Houston, Texas; Jody C. Barillare, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, Delaware — Attorneys for Defendants.

September 11, 2026
Wilmington, DE

**HUGHES, UNITED STATES CIRCUIT JUDGE, SITTING BY DESIGNATION:**

On July 18, 2023, plaintiff Chris Woodfield filed a class action complaint against various defendants, including Twitter, Inc.; X Corp.; X Holdings I, Inc.; X Holding Corp.; and Elon Musk. All claims against Mr. Musk have been dismissed, leaving only those claims alleged against the corporate entities. (*See* D.I. 70; D.I. 71). Pending is defendant X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc.'s (together, Twitter) motion to compel arbitration. (D.I. 11 (renewed at D.I. 52)). The motion is fully briefed and ripe for disposition. (D.I. 12; D.I. 26; D.I. 31; *see also* D.I. 54; D.I. 59; D.I. 61; D.I. 62; D.I. 63; D.I. 67; D.I. 69).

## I. BACKGROUND

Chris Woodfield is a former Twitter employee and resident of Washington state. (D.I. 1 ¶¶ 33, 37–39). Defendant X Corp. is a Nevada corporation created from the merger of Twitter and X Holdings I (the Twitter Merger)—both Delaware corporations. (D.I. 1 ¶¶ 34–35). The court presumes the parties' familiarity with the facts underlying this dispute and therefore sets forth only those facts necessary to this decision.

In April 2020, Mr. Woodfield accepted an offer of employment from Twitter, pursuant to which he agreed to resolve any disputes with his employer through the company's Dispute Resolution Agreement (DRA). (D.I. 14-1 at 6, ¶ 15).[1] Mr. Woodfield separately signed a copy of the DRA. (*Id.* at 9). Under the DRA, both

[1] With the exception of the parties' briefing on this dispute, all page numbers refer to those designated by ECF.

parties agreed to arbitrate "any dispute arising out of or related to" Mr. Woodfield's employment with Twitter and, "without limitation, disputes arising out of or relating to interpretation or application of [the DRA], including the enforceability, revocability or validity of the [DRA] or any portion of the [DRA]." (*Id.* at 7, ¶ 1). Any such arbitration would occur before "Judicial Arbitration and Mediation Services ('JAMS'), pursuant to the then-current JAMS Rules," and could only proceed on an individual basis. (*Id.* at 8, ¶ 5). The DRA allocated costs as follows:

> Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and ***any disputes in that regard will be resolved by the Arbitrator***.

(*Id.* ¶ 6 (emphasis added)).

Mr. Woodfield was laid off from Twitter in January 2023. (D.I. 1 ¶ 13). In May 2023, Mr. Woodfield filed a demand for arbitration with JAMS, asserting claims relating to his severance. (*See id.* ¶ 19). However, Mr. Woodfield failed to attach a fully executed copy of the DRA to his demand. (*Id.*). On this basis, Twitter objected to Mr. Woodfield's arbitration demand and to "JAMS administering or commencing arbitrations for any claimants unless and until Claimants' Counsel submits a signed and dated arbitration agreement specifying JAMS as the arbitration provider." (D.I. 13-3 at 3–4).

Starting June 2, 2023, Twitter also began objecting to JAMS' invoicing policies as generally applied to the approximately 2,000 total arbitration demands pending

against it relating to terminations following the Twitter Merger. (*See* D.I. 13-8 at 2). Twitter objected to JAMS' practice of "issuing all non-Case Management Fee invoices to Twitter only," arguing that this practice conflicted with the express terms of the substantively identical DRAs involved, which provide for fee splitting between the parties where allowable by local law. (*Id.*) JAMS' Senior Vice President and General Counsel rejected Twitter's position, noting that its Minimum Standards of Procedural Fairness (Minimum Standards) would apply in the disputes involving Twitter and generally allocate costs to the employer. (D.I. 13-9 at 2–3). Therefore, JAMS would continue to invoice Twitter for ongoing fees unless the specific employee involved agreed to an alternative arrangement. (*Id.* at 2). Twitter was free, however, to challenge this determination before the arbitrator in each case. (*Id.*) Twitter responded, indicating that JAMS' position conflicted with the fee sharing provision in the DRA—both because the DRA reserved fee disagreement resolution for the individual arbitrator in each case (rather than JAMS as an entity) and because the DRA expressly provided for fee sharing where otherwise allowable by local law. (D.I. 13-10 at 2). Consequently, on June 28, 2023, Twitter indicated it would "decline[ ] to proceed under the Minimum Standards . . . in jurisdictions where fee-sharing is lawful." (*Id.*)

Mr. Woodfield seemingly viewed Twitter's opposition to his demand for arbitration on the basis of having no signed agreement to arbitrate, and Twitter's broad statements to JAMS that it would not proceed under the Minimum Standards in certain jurisdictions, as Twitter refusing to arbitrate his individual claims. (*See*

D.I. 1 ¶¶ 206–29; D.I. 26 at 8–13). He then filed this lawsuit as a putative class action on July 18, 2023, alleging nine claims generally arising out of employee layoffs following the Twitter Merger. (*See generally* D.I. 1). In response, Twitter filed the present motion, requesting the court dismiss the underlying action and issue an order compelling Mr. Woodfield to "submit his claims to binding arbitration on an individual basis only." (D.I. 11-1 at 1 (proposed order)). Mr. Woodfield opposes, arguing that Twitter may not enforce the arbitration agreement given that it breached the agreement by (1) initially opposing Mr. Woodfield's demand for arbitration based on the lack of a signed arbitration agreement, (2) generally representing that it would decline to participate in arbitrations under the Minimum Standards, and (3) engaging in a pattern of delay in paying invoices. (*See* D.I. 26 at 6–18).

## II. <u>DISCUSSION</u>

Under the Federal Arbitration Act (FAA), written agreements to arbitrate claims "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Where a party ignores its agreement to arbitrate by, for example, bringing suit in federal court, the aggrieved party may move the court to issue "an order directing that such arbitration proceed in the manner provided for in

such agreement." 9 U.S.C. § 4; *see Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1034 (9th Cir. 2022) (affirming judgment compelling arbitration of claims brought in federal court).[2]

When faced with a motion to compel arbitration, this court's first task is "to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Mr. Woodfield concedes the parties agreed to arbitrate the issues raised by his complaint but, as noted above, suggests that Twitter has since lost its right to enforce the arbitration agreement by breaching its terms. (D.I. 26 at 7 ("It is well-settled that a party that has breached an arbitration agreement cannot enforce it.")). Mr. Woodfield's arguments are unpersuasive—Twitter has not materially breached its agreement to arbitrate based on the conduct Mr. Woodfield identifies.

First, before reaching the question of whether Twitter breached the arbitration agreement by purportedly refusing to arbitrate, Mr. Woodfield must first demonstrate that he properly initiated arbitration under the terms of the DRA. *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1122 (9th Cir. 2008). As JAMS noted, it could not proceed with Mr. Woodfield's claims "until a signed employment agreement containing an arbitration clause naming JAMS as the arbitration provider

[2] As Mr. Woodfield notes, the "DRA does not have a choice of law clause." (D.I. 26 at 11 n.5). Both parties cite predominantly to Ninth Circuit caselaw, the jurisdiction in which Mr. Woodfield's employment commenced, and they supplement with decisions from other jurisdictions. (*See* D.I. 12 at ii–iii; D.I. 26 at iii–iv). We do the same.

is provided to the file." (D.I. 13-6 at 2). This suggests Mr. Woodfield did not properly initiate arbitration under JAMS' rules,[3] and therefore Twitter could not have breached its agreement or its duty of good faith and fair dealing by refusing to arbitrate until such an agreement was provided, *see Cox*, 533 F.3d at 1122.

Even assuming arbitration was properly initiated, Twitter's insistence that arbitration proceed in accordance with established procedures and its objection on the ground that no signed agreement had yet been produced is not equivalent to refusing to arbitrate. Indeed, Twitter did not refuse to arbitrate—it merely objected to arbitration proceeding prior to "Claimants' Counsel submit[ting] an arbitration agreement that is signed and dated by the specific claimant and that specifies JAMS as the arbitration provider." (D.I. 13-3 at 4). And when Mr. Woodfield suggested Twitter's objection amounted to waiver of its right to arbitrate, Twitter promptly disagreed and reiterated its "intention to abide by any requisite procedures outlined in an agreement to arbitrate between the parties." (D.I. 13-5 at 3). That Twitter objected to Mr. Woodfield's demand for arbitration without a fully executed copy of

[3] Mr. Woodfield argues that it is only the terms of the DRA that matter in assessing Twitter's purported breach. (D.I. 26 at 9–10). That is not the case. The parties expressly agreed to bring "any claim in arbitration . . . pursuant to the then-current JAMS Rules." (D.I. 14-1 at 8, ¶ 5). This court will not second guess JAMS' assessment of a party's compliance with its own rules. *See Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1184 (9th Cir. 2025) ("It strains credulity to believe that it is the business of a federal court to second-guess an independent arbitration provider's application of its own rule—a rule incorporated into the parties' agreement . . . .).

the DRA and that JAMS agreed with that objection does not amount to a refusal to arbitrate in breach of the DRA or a breach of the duty of good faith and fair dealing.[4]

Nor is Twitter's perceived delay or purported refusal to pay fees imposed by JAMS a breach of the DRA or the duty of good faith and fair dealing. First, Twitter's objections in *other* arbitration proceedings do not have any bearing on its willingness to arbitrate Mr. Woodfield's claims. (*See* D.I. 26 at 15 (describing Twitter's objections in arbitration proceedings involving one of Mr. Woodfield's colleagues)). And Twitter's general disagreement regarding fee allocation does not amount to a "failure, neglect, or refusal" by Twitter to arbitrate Mr. Woodfield's dispute. *See Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1011–13 (9th Cir. 2004). Twitter has not lost its right to enforce the parties' agreement to arbitrate by virtue of the conduct Mr. Woodfield has identified. *See X Corp. v. Bahr*, No. 25-cv-02766, 2025 WL 2377826, at *3 (C.D. Cal. July 31, 2025) ("As a result, the Court cannot conclude that Respondents' insistence on paying only the first $400 constitutes a refusal to arbitrate . . . ."); *Frazier v. X Corp.*, 155 F.4th 87, 101 (2d Cir. 2025) ("In sum, Twitter's refusal to pay the fees – and JAMS's discretionary decision to halt the

---

[4] Mr. Woodfield's cases are unpersuasive and involve materially different circumstances. *See, e.g.*, *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 932 (9th Cir. 2011) (concluding that "refus[ing] to arbitrate the claims and [seeking] to be dismissed from the arbitration" is a breach of arbitration provisions); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010–12 (9th Cir. 2005) (concluding that employer's failure to engage in properly initiated arbitration despite employee's repeated attempts to contact employer over several months constituted breach of agreement to arbitrate).

arbitrations as a result – does not amount to a 'failure, neglect, or refusal . . . to arbitrate' by Twitter . . . ." (first alteration in original)).

The court next considers Twitter's request that any order compelling arbitration do so on an individual (and not a class) basis and its arguments suggesting this court should "make clear that the JAMS Minimum Standards cannot override the DRA" with regard to fee allocation. (D.I. 31 at 9; *see also* D.I. 12 at 20). The DRA's terms are clear: "You and the Company agree to bring any dispute in arbitration on an individual basis only . . . . Notwithstanding any other provision of this Agreement or the JAMS Rules, disputes regarding the scope, applicability, enforceability or validity of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator." (D.I. 14-1 at 8, ¶ 5). Given this clear class action waiver language, the lack of any argument to the contrary from Mr. Woodfield, and because disputes regarding the class action waiver are reserved for the court to decide, Twitter's motion for an order compelling arbitration on an individual basis is granted. To the extent that Twitter seeks a ruling from this court regarding apportionment of fees as it relates to JAMS' Minimum Standards, the court notes that such disputes are squarely delegated to the arbitrator to decide and therefore such a request is denied.[5] (*See* D.I. 14-1 at 8, ¶ 6 (noting that disputes regarding fees

[5] Twitter cites to *Rosa v. X Corp.*, No. 23-cv-22908, 2024 WL 4903619, at *1 (D.N.J. Nov. 27, 2024), in support of its position that JAMS' application of its Minimum Standards in assessing fee allocation is erroneous and in conflict with the DRA. (*See* D.I. 67). In *Rosa*, the district court compelled arbitration and ordered the parties to each pay half of the initiation fees "since JAMS Minimum Standards is inapplicable."

"will be resolved by the Arbitrator"); *id.* at 7, ¶ 1 ("Disputes covered by this Agreement include, without limitation, disputes arising out of or relating to interpretation or application of this Agreement . . . .")).

## III. CONCLUSION

We have considered the remaining arguments raised by the parties' briefs and find them unpersuasive. For the reasons discussed above, Twitter's motion is **GRANTED** insofar as the case shall proceed to arbitration on an individual basis. Because neither party has requested a stay under 9 U.S.C. § 3, this action is **DISMISSED** without prejudice. *See Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024).

*Rosa*, 2024 WL 4903619, at *13. Mr. Woodfield responds, (D.I. 69), submitting *Fabien Ho Ching Ma v. Twitter, Inc.*, No. 23-cv-03301, 2025 WL 436636 (N.D. Cal. Feb. 7, 2025), which determined fee allocation was delegated to the arbitrator to decide and deferred to JAMS' determination that the employer was required to pay the initial fees. *See Fabien Ho Ching Ma*, 2025 WL 436636, at *8. The court is unpersuaded by *Rosa*, which proceeded directly to the merits of Twitter's arguments regarding costs and the application of JAMS' Minimum Standards without first addressing the threshold question of whether the court, or the arbitrator, is entitled to decide such a question. *See Rosa*, 2024 WL 4903619, at 9–11. And the court agrees with *Fabien Ho Ching Ma* to the extent that Twitter's arguments regarding costs are reserved for resolution in arbitration. *See Fabien Ho Ching Ma*, 2025 WL 436636, at *5 ("In states where applicable law does not require the employer to pay all arbitration fees, the DRA delegates apportionment of fees to the arbitrator."); *see also Bahr*, 2025 WL 2377826, at *3 ("Thus, the Court is ultimately persuaded that intervention in or re-litigation of the decision to apply the Minimum Standards, and by extension, the unequal fee splitting, is inappropriate here.").